COMMONWEALTH OF MASSACHUSETTS
BUSINESS LITIGATION SESSION

SUFFOLK, ss.                                                   SUPERIOR COURT

FIRST MARBLEHEAD CORPORATION
Plaintiff

v

GREGORY J. HOUSE
Defendant

04 - 2174

CIVIL ACTION **RECEIVED**

MAY 19 2004

SUPERIOR COURT · CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

## COMPLAINT FOR DECLARATORY JUDGMENT AND JURY DEMAND

Plaintiff, The First Marblehead Corporation ("First Marblehead") brings this declaratory judgment action, pursuant to M.G.L. c. 231A, against the defendant, Gregory J. House ("House") because an actual controversy exists between the parties concerning their respective rights and obligations regarding the grant of an incentive stock option by First Marblehead to House in 1997, the terms and conditions of the grant and whether or not the defendant's right to exercise the stock option granted by First Marblehead has expired and is null and void.

### PARTIES AND JURISDICTION

1.  Plaintiff, First Marblehead, is a Delaware corporation with a principal place of business at 800 Boylston Street, Boston, Massachusetts 02199.

2.  Defendant, House, is a former employee of First Marblehead, whose last known address is 77 Prospect Street, Stamford, Connecticut 06901.

3. Jurisdiction is proper pursuant to M.G.L. c. 231A and because all parties have sufficient contacts with the Commonwealth of Massachusetts, and the amount in controversy exceeds $25,000.

4. Venue is proper as pursuant to M.G.L. chapter 223, §1, because at least one of the parties resides within Suffolk County.

## FACTS

5. First Marblehead provides services to the private, non-governmental, educational lending industry.

6. The defendant, House, was employed by First Marblehead from April 1, 1996 until February 28, 1998, when he voluntarily resigned his employment.

7. On or about June 15, 1997, First Marblehead granted House an incentive stock option of First Marblehead stock, pursuant to The First Marblehead Corporation 1996 Stock Option Plan (the "Plan"). A true and accurate copy of the Plan is attached hereto as Exhibit A and incorporated by reference.

8. The Plan provides that the term for each option granted under the Plan shall not exceed ten years from the date of its grant except that pursuant to § 7.02(d) of the Plan, upon the termination of employment for reasons other than death, disability or termination for cause, the "options will remain exercisable by the grantee for a period not extending beyond three months after the date of termination of employment".

9. The term provisions, including the termination provisions contained in § 7.02(d), were included in the Plan to assure that the options would qualify as incentive stock options under §422 of the Internal Revenue Code.

10. Upon information and belief, sometime after the option grant was made to House, First Marblehead provided House with a copy of the Plan.

11. Upon information and belief, sometime after the option grant was made to House, First Marblehead provided House with a Stock Option Agreement which further set forth the terms of the grant. A true and accurate copy of the Stock Option Agreement is attached hereto as <u>Exhibit B</u> and incorporated by reference.

12. The Stock Option Agreement incorporates by reference the terms of the Plan, including the terms relating to the exercise of the option following voluntary termination.

13. House terminated his employment with First Marblehead on February 28, 1998.

14. House did not exercise the option he was granted within three months of his resignation from employment with First Marblehead.

15. In February 2004, for the first time, House inquired with First Marblehead regarding the "status" of his stock option.

16. Shortly after his inquiry, First Marblehead, citing the terms of the Plan and the Stock Option Agreement, advised House that his right to exercise the option granted in 1997 had expired and he had no further right to exercise the option.

17. On or about March 12, 2004, House made demand on First Marblehead to immediately take such steps as are necessary to allow him to exercise his options.

18. House takes the position that the option granted to him by First Marblehead would be exercisable for a period of ten years and did not include any condition that the option be exercised within three months of leaving employment with First Marblehead.

19. First Marblehead's position is that the terms and conditions of the option granted to House are governed by the Internal Revenue Code and as set forth in the Plan and Stock Option Agreement and include a condition that any option must be exercised within three months of leaving employment with First Marblehead. Further, First Marblehead's position is that the option has expired and is null and void because House did not exercise it within three months of leaving employment with First Marblehead.

## DECLARATORY JUDGMENT

20. First Marblehead repeats and incorporates by reference the allegations contained in paragraphs 1 through 19, as though fully set forth herein.

21. There exists between First Marblehead and House a genuine and actual controversy concerning their respective rights and obligations regarding the grant of an incentive stock option by First Marblehead to House in 1997, the terms and conditions of the grant and whether or not the defendant's right to exercise the stock option granted by First Marblehead has expired and is null and void.

**WHEREFORE**, First Marblehead respectfully requests that this Court:

1. Enter a judgment declaring the respective rights and obligations of the parties regarding the 1997 grant of incentive stock options by First Marblehead to House;

2. Enter a declaratory judgment that the rights of the parties with respect to the grant of options to House are governed by the terms and conditions set forth in Plan and Stock Option Agreement;

3. Enter a declaratory judgment that the defendant failed to exercise timely the option he was granted and that the option is null and void;

4.  Award the plaintiff its costs and attorneys fees; and,

5.  Enter any further relief this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

THE FIRST MARBLEHEAD CORPORATION,
By its attorneys

Kenneth J. DeMoura
BBO# 548910
Adler Pollock & Sheehan PC
175 Federal Street
Boston  MA 02110
(617) 482-0600

Date: May 19, 2004

# Exhibit A

THE FIRST MARBLEHEAD CORPORATION

1996 STOCK OPTION PLAN

<Page>

THE FIRST MARBLEHEAD CORPORATION

1996 STOCK OPTION PLAN

1.    PURPOSES

The purposes of this 1996 Stock Option Plan (the "Plan") are to: (i) closely associate the interests of the officers, other employees and consultants of The First Marblehead Corporation and its subsidiaries and affiliates (collectively referred to as the "Company") with the stockholders by reinforcing the relationship between participants' rewards and stockholder gains; (ii) provide participants with an equity ownership in the Company commensurate with Company performance; (iii) maintain competitive compensation levels; and (iv) provide an incentive to officers and employees for continuous employment with the Company. The Plan accomplishes these purposes by providing for the grant of Incentive Stock Options and Nonstatutory Stock Options (collectively, as defined below, "Options") to the Company's officers, employees and consultants.

2.    ADMINISTRATION OF THE PLAN

2.01  ADMINISTRATION BY COMMITTEE. The Plan shall be administered by the Stock Option Committee (the "Committee") appointed by the Board of Directors of the Company from time to time. Whenever options are granted to any person subject to Section 16 of the Securities Exchange Act of 1934 (the "Exchange Act"), each member of the Committee shall be a "disinterested person" within the meaning of Rule 16b-3 under the Exchange Act.

2.02  AUTHORITY. Within the limits of the Plan, the Committee shall determine: the individuals to whom, and the times at which, Options shall be granted; the type of Option and number of shares to be granted; the duration of each Option; the price and method of payment for each Option; and the time or times within which (during its term) all or portions of each Option may be exercised.

2.03  ADOPTION OF RULES; INTERPRETATION OF PLAN. The Committee may: (i) establish such rules as it deems necessary for the proper administration of the Plan; (ii) make such determinations and interpretations with respect to the Plan and Options granted under it as may be necessary or desirable; and (iii) supply

any omission, reconcile any inconsistency and include such further provisions or
conditions in the Plan or any Option as it deems advisable. Decisions rendered
by the Committee shall be made in its sole discretion and shall be conclusive.
No member of the Committee shall be liable for any decision rendered in good
faith relating to the Plan or any award thereunder.

3.    SHARES SUBJECT TO THE PLAN

3.01   NUMBER AND TYPE OF SHARES. The aggregate number of shares of stock of
the Company which may be optioned under the Plan is One Hundred Thousand
(100,000) shares of the Company's Common Stock, $.10 par value, (the "Stock").

<Page>

3.02   RESTORATION OF SHARES. If any option expires, is terminated
unexercised or is forfeited for any reason, the shares subject to such Option,
to the extent of such expiration, termination or forfeiture, shall again be
available for granting Options under the Plan, subject, however, in the case of
Incentive Stock Options, to any requirements under the Internal Revenue Code of
1986, as amended (the "Code").

3.03   RESERVATION OF SHARES. The Company shall, at all times while the Plan
is in force, reserve such number of shares of Stock as will be sufficient to
satisfy the requirements of the Plan. Shares issued under the Plan may consist,
in whole or in part, of authorized but unissued shares or treasury shares.

4.    GRANT OF OPTIONS; ELIGIBLE PERSONS

4.01   TYPES OF OPTIONS. Options shall be granted under the Plan either as
incentive stock options ("Incentive Stock Options"), as defined in Section 422
of the Code, or as options which do not meet the requirements of Section 422
("Nonstatutory Stock Options"). Options may be granted from time to time by the
Committee, within the limits set forth in the Plan, to all employees of the
Company or of any parent corporation or subsidiary corporation of the Company
(as defined in Sections 424(e) and (f), respectively, of the Code) and, in the
case of Nonstatutory Stock Options, to consultants.

4.02   DATE OF GRANT. The date of grant for each Option shall be the date on
which it is approved by the Committee, or such later date as the Committee may
specify. No Incentive Stock Options shall be granted hereunder after ten years
from the date on which the Plan was adopted by the Board or approved by the
stockholders, whichever is earlier.

5.    FORMS OF OPTIONS

Options granted hereunder shall be evidenced by a writing delivered to the
grantee specifying the terms and conditions thereof and containing such other
terms and conditions not inconsistent with the provisions of the Plan as the

Committee considers necessary or advisable to achieve the purposes of the Plan or to comply with applicable tax and regulatory laws and accounting principles.
The form of such Options may vary among grantees.

    6.    OPTION PRICE

    6.01  INCENTIVE STOCK OPTIONS. In the case of Incentive Stock Options, the
price at which shares may from time to time be optioned shall be determined by the Committee, provided that such price shall not be less than the fair market value of the Stock on the date of granting as determined in good faith by the Committee; and provided further that no Incentive Stock Option shall be granted
to any individual who owns stock of the Company or its parent or subsidiary corporations in excess of the limitations set forth in Section 422(b)(6) of the
Code unless such option price is at least 110% of the fair market value of the Stock on the date of the grant.

    6.02  NONSTATUTORY STOCK OPTIONS.  In the case of Nonstatutory Stock Options, the price at which shares may from time to time be optioned shall be determined by the Committee.

                                    2

<Page>

    6.03  MANNER OF PAYMENT. To the extent permitted by law, the Committee, may
in its discretion, permit the option price to be paid in whole or in part by a note or in installments or with shares of stock of the Company or such other lawful consideration as the Committee may determine.

    7.    TERM OF OPTION AND DATES OF EXERCISE

    7.01  EXERCISABILITY. The Committee shall determine the term of all Options, the time or times that Options may be exercised and whether they may be
exercised in installments; provided, however, that: (i) the term of each Incentive Stock Option granted under the Plan shall not exceed a period of ten years from the date of its grant; and (ii) no Incentive Stock Option shall be granted to any individual who owns stock of the Company or its parent or subsidiary corporations exceeds the limitations set forth in Section 422(b)(6) of the Code unless the term of the Option does not exceed a period of five years
from the date of its grant.

    7.02  EFFECT OF TERMINATION OF EMPLOYMENT. Except to the extent otherwise determined by the Committee in writing, the effect on an Option of the termination of employment of a grantee and the extent to which the grantee or his or her estate, legal representative, guardian, or beneficiary may exercise rights thereunder, shall be as set forth below.

        (a) DEATH OF GRANTEE. Upon the death of the grantee, all rights, including those not yet vested on the date of death, shall immediately be vested and may be exercised by the grantee's estate or by a person who acquires the right to exercise such Option by bequest or inheritance or

otherwise by reason of the death of the grantee; provided, however, that such exercise must occur within both the remaining effective term of the Option and within one year after the grantee's death.

The provisions of this subsection (a) shall apply even if the grantee's employment may have terminated prior to death, but only to the extent such rights were otherwise exercisable pursuant to this Section 7.02 at the date of death.

(b) RETIREMENT OR DISABILITY. Upon termination of the grantee's employment by reason of retirement or permanent disability (as each is determined by the Committee), the grantee (or his or her guardian) may, within 36 months from the date of termination, exercise any Options to the extent such options are or become exercisable during such 36 month period. Notwithstanding the foregoing, the tax treatment available pursuant to Section 422 of the Code upon the exercise of an Incentive Stock Option will not be available to a grantee who exercises any Incentive Stock Options more than (i) 12 months after the date of termination due to permanent disability or (ii) three months after the date of termination due to retirement.

(c) TERMINATION FOR CAUSE. Upon termination of the grantee's employment for "cause" (as determined by the Committee), all Options not yet exercised by the grantee shall terminate immediately.

(d) TERMINATION FOR OTHER REASONS. Upon the termination of the grantee's employment for reasons other than those set forth in subsections 7.02(a), (b) and (c), the

3

<Page>

Options will remain exercisable by the grantee for a period not extending beyond three months after the date of the termination of employment, but only to the extent of Options which are exercisable as of the date of such termination of employment.

7.03   OTHER CONDITIONS. The Committee may impose such conditions with respect to the exercise of options, including conditions relating to applicable federal or state securities laws or requiring the holder to enter into a Stock Restriction Agreement, Non-Competition Agreement or other agreement as it considers necessary or advisable.

7.04   AMENDMENT OF OPTIONS. The Committee may amend, modify or terminate any outstanding Option, including substituting therefor another Option of the same or different type, changing the date of exercise or realization and converting an Incentive Stock Option to a Nonstatutory Stock Option, provided that the grantee's consent to such action shall be required unless the Committee reasonably determines that the action, taking into account any related action,

would not materially and adversely affect the grantee.

8.    MISCELLANEOUS

8.01  GENERAL RESTRICTIONS. Each award under the Plan shall be subject to the requirement that, if at any time the Committee shall determine that the accomplishment of any of the following prerequisites is necessary or desirable as a condition of, or in connection with, the granting of such award or the issuance or purchase of Stock thereunder, then the prerequisite shall be accomplished to the satisfaction of the Committee prior to the consummation of such grant, issuance or sale. The prerequisite events, as may be determined by the Committee, are: (i) the listing, registration or qualification of shares of
Stock on a securities exchange or under any state or federal law; (ii) the consent or approval of any government regulatory body; or (iii) an agreement by
the grantee with respect to the disposition of shares of Stock.

8.02  NON-TRANSFERABILITY. Options granted under the Plan shall not be transferable by the grantee, except by will or the laws of descent and distribution. Moreover, no option granted under the plan may be transferred pursuant to a domestic relations order. Options shall be exercisable, during the
grantee's lifetime, only by the grantee or such permitted transferee.

8.03  WITHHOLDING. The grantee shall pay to the Company, or make provision
satisfactory to the Committee for payment of, any taxes required by law to be withheld in respect of any Options under the Plan no later than the date of the
event creating the tax liability. In the Committee's discretion, such tax obligations may be paid in whole or in part in shares of Stock, including shares
retained from the exercise of the Option creating the tax obligation, valued at
the fair market value of the Stock on the date of delivery to the Company as determined in good faith by the Committee. The Company and any parent corporation or subsidiary corporation of the Company (as defined in Sections 424(e) and (f), respectively, of the Code) may, to the extent permitted by law,
deduct any such tax obligations from any payment of any kind otherwise due to the grantee.

8.04  NO RIGHT TO EMPLOYMENT. The grant of an Option shall not be construed
as giving a grantee the right to continued employment. Except as may otherwise be limited by a written agreement between the Company and the grantee, the right
of the Company to terminate, at will,

4

<Page>

the grantee's employment with it at any time, free from any liability or claim under the Plan, is specifically reserved by the Company and acknowledged by the
grantee.

8.05  NON-UNIFORM DETERMINATIONS. The Committee's determinations under the
Plan (including, without limitation, determinations of the persons to be granted
awards, the form, amount and timing of such awards, the terms and provisions of
such awards and the agreements evidencing the same) need not be uniform and may
be made by it selectively among persons who receive, or are eligible to receive,
awards under the Plan, whether or not such persons are similarly situated.

8.06  NO RIGHTS AS A STOCKHOLDER. Subject to the provisions of the
applicable Option, no grantee or any person claiming through a grantee shall
have any rights as a stockholder with respect to any shares of Stock to be
distributed under the Plan until the share certificates are duly issued by the
Company.

8.07  ADJUSTMENTS. In the event of any change in the outstanding Stock by
reason of a stock dividend, split-up, combination or reclassification of shares,
recapitalization or other similar capital change, the Committee may
appropriately adjust: (i) the number of share of Stock which may be issued under
the Plan; (ii) the number of shares of Stock subject to Options theretofore
granted under the Plan; (iii) the option price of Options theretofore granted
under the Plan; or (iv) any and all other matters as may be deemed appropriate
by the Committee, the determination of which on such matters shall be
conclusive.

8.08  EFFECT OF REORGANIZATION TRANSACTIONS. In the event of a
consolidation or merger of the Company with another corporation, or the sale or
exchange of all or substantially all of the assets of the Company, or a
reorganization or liquidation of the Company, each holder of an outstanding
Option shall be entitled to receive, upon exercise and payment in accordance
with the terms of the Option, the same shares, securities or property as he or
she would have been entitled to receive upon the occurrence of such event if he
or she had been, immediately prior to such event, the holder of the number of
shares of Stock purchasable under his or her Option; provided, however, that in
lieu of the foregoing the Company may, upon written notice to each holder of an
outstanding Option, provide that such Option shall terminate within a specified
number of days after the date of such notice unless theretofore exercised. In
connection with such notice, the Company may, in its discretion, accelerate or
waive any deferred exercise period. Options granted under this Plan may contain
such provisions as the Committee shall approve permitting part of all of such
Options to become exercisable without regard to any deferred exercise period in
the event of a change of control of the Company, as defined by the Committee.

8.09  AMENDMENT OF PLAN.  The Committee may amend the Plan in the following
situations:

    (a) CHANGE IN LAW. The Committee may, without further action by the
stockholders and without receiving further consideration from the
participants, amend this Plan or condition or modify awards under this
Plan, in response to changes in securities, tax or other laws or rules,
regulations or regulatory interpretations thereof applicable to this Plan
or to comply with stock exchange rules or requirements.

<center>5</center>

&lt;Page&gt;

    (b) OTHER AMENDMENTS. The Committee may at any time and from time
to
    time terminate or modify or amend the Plan in any respect, except that,
    without stockholder approval, the Committee may not: (i) increase the
    maximum number of shares of Stock which may be issued under the Plan
(other
    than increases pursuant to Section 8.07); (ii) extend the period during
    which any award may be granted or exercised; or (iii) extend the term of
    the Plan. The termination, modification or amendment of the Plan, except
as
    provided in Section 8.09(a), shall not, without the consent of the
grantee,
    materially and adversely affect the grantee's rights under an award
    previously granted.

    8.10  STOCKHOLDER APPROVAL. The Plan is subject to approval by the
stockholders of the Company by the affirmative vote of the holders of a
majority
of the shares of capital stock of the Company entitled to vote thereon and
present or represented at a meeting duly held in accordance with the laws of
the
State of Delaware or by any other action that would be given the same effect
under the laws of such jurisdiction. Such action shall be taken within twelve
(12) months from the date the Plan was adopted by the Board. In the event such
stockholder approval is not obtained, all Options granted under the Plan shall
be void and without effect.

    8.11  GOVERNINQ LAW.  The provisions of the Plan shall be governed by and
interpreted in accordance with the laws of the State of Delaware, except to
the
extent preempted by federal law which, to that extent, shall govern.

    ADOPTED by the Board of Directors effective as of October 15, 1996.

Attest:                        /s/ Rodney G. Hoffman, Ass't Secretary
                               -----------------------------------------------------
--

<center>6</center>

# Exhibit B

## THE FIRST MARBLEHEAD CORPORATION

### Grant of Incentive Stock Option

Date of Grant:  June 15, 1997

THIS GRANT, dated as of the date of grant stated above (the "Date of Grant"), is delivered by **The First Marblehead Corporation** ("First Marblehead"), a Delaware corporation, to GREGORY HOUSE (the "Grantee"), who is an employee or officer of First Marblehead.

### RECITALS

A.   The Board of Directors of First Marblehead (the "Board") adopted, with subsequent stockholder approval, The First Marblehead Corporation 1996 Stock Option Plan (the "Plan").

B.   The Plan provides for the granting of incentive stock options by the Stock Option Committee (the "Committee") to directors, officers and other employees of First Marblehead (excluding directors and officers who are not employees) to purchase shares of the Common Stock of First Marblehead, $.10 par value per share (the "Stock"), in accordance with the terms and provisions thereof.

C.   The Committee has determined that the Grantee is a person who is eligible for a grant of an incentive stock option under the Plan and that it would be in the best interests of First Marblehead to grant an incentive stock option to the Grantee as documented herein.

NOW, THEREFORE, the parties hereto, intending to be legally bound hereby, agree as follows:

1.   GRANT OF OPTION

Subject to the terms and conditions of the Plan and as

hereinafter set forth, First Marblehead, with the approval and direction of the Committee, hereby grants to the Grantee, as of the Date of Grant, an option to purchase up to TWO THOUSAND FIVE HUNDRED (2,500) shares of Stock at a price of Thirty-Two Dollars ($32.00) per share, being the fair market value of the Stock as of the Date of Grant.  Such option is hereinafter referred to as the "Option" and the shares of Stock purchasable upon exercise of the Option are hereinafter referred to as the "Option Shares".  The Option is intended by the parties to be, and shall be treated as, an incentive stock option as such term is defined under Section 422 of the Internal Revenue Code of 1986, as amended.

2.    INSTALLMENT EXERCISE

2.01   Exercise of Options.   Subject to further limitations as are provided herein, the Option shall be exercisable, in whole or in part, immediately.

3.    TERMINATION OF OPTION

3.01   Term of Option.   The Option and all rights hereunder with respect thereto, to the extent that such rights shall not have been exercised, shall terminate and become null and void after the expiration of ten (10) years from the Date of Grant (the "Option Term").

3.02   Effect of Termination of Employment.   The effect on the Option of the termination of employment of the Grantee and the extent to which the Grantee or his or her estate, legal representative, guardian, or beneficiary may exercise rights thereunder, shall be as set forth below.

(a)   Death of Grantee.   Upon the death of the Grantee, all rights, including those not yet vested on the date of death, shall immediately be vested and may be exercised by the Grantee's estate or by a person who acquires the right to exercise such Option by bequest or inheritance or otherwise by reason of the death of the Grantee; provided, however, that such exercise must occur within both the remaining effective term of the Option and within one year after the Grantee's death.

2

The provisions of this subsection (a) shall apply even if the Grantee's employment may have terminated prior to death, but only to the extent such rights were otherwise exercisable pursuant to this Section 3.02 at the date of death.

(b)  Retirement or Disability.  Upon termination of the Grantee's employment by reason of retirement or permanent disability (as each is determined by the Committee), the Grantee (or his or her guardian) may, within 36 months from the date of termination, exercise any Options to the extent such options are or become exercisable during such 36 month period.  Notwithstanding the foregoing, the tax treatment available pursuant to Section 422 of the Code upon the exercise of an incentive stock option will not be available with respect to the exercise of the Option more than (i) twelve (12) months after the date of termination due to permanent disability or (ii) three (3) months after the date of termination due to retirement.

(c)  Termination for Cause.  Upon termination of the Grantee's employment for "cause" (as determined by the Committee), any portion of the Option not yet exercised by the Grantee shall terminate immediately and automatically.

(d)  Termination for Other Reasons.  Upon the termination of the Grantee's employment for reasons other than those set forth in subsections 3.02(a), (b) and (c), the Options will remain exercisable by the Grantee for a period not extending beyond three months after the date of the termination of employment, but only to the extent of Options which are exercisable as of the date of such termination of employment.

**4.   ADDITIONAL CONDITIONS**

It is a condition to the exercise of this Option that the Grantee enter into, and agree to be bound by the terms of, that certain Shareholders Agreement dated as of December 21, 1995 among First Marblehead and the shareholders named therein (the "Shareholders Agreement"), subject to such amendments thereto as may then have been duly adopted.

3

## 5.    EXERCISE OF OPTION

5.01    <u>Notice of Exercise</u>.    The Grantee may exercise the Option with respect to all or any part of the number of Option Shares then exercisable by giving written notice thereof to the President of First Marblehead.   The notice shall specify the number of Option Shares as to which the Option is to be exercised and the date of the exercise, which date shall be at least five (5) days after the giving of notice.

5.02    <u>Payment of Purchase Price</u>.    The Grantee shall make payment in full to First Marblehead (in US dollars) for the Option Shares purchased on or before the date specified in the notice either in cash or, with the prior written consent of the Committee, in whole or in part through the surrender of previously acquired shares of Stock at their fair market value on the exercise date.

5.03    <u>Execution of Shareholders Agreement</u>.    On or before the exercise date, the Grantee shall execute and deliver to First Marblehead an additional signature page or other instrument whereby the Grantee agrees to be subject to, and bound by the terms of, the Shareholders Agreement, as amended. Such instrument shall be in such form as may be reasonably required by counsel to First Marblehead.

5.03    <u>Delivery of Certificate</u>.    On the exercise date specified in Grantee's notice, or as soon thereafter as practicable, First Marblehead shall cause to be delivered to the Grantee a certificate or certificates for the Option Shares then being purchased (out of theretofore unissued Stock or reacquired Stock) upon full payment for such Option Shares.   The obligation of First Marblehead to deliver such certificates shall, however, be subject to the condition that if at any time the Committee shall determine in its discretion that the listing, registration or qualification of the Option Shares upon any securities exchange or under any state or federal law, or the consent of any governmental regulatory body, is necessary or desirable as a condition of, or in connection with, the Option or the issuance of the Option Stock thereunder, the Option may not be exercised in whole or in part unless such listing, registration, consent or

4

approval shall have been effected or obtained free of any conditions not reasonably acceptable to the Committee.

5.04  <u>Failure to Pay</u>.  If the Grantee fails to pay for any of the Option Shares specified in such notice or fails to accept delivery thereof, the Grantee's right to purchase such Option Shares may be terminated by First Marblehead.  The date specified on the Grantee's notice as the date of exercise shall be deemed to be the date of exercise of the Option, provided that payment in full for the Option Shares to be purchased upon such exercise shall have been received by such date.

**6.  MISCELLANEOUS**

6.01  <u>Non-Transferability</u>.  The Option shall not be transferable by the Grantee, except by will or the laws of descent and distribution without the prior written consent of First Marblehead, which consent may be withheld in its sole discretion.  Specifically, the Option may not be transferred pursuant to a domestic relations order.  The Option shall be exercisable, during the Grantee's lifetime, only by the Grantee or such permitted transferee.

6.02  <u>Fair Market Value</u>.  As used herein, the term "fair market value" of a share of Stock shall be the value as determined by the Committee in good faith based on such reasonable method as the Committee deems appropriate given the facts and circumstances.

6.03  <u>No Rights as a Stockholder</u>.  Neither the Grantee nor any person claiming through the Grantee shall have any rights as a stockholder with respect to any Option Shares until share certificates are duly issued by the Company.

6.04  <u>No Right to Employment</u>.  The grant of the Option shall not be construed as giving the Grantee the right to continued employment.  The right of First Marblehead to terminate, at will, the Grantee's employment with it at any time, free from any liability or claim under the Plan or this Option, is specifically reserved by First Marblehead and acknowledged by the Grantee, subject, however, to other written agreements between First Marblehead and the Grantee.

6.05    Adjustments.    In the event of any change in the capitalization of First Marblehead by reason of a stock dividend, split-up, combination or reclassification of shares, recapitalization or other similar capital change, the Committee may appropriately adjust: (i) the number of shares of Stock subject to the Option; (ii) the option price under the Option; or (iii) any and all other matters as may be deemed appropriate by
the Committee, the determination of which on such matters shall be conclusive.

6.06    Effect of Reorganization Transactions.    In the event of a consolidation or merger of First Marblehead with another corporation or entity, or the sale or exchange of all or substantially all of the assets of First Marblehead, or a reorganization or liquidation of First Marblehead, the Grantee shall be entitled to receive, upon exercise and payment in accordance with the terms of the Option, the same shares, securities or property as he or she would have been entitled to receive upon the occurrence of such event if he or she had been, immediately prior to such event, the holder of the number of shares of Stock purchasable under his or her Option; provided, however, that in lieu of the foregoing First Marblehead may, upon written notice to the Grantee, provide that the Option shall terminate within a specified number of days after the date of such notice unless theretofore exercised.    In connection with such notice, First Marblehead may, in its discretion, accelerate or waive any deferred exercise period.

6.07    Amendment of Option.    The Board or the Committee may amend the Option in the following circumstances:

(a)    Change in Law.    If the Board or the Committee determines, in its sole discretion, that amendment is necessary or advisable in response to changes in securities, tax or other laws or rules, regulations or regulatory interpretations thereof applicable to the Plan or this Option or in order to comply with stock exchange rules or requirements.

(b)    Other Amendments.    Other than the circumstances described in subsection (a), above, with the consent of the

6

Grantee.

6.08  <u>Notice</u>.  Any notice to First Marblehead provided for herein shall be addressed to it as follows:

>   The First Marblehead Corporation
>   21st Floor
>   237 Park Avenue
>   New York, NY  10017
>   Attn: President

or at such other corporate address as it may then maintain.  Any notice to the Grantee shall be addressed to the Grantee at the current address shown on the payroll records of First Marblehead.  Any notice shall be deemed to be duly given if and when properly addressed and posted by registered or certified mail, postage
paid, or by facsimile transmission if confirmed by registered or certified mail.

6.09  <u>Incorporation of Plan By Reference; Interpretation by Committee</u>.  The Option is granted pursuant to the terms of the Plan, the provisions of which are incorporated herein by reference.  The Option shall, in all respects, be governed by the terms of the Plan.  The Committee shall interpret and construe the Plan and this instrument and its interpretations and determinations shall be conclusive and binding on the parties hereto and any other person claiming an interest hereunder.

6.10  <u>Governing Law</u>.  The provisions of this instrument shall be governed by and interpreted in accordance with the laws of the State of Delaware, except to the extent preempted by federal law which, to that extent, shall govern.


IN WITNESS WHEREOF, the undersigned have duly executed the within instrument effective as of the Date of Grant.


THE FIRST MARBLEHEAD CORPORATION

7

By: _____
    Daniel Maxwell Meyers,
    Chairman


Accepted and agreed to:


_____

Gregory House, Grantee


mplp\stockopt\$house.gr

8