UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE FIRST MARBLEHEAD CORPORATION<br>        Plaintiff<br><br>v<br><br>GREGORY J. HOUSE<br>        Defendant | CIVIL ACTION NO. 04-11263PBS |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Introduction

This dispute arises from a belated attempt to exercise incentive stock options. The plaintiff, The First Marblehead Corporation ("First Marblehead" or the "Company"), seeks a declaratory judgment that an incentive stock option granted to its former employee, Gregory House ("House"), expired as a matter of law and pursuant to the terms its 1996 Stock Option Plan (the "Plan") prior to House's attempt to exercise the option. Conversely, House alleges that the incentive stock option has not expired and First Marblehead's denial of his request to exercise constitutes a breach of contract or should be equitably estopped.

First Marblehead seeks summary judgment on all claims and counterclaims pursuant to Fed. R. Civ. P. 56. This is a straight forward case. The undisputed facts establish that in 1997, House received a fully vested incentive stock option while employed at First Marblehead. House quit in February 1998. He made no attempt to exercise any option rights until 2004. By May 1998, three months after he left First Marblehead, any and all of House's option rights terminated (i) as a matter of law, and

1

(ii) pursuant to the Plan's express terms.  Furthermore, any estoppel argument is unsupported by the facts and precluded as a matter of law.

Facts

The following facts are derived from First Marblehead's Statement of Undisputed Facts Pursuant to Local Rule 56.1, filed herewith:

First Marblehead is a Delaware corporation with its principal offices located in Boston, Massachusetts.  [Answer and Counterclaim of Gregory House, ¶ 23.]

In October 1996, First Marblehead's Board of Director's adopted an incentive stock option plan titled The First Marblehead 1996 Stock Option Plan.  [Plaintiff's Response to Defendant's First Set of Interrogatories, Response No. 5: Appendix Tab B] [Deposition of Steven Anbinder p. 30, 38: Appendix Tab C] The Plan provides for the grant of "incentive stock options ("Incentive Stock Options"), as defined in Section 422 of the [Internal Revenue] Code".  [Exhibit 1 to Anbinder Deposition: Appendix Tab D] Section 422 of the Internal Revenue Code requires that Incentive Stock Options be exercised while the holder of the option is employed with the corporation granting the option or within three months of his termination of employment with that corporation. 26 U.S.C. §422(a).  [Exhibit 1 to Anbinder Deposition: Appendix Tab D]

The Plan repeats this same requirement.  Section 7.02(d) of the Plan expressly provides:

> (d) <u>Termination for Other Reasons</u>.  Upon the termination of the grantee's employment for reasons other than . . . [death, retirement, disability or termination for cause] . . . , the Options will remain exercisable by the grantee for a period not extending beyond three months after the date of the termination of employment, but only to the extent of Options which are exercisable as of the date of such termination of employment.

[Exhibit 1 to Anbinder Deposition: Appendix Tab D]  As required by the Internal Revenue Code and its corresponding regulations, the shareholders of First Marblehead approved the creation and adoption of the Plan on March 4, 1997.  [Deposition of Rodney Hoffman p. 76-77:  Appendix Tab E][Exhibit 1 to Hoffman deposition: Appendix Tab F]

In April 1996, First Marblehead hired House to work as an employee of the Company.  [Answer and Counterclaim of Gregory House ¶26]  Other than being told that First Marblehead was going to issue stock options and that he would get some, there were no other discussions about stock options prior to the time that House accepted his job offer to join First Marblehead.  [Deposition of Gregory House p. 104: Appendix Tab A]

House considers himself an expert in stock options and has worked extensively in the stock options industry.  He became a licensed stockbroker for Paine Webber after graduating from college. [Deposition of Gregory House p. 29-30:  Appendix Tab A]  In 1982, House joined the commodity options division of Prudential Bache's New York City office and worked in the options division for Prudential Bache for five years. [Deposition of Gregory House p. 32-33:  Appendix Tab A]  Thereafter, House spent four years self-employed, writing a fixed income stock options pricing model. [Deposition of Gregory House p. 36-38:  Appendix Tab A]  He has purchased and sold stock options. [Deposition of Gregory House p. 100:  Appendix Tab A]  From 1990 until 1993, House worked in the options trading division of Societe Generale.  [Deposition of Gregory House p. 36:  Appendix Tab A]  While at Societe Generale, House provided expertise in the pricing of securities in the "options area." [Deposition of Gregory House p. 40:

3

Appendix Tab A] He has read "uncountable" books on stock options, including the authoritative ones. [Deposition of Gregory House p. 48: Appendix Tab A]

In June 1997, employees of First Marblehead, including House, were granted incentive stock options pursuant to the Plan. [Deposition of Ralph James p. 44-45; 59-60: Appendix Tab G] [Deposition of Rodney Hoffman p. 48-49: Appendix Tab E] House understood in June 1997 that the options he was receiving were incentive stock options. [House dep. p. 118-119: Appendix Tab A] [House dep. p. 118-119: Appendix Tab A] In June 1997, First Marblehead delivered to House a one-page "Compensation Review" form indicating that the Company had granted him an incentive stock option for 2,500 shares of First Marblehead stock. [Ralph James Deposition p. 69-71: Appendix Tab G] [Exhibit 4 to Ralph James Deposition: Appendix Tab H] [House dep. p. 114-119: Appendix Tab A] The form states in part:

> STOCK OPTIONS
> ISO Shares Granted: 2,500
> Value of ISO Shares (at $31.25 per share):  $78,125

[Exhibit 4 to Ralph James Deposition: Appendix Tab H] At the time he received the Compensation Review form House understood that the term ISO was an acronym for "incentive stock options" [House dep. p. 115: Appendix Tab A], he understood that the phrase "incentive stock option" was a legal term [House dep. p. 7: Appendix Tab A], and he had a general understanding of the characteristics of incentive stock options. [House dep. p. 120-121: Appendix Tab A].

Indeed, House's deposition testimony is clear that he knew he was receiving an incentive stock option:

> Q. The numbers that you are focused on were the numbers that appear under the subheading stock options, correct?
> A. Yes.

4

>       Q.      And they are ISO shares granted, 2500, correct?
>       A.      Correct.

[House dep. p. 118-119: Appendix Tab A]

In July 1997, House was again informed that the option granted to him was an incentive stock option. [Ralph James Deposition p. 55, 58-60: Appendix Tab G] [Exhibit 2 to James Deposition: Appendix Tab I] [House dep. p. 134-135] On July 7, 1997, House received a notice from the Company's Chief Operating Officer, Ralph James, addressed to all First Marblehead Staff. [Exhibit 2 to James Deposition: Appendix Tab I] The notice advised the staff that there would be a staff meeting that day where the first order of business would be a "Discussion of the Incentive Stock Option program". [Exhibit 2 to James Deposition: Appendix Tab I]

At that meeting, House received a memorandum addressed to all First Marblehead employees dated July 7, 1997 setting forth some of the "principal terms" of the Plan. [Ralph James Deposition p. 63-67: Appendix Tab G][Exhibit 3 to James Deposition: Appendix Tab J] [House dep. p. 136-141: Appendix Tab A] [Hoffman dep. p. 43-45: Appendix Tab E] The July 7 Memo, in its first sentence, announced that the Board of Directors of First Marblehead had established an employee stock option plan. [Exhibit 3 to James Deposition: Appendix Tab J] The July 7 memo described the options that the employees were being granted: "The options here will be 'Incentive Stock Options' or 'ISOs' under the Internal Revenue Code". [Exhibit 3 to James Deposition: Appendix Tab J]

The July 7 Memo did not state that the options issued under the Plan were only exercisable for three months from date of termination of employment, and was in fact silent on that issue. [Exhibit 3 to James Deposition: Appendix Tab J] However, House

5

was clear at his deposition that he knew that the July 7 Memo did not encompass all of the terms of the option plan or the option grant he thought he was receiving. [House dep. p. 138-139, 143-144: Appendix Tab A]  House assumed that the option grant would be formally documented at a later date [House dep. p. 208-209: Appendix Tab A] and understood that options were formal agreements between an organization and an individual [House dep. p. 110: Appendix Tab A]

Sometime after the July 1997 meeting, First Marblehead prepared and distributed specific incentive stock option grants to employees granted options under the Plan.  [Plaintiff's Answers to Interrogatories, Response No. 6: Appendix Tab B][Exhibit B to Complaint]  House never signed the grant dated June 15, 1997 reflecting the grant of incentive stock options for 2,500 shares. . [House dep. p. 209-210: Appendix Tab A][Answer and Counterclaim of Gregory House, ¶ 31]  House testified that he did not see a copy of the Plan or the specific grant prepared for his signature before he quit First Marblehead on February 28, 1998. . [House dep. p. 209-210: Appendix Tab A][Answer and Counterclaim of Gregory House, ¶ 31]

House made no attempt to exercise his option rights within three months of leaving the Company. [Answer and Counterclaim of Gregory House, ¶ 17]  Rather, in February 2004, almost six years after quitting and after First Marblehead had become a public company, House contacted First Marblehead and for the first time stated that he wanted to exercise his incentive stock option. [House dep. p.212-220: Appendix Tab A] [Answer and Counterclaim of Gregory House, ¶ 17, 31]

On February 27, 2004, First Marblehead advised House that his incentive stock option had expired because he did not exercise it within three months of his termination of employment.  [Answer and Counterclaim of Gregory House, ¶ 31]

6

**Argument**

I. Standard of Review

    a. <u>Fed. R. Civ. P. 56</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that." *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir. 1995) quoting Fed R. Civ. P. 56 (c)). To prevail on summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. *Rogers v. Fair,* 902 F.2d 140,143 (1st Cir. 1990); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party satisfies this requirement, the burden shifts to the non-moving party to establish the existence of at least one factual issue that is both genuine and material. *See LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 841 (1st Cir. 1993); *see also Anderson v.Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To oppose summary judgment successfully, the non-moving party "may not rest upon mere allegation or denials of his pleading," but must set forth specific facts showing that there is a genuine issue for trial. *LeBlanc,* 6 F.3d at 841 (quoting *Anderson,* 477 U.S. at 256). If the evidence is merely colorable or is not significantly probative, summary judgment should be granted. *See Rogers,* 902 F.2d at 143 (quoting *Anderson,* 477 U.S. at 249-50) (citations omitted).

II. HOUSE'S STOCK OPTION RIGHTS ARE GOVERNED BY THE INTERNAL REVENUE CODE AND THE PLAN WHICH BOTH TERMINATE EXERCISE RIGHTS THREE MONTHS FOLLOWING EMPLOYMENT TERMINATION

    a. *The Internal Revenue Code Sets forth the Requirements of Incentive Stock Options*

7

Incentive Stock Options are creatures of statute. The Internal Revenue Code defines incentive stock options as "certain options granted to an individual for any reason connected with his employment by a corporation" and otherwise meeting the criteria set forth in 26 U.S.C. § 422. "The Code sets out a six-part test for incentive stock options and includes additional qualifications." *Hubbard v. United States*, 359 F. Supp. 2d 1123 (W.D. Wash. 2005) citing 26 U.S.C. § 422.[1] Most relevant to this action, the Code requires that incentive stock options be exercised while the holder is employed with the corporation or within three months of his termination of employment. 26 U.S.C. 422(a).

House received Incentive Stock Options. The Code expressly provides for expiration of incentive stock options if not exercised within three months of the holder's termination of employment. House failed to meet this requirement, and the options

---

[1] This main purpose of incentive stock options— providing incentive to employees for continued employment—is also recognized by the courts. See, *Langer v. Iowa Beef Packers, Inc.*, 420 F. 2d at 368 ("primary purpose of a company stock option plan is the attraction and retention of desirable employees"); *Hann v. Hann*, 655 N.E.2d 566, 571 (Ct. App. Ind. 1995) (incentive stock options are "golden handcuffs" tying employee to company); *Broyles v. Synercon Corp.*, 512 S.W. 2d 288, 290 (court recognizes fundamental purpose of incentive stock option agreement is securing and retaining loyal services of desirable employees). See also, *Quinn v. Sherwin-Williams Company*, 982 F. Supp. 190 (W.D.N.Y. 1997). The plaintiff in *Quinn* argued that she was entitled to exercise her deceased husband's incentive stock options for ten years from the date of grant, because the termination clause requiring exercise within twelve months of his death was ambiguous. The court disagreed, reasoning that to accept the plaintiff's interpretation and accord her the ten-year exercise period would require that the court ignore the Plan language describing the purpose of the Plan and the "customary understanding of the purposes of an incentive stock option plan . . . supported by caselaw from the Second Circuit as well as from other jurisdictions". 982 F. Supp. 195 (citations omitted). In essence, House seeks greater exercise rights as a terminated employee than the rights of employees who stay on the job, an interpretation that cannot be permitted. *Broyles v. Synercon*, supra, 512 S.W. 2d at 291. First Marblehead's 1996 Stock Option Plan expressly provides that one of its main purposes is to "provide an incentive to officers and employees for continuous employment" with First Marblehead. The July 7 Memo is consistent: "In addition, stock options can also be viewed as "golden handcuffs" which bind the employee to the company". House's position, that he is entitled to exercise his option for ten years from date of grant even if he leaves the company, is inconsistent with a main purpose of the Plan and the express provisions of the Internal Revenue Code.

expired in May 1998 as a matter of law, well before House first attempted to exercise them.[2]

> b. *Delaware Law Requires Stock Option Plans to be a Written Instrument Approved By The Board of Directors, and First Marblehead's 1996 Plan which requires Exercise Within Three Months of Termination, Governs House's Option Rights.*

First Marblehead is a Delaware corporation. The enactment of a stock option plan and the issuance of stock options by a Delaware corporation involves the internal affairs of a Delaware corporation and therefore, is governed and controlled by Delaware law. *Beard v. Elster*, 39 Del. Ch. 156, 160 A. 2d 731 (1960).

Stock option rights must flow only from a written "instrument" approved by the Board of Directors. 8 Del. C. § 157 . *Michelson v. Duncan*, 386 A.2d 1144 (Del. C. 1978) (after incorporation, every corporation may issue stock options, the terms of which must be as adopted by the board of directors). The Board has exclusive authority to issue stock and regulate the corporation's capital structure. *Grimes v. Alteon Inc.*, 804 A. 2d. 256 (Del. 2002). The purpose of this statutory requirement is to ensure certainty with respect to the issuance of stock and stock options. *Id*. This statutory requirement is strictly construed. *STAAR Surgical Co. v. Waggoner*, 588 A. 2d 1130 (Del. 1991).

Indeed, as a matter of law, House cannot rely on the writings or oral representations of officers or others to establish the terms of his option.[3] 8 Del. C. § 157(a). Under Delaware law, the terms and conditions of any options issued by a

---

[2] While House's understanding or misunderstanding of how incentive stock options work cannot alter their clear statutory requirements, House certainly knew the options he received were incentive stock options or ISO's. All of the documentation House relies on refers to the options as incentive stock options. The July 7 Memo states the options being granted are incentive stock options governed by the Internal Revenue Code. House, a sophisticated financial person who has worked most of his life in the options industry, admitted that at the time he knew that the term "incentive stock option" had legal meaning.

9

corporation must be expressly approved in writing by its Directors. *Id*. Third parties, such as officers or corporate counsel, have no power to bind the corporation. *Grimes v. Alteon, Inc.*, 804 A.2d at 260-61 (holding that alleged promise of chief executive officer to allocate 10% of future stock offerings to existing stockholder was invalid without board approval). The Board's authority to approve stock option plans in writing is exclusive. *Id.* at 261. Furthermore, the Board's duty to adopt the plan by a written instrument is "considered so important that the directors cannot delegate it to the corporate officers". *Id.* citing *Field v. Carlisle*, 68 A.2d 817, 818 (Del. Ch. 1949)

The Delaware Chancery Court recently reaffirmed its strict adherence to the requirements of §157: "Consistent with our law's strict adherence to statutory prerequisites to the issuance and sale of stock, our case law has refused to overlook the statutory invalidity of stock even in situations when that might generate an inequitable result." *Liebermann v. Frangiosa*, 844 A. 2d 992 (Del. Ch. 2002). As set forth in *Grimes v. Alteon, Inc.*, the statutory scheme consistently requires a writing and board approval. *Grimes*, 804 A. 2d at 260. *Id.*

The Plan comports with all the requirements of §157, and fully meets the criteria set forth in the Code. It is a written plan approved by First Marblehead's shareholders. 26 U.S.C. § 422(b)(1)Id. The options granted under the Plan were issued within ten years of the adoption of the plan, as required by statute. 26 U.S.C. § 422(b)(2). Likewise, the Plan expressly limits the exercise date for all options to ten years from the date of grant. 26 U.S.C. § 422(b)(3). The Plan sets the option price at the fair market value of the stock as of the time of grant. 26 U.S.C. § 422(b)(4). The options

---

[3] It is important to note the House has failed to describe any writing or representation by any officer or agent of the Company that is inconsistent with the nature of House's option as an incentive stock option, or its expiration three months after he quit First Marblehead.

granted under the Plan are not transferable except as permitted by 26 U.S.C. § 422(b)(5). The Plan limits grants to individual employees owning less than ten percent of the voting power of stock in First Marblehead. 26 U.S.C. § 422(b)(6). Most importantly to this action, the Plan requires that options be exercised while the holder is employed with the corporation or within three months of termination of employment. 26 U.S.C. §422(a). 33A Am. Jur. 2d Federal Taxation ¶8406 ("For an option to be an ISO, the option holder must, for the entire time from the date the ISO is granted until three months before its exercise, be an employee . . . of the company granting the option. . .")

The Plan is the only plan in effect during House's employment with First Marblehead. Because the Plan was approved by First Marblehead's Board of Directors in October 1996 and the shareholders in March 1997, it conforms with Delaware law. House's rights are governed by this Plan.

House left First Marblehead on February 28, 1998. Under the express terms of the Plan, "options remain exercisable by the grantee for a period not extending beyond three months after the date of the termination of employment." House did not exercise his option before May 28, 1998. In fact, he did not attempt to exercise his option until February 2004. Pursuant to the express terms of the Plan, House cannot exercise the option granted to him and First Marblehead is entitled to summary judgment.

III.   HOUSE CANNOT RECOVER ON HIS BREACH OF CONTRACT OR PROMISSORY ESTOPPEL CLAIMS

House has filed counterclaims against First Marblehead alleging that the Company's failure to permit him to exercise his option is a breach of contract or alternatively that he is entitled to exercise his option under a theory of promissory

11

estoppel.  First Marblehead is entitled to summary judgment on each count of House's counterclaim.

House's breach of contract claim fails for the same reasons that First Marblehead is entitled to summary judgment on its own claim.  House received an incentive stock option and his rights are therefore governed by the Internal Revenue Code and the Plan.  His right to exercise the option expired when House did not exercise within three months of quitting First Marblehead.  He has no breach of contract case.

House's promissory estoppel claim is equally unavailing.  House alleges that he relied on statements made by First Marblehead, to his detriment, that the option was exercisable for ten years from the date of the grant.  Specifically, House points to the July 7 Memo created by First Marblehead's outside attorney.  The July 7 Memo states that the options were exercisable for ten years from the date of grant.  He also relies on statements made by officers of First Marblehead when they asked House to assist in pricing the options, that the options had "fixed expiration of ten years".

As a matter of law, House cannot rely on the July 7 Memo or the oral statements of First Marblehead's officers to establish that he is entitled to an option that can be exercised for ten years without regard to his status as an employee of First Marblehead.  Neither the July 7 Memo nor the oral statements of First Marblehead's officers constitute written instruments approved by First Marblehead's Board of Directors, as required by §157.[4]

---

[4] It is also remarkable that House relies on these particular extraneous statements since they are, in fact, consistent with the Code and the Plan's terms that the options expire no more than ten years after the date of grant.  The issue here is not the <u>term of the option</u> (which can be up to ten years under 26 U.S.C. § 422(b)(3)).  It is House's <u>ability to exercise</u> his incentive stock option more than three months after he quit the Company (as dictated by 26 U.S.C. § 422(a)).  Moreover, House cannot establish that he reasonably relied on these statements warranting his estoppel claim.  The July 7 Memo expressly states that the options were incentive stock options under the Internal Revenue Code, House testified that it did

12

The Delaware court's strict adherence to the requirements of §157 preclude any equitable estoppel claims. *Liebermann v. Frangiosa*, 844 A.2d 992, 1005 (Del. Ch. 2002). A claimant "cannot use principles of equity to achieve a judicial order validating [a] stock [option] that was not issued . . . in conformity with law." *Id.* In *Liebermann*, the plaintiff asserted that the defendant directors should be equitably estopped from denying the validity of preferred shares which they voted to create but which did not otherwise comply with the requirements of §157. Relying on well-established case law, the court rejected plaintiff's argument:

> Based on a broad reading of the venerable Triplex case, the Supreme Court held that the Court of Chancery erred by granting "equitable relief 'akin' to specific performance after it concluded that the . . . preferred shares were invalid." *STAAR Surgical Co. v. Waggoner*, 588 A.2d at 1137. In so ruling, the Supreme Court again embraced the rule that "the equitable doctrine of estoppel is inapplicable to agreements or instruments that violate either express law or public policy." *Id.*; see also *Superwire.com, Inc. v. Hampton*, 805 A.2d 904, 909 n. 17 (rejecting an estoppel argument because the court "cannot give *any* effect to void shares even in the context of an equitable defense").

844 A.2d at 1005, n. 42. The court held that "to the extent that stock is invalid, equitable claims – such as equitable estoppel - will not help a claimant seeking to vote or to validate that stock." 844 A.2d at 1105. House cannot prevail on his estoppel claim as a matter of law.

Summary judgment must be entered in favor of First Marblehead on all counts of House's counterclaim.

---

not encompass all of the terms of the option plan or his grant and that he expected the grant to be formally documented at a later date.

CONCLUSION

For each of the above reasons, First Marblehead's motion for summary judgment should be allowed and judgment should enter in favor of First Marblehead on all claims and counterclaims.

                                                    Respectfully submitted,

                                                    THE FIRST MARBLEHEAD CORPORATION
                                                    By its attorneys


                                                  /s/ Kenneth J. DeMoura
                                                  Kenneth J. DeMoura (BBO#548910)
                                                  ADLER POLLOCK & SHEEHAN, P.C.
                                                  175 Federal Street
                                                  Boston, Massachusetts 02110
                                                  (617) 482-0600

Dated: July 1, 2005