## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

------------------------------------------------------------

FIRST MARBLEHEAD CORP.,                    )
                                           )
        Plaintiff,                        )
                                           )
vs.                                        )    Civil Action No. 04-11263PBS
                                           )
GREGORY HOUSE,                             )
                                           )
        Defendant.                        )

------------------------------------------------------------

### DEFENDANT'S RULE 56(F) AFFIDAVIT

STATE OF NEW YORK    )
                   ) ss. :
COUNTY OF NEW YORK  )

       PETER N. WANG, ESQ., being duly sworn, deposes and says:

       1.     I am a member of the law firm of Foley & Lardner LLP and counsel of record (admitted *pro haec vice*) for Gregory House ("House") in this action.  I make this affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure and in opposition to the motion of plaintiff First Marblehead Corp. ("First Marblehead" or the "Company") for summary judgment (the "Motion").

       2.     While the considerations advanced in the accompanying Memorandum of Law, and the Appendix thereto, are more than sufficient to refute First Marblehead's arguments for summary judgment, there are also certain open (and timely made) discovery requests that would show additional facts, currently unavailable to House, that also would support his claims and defenses in this action.  As more fully set forth in House's Motion to Compel (Attached hereto as Ex. 1), filed on June 28, 2005, First Marblehead wrongfully has withheld several categories of relevant, responsive, non-privileged documents and information, despite House's diligent efforts to obtain

discovery and to confer in good faith to resolve these discovery issues. First Marblehead should not be allowed, by wrongfully withholding discovery, to put itself in a better position in its Motion than it would have been had it made full and prompt disclosure.

3.     Despite repeated requests by House, First Marblehead has failed to produce responsive, relevant, non-privileged documents and information that House requires to properly oppose First Marblehead's Motion for Summary Judgment. One of the key documents at issue is a critical memorandum (the "Supplemental Memo") which, according to its author Rodney Hoffman (then outside general counsel for the Company), was intended to correct another memorandum (the "Memo") distributed to House and others describing the terms of House's options (the "Options"). Specifically, Hoffman testified that he drafted the Supplemental Memo to address the omission from the earlier, distributed Memo of a purported requirement that optionees exercise their Options within three months of their departure from the Company[1] – the very requirement First Marblehead now asserts renders House's Options expired. Hoffman further testified that he gave the Supplemental Memo to the Company with the intention that it be distributed to Optionees[2] – which, for reasons unknown, it never was.

4.     The Supplemental Memo is highly relevant and material. Among other things, it appears to represent an admission by the Company that it knew it had misled employees (including House) regarding the terms of their Options, and that it knew as early as 1997 that it was reasonably likely that its employees would rely on the Company's earlier, apparently erroneous Memo.

---

[1]    Hoffman Dep., 51-53 (Appendix Tab G)

[2]    Hoffman Dep., p. 71 (Appendix Tab G)

5.     First Marblehead also continues wrongfully to withhold documents relating to the grants of options given to employees other than House, based purportedly upon privacy and confidentiality concerns.  Not only is this not a valid basis for withholding discovery under the Federal Rules of Civil Procedure, but it is particularly errant in light of House's offer to consent to the entry of a protective order that would have alleviated First Marblehead's (unfounded) concerns.

6.     Like the Supplemental Memo, the documents related to other employees' option grants also are both relevant and material.  For one thing, one of the key disputed issues in this litigation is whether House ever received a formal stock option agreement (the Company admits only that House never *signed* such an agreement; House insists he never received one).  Although First Marblehead asserts that other employees were given copies of their grants, its refusal to produce these documents has left House unable to verify this claim.  These documents are critical, as they should demonstrate that either (i) House was unique in that he was the only employee not to receive a grant, or (ii) no employees received formal option grants.

7.     The documents related to other employees' option grants are material for another reason – they may demonstrate the extent to which the Company exercised the flexibility it possessed under the 1996 First Marblehead Stock Option Plan to grant Options with varying terms.  For example, testimony from a key First Marblehead principal suggested that First Marblehead may have granted non-qualified options to Ralph James, which would support House's claim that he received non-qualified Options.[3]  Again, because First Marblehead refuses to produce these documents, House is

---

[3]     Meyers Dep., pp. 87-88 (Appendix Tab A)

unable fully to oppose First Marblehead's Motion, or to support his claims and defenses. As a result, First Marblehead's Motion for Summary Judgment should be denied, First Marblehead should be ordered to produced the documents and information House seeks in his Motion to Compel, and House should be given the opportunity to review these materials.

_____
PETER N. WANG

Sworn to before me this
15th day of July, 2005.

_____
Notary Public

DEBRA A. RYAN
Notary Public, State of New York
No. 01RY5077237
Qualified in Nassau County
Commission Expires May 5, 20___

4

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
--------------------------------------------------------
FIRST MARBLEHEAD CORP.,              )
                                     )
              Plaintiff,             )
                                     )
vs.                                  )   Civil Action No. 04-11263PBS
                                     )
GREGORY HOUSE,                       )
                                     )
              Defendant.             )
--------------------------------------------------------
```

### MOTION TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS AND FOR SANCTIONS

NOW COMES THE DEFENDANT, Gregory House ("House"), pursuant to Federal Rule of Civil Procedure ("FRCP") 37 and Local Rule 37.1, and requests that this Court compel Plaintiff First Marblehead Corp. ("First Marblehead") to produce the following categories of information and/or evidence, as further described in the supporting memorandum and attachments submitted herewith:  (i) all documents being withheld on the grounds of "Business Confidentiality and Privacy of Employees", including but not limited to documents constituting and describing grants of First Marblehead stock options to First Marblehead employees other than House; (ii) all documents being withheld purportedly pursuant to attorney-client privilege/work product that were drafted with the intention that they be distributed to First Marblehead employees, including but not limited to a July 1997 memorandum entitled "Corrections and Amplifications" drafted by Rodney Hoffman; and (iii) all documents being withheld as work product that were not created in anticipation of litigation, including but not limited to the July 1997 memorandum drafted by Hoffman described above.  In addition, as a sanction for wrongfully withholding discoverable documents, House respectfully submits that First Marblehead should be ordered to reimburse House for the costs of bringing this Motion.

The grounds for this motion and legal authority pertinent hereto are set forth in a supporting memorandum and attachments, submitted herewith.  Counsel for House and counsel for First Marblehead have exchanged multiple correspondence and engaged in numerous conferences regarding discovery, thereby narrowing the matters in controversy as required by Local Court Rule 37(a)(1).

Respectfully submitted,
Gregory House,
By his attorneys,

/S/William T. Hogan III
William T. Hogan, III BBO # 237710
Elizabeth D. Killeen BBO # 645178
**Hogan, Roache & Malone**
66 Long Wharf
Boston, MA  02110
(617) 367-0330

Peter N. Wang
Yonaton Aronoff
**Foley & Lardner LLP**
90 Park Avenue
New York, NY 10016
Attorneys for Defendant

Date: June 28, 2005

**LOCAL RULE 37.1 CERTIFICATE**

I, Yonaton Aronoff, Esq., do hereby certify that I have conferred with counsel for Plaintiff, First Marblehead Corp., by telephone, email and letter on several occasions in advance of filing this Motion to Compel, in a good faith effort to narrow the areas of disagreement.  However, as described in the foregoing Motion to Compel Further Responses to Requests for Production of Documents and for Sanctions, Plaintiff's discovery responses remain wholly deficient.

  /s/: Yonaton Aronoff
Yonaton Aronoff

CERTIFICATE OF RULE 7.1 CONFERENCE AND OF SERVICE

I, William T. Hogan III, hereby certify that, prior to filing the above motion, counsel conferred concerning this motion and attempted in good faith to resolve or narrow the issues.  I further certify that on this 28th day of June 2005, I filed a copy of said motion electrically.  Notice of this filing will be sent to all parties via the United States District Court electronic filing system.  Parties may access this filing through the Court's system.

/s/William T. Hogan III
William T. Hogan III

2

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---------------------------------------------------------

FIRST MARBLEHEAD CORP.,       )
                                 )
            Plaintiff,        )
                                 )
vs.                                )    Civil Action No. 04-11263PBS
                                 )
GREGORY HOUSE,            )
                                 )
            Defendant.     )

---------------------------------------------------------

## DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS AND FOR SANCTIONS

Defendant Gregory House ("House") respectfully submits this Memorandum in support of his Motion to Compel Further Responses to Requests for Production of Documents and for Sanctions (the "Motion"). This Motion is necessary because Plaintiff First Marblehead Corp. ("First Marblehead" or the "Company") stubbornly has failed and refused to produce responsive, relevant, non-privileged documents and information that House requires for his claims and defenses in this action. Despite repeated attempts by House to narrow the areas of disagreement between the parties as required by Local Rule 37.1, First Marblehead's document production remains wholly inadequate. Among other things, First Marblehead refuses, without justification, to produce a critical memorandum which, according to its author, was intended to clarify the terms of certain employees' First Marblehead stock options, and further refuses to produce documents reflecting the grants of options to employees other than House. As a consequence, House is forced to bring the Motion.

## FACTUAL BACKGROUND

This action arises out of House's attempt to exercise the employee stock options (the "Options") First Marblehead granted House during his employment. House, together with

certain other First Marblehead employees, was granted his Options in or around the spring of 1997.  House's Options contained a $32 per share "strike price," and were subject to the condition that they be exercised within ten years.  All of his Options were fully vested upon his voluntary departure from First Marblehead in February 1998.

First Marblehead went public in October 2003, as a result of which House's Options – which previously had been of little value – became worth more than $7 million as of early 2005. In February of 2004 House timely notified First Marblehead that he wished to exercise his Options.  In response, House received a letter from First Marblehead's outside counsel asserting that House's Options had expired pursuant to a purported written stock option agreement.  The letter included a copy of the purported agreement – unsigned by House - which included among its provisions the requirement that the options be exercised within 90 days of an employee's departure from First Marblehead.  Prior to receiving that letter, House had never before laid eyes on that "agreement", nor had he seen (much less been given) a copy of the 1996 First Marblehead Stock Option Plan.

Thereafter, while House and his counsel were attempting to discuss a settlement with First Marblehead to avoid litigation (which House had told First Marblehead would be commenced in New York), First Marblehead raced to the Courthouse and commenced its own action seeking a declaratory judgment that House's Options had expired.[1]  In response, House asserted counterclaims for breach of contract and promissory estoppel.  (A copy of House's Answer and Counterclaims is attached hereto as Ex. A)

---

[1]     The case was commenced in Massachusetts state court, and subsequently removed to Federal Court.

Notably, and relevant to the instant Motion, First Marblehead does not now dispute that House never was provided with a copy of the stock option agreement First Marblehead claims governs his Options.[2] Moreover, neither of the two documents First Marblehead actually gave to House relating to his Options mention the purported 90-day exercise requirement. One of those documents consists of a July 7, 1997 memorandum (attached hereto as Ex. C) written by Rod Hoffman, outside counsel for First Marblehead, which, among other things, outlines the "principal terms" of the Options, which include, <u>only</u>, the Options' "strike price" ($32 per share), vesting schedule, the termination of unvested Options upon an employee's resignation or termination for cause, and ten-year duration.[3] There was <u>no</u> provision relating to the purported 90-day post-employment exercise requirement. Hoffman distributed this memorandum to certain First Marblehead employees who had received Options. As will be further described below, Hoffman apparently later realized that he mistakenly had omitted from this memorandum

---

[2]   Initially, First Marblehead alleged in its Complaint (attached hereto as Ex. B) that, "Upon information and belief, sometime after the option grant was made to House, First Marblehead provided House with a Stock Option Agreement which further set forth the terms of the grant". (Complaint, ¶ 10)  However, in its subsequent response to House's Requests for Admission (attached hereto as Ex. D), First Marblehead reversed course and admitted (in its Responses to Defendant's First Set of Interrogatories, attached hereto as Ex. E) that "it is presently unknown whether House knew or was advised, orally or in writing, that he was required to exercise his stock options within 90 days of his termination of employment with First Marblehead" (Response no. 11).  Subsequent deposition testimony of every knowledgeable First Marblehead officer reinforced the admission that House never received this purported agreement, nor was he told of the purported 90-day exercise requirement.  Despite this development, and in contravention of its duty under Fed. R. Civ. P. 26(e)(2) and in further disregard for the rules governing discovery, First Marblehead never supplemented its responses to admit formally this fact.  Indeed, how First Marblehead alleged in its Complaint, consistent with Rule 11, that House had been "provided" with the agreement, remains a mystery.

[3]   The other document First Marblehead gave to House relating to his Options consisted of a handwritten worksheet indicating that House had been granted 2,500 Options with a strike price of $31.25 per share, having a total value (at that time) of $78,125.

any mention of the 90-day exercise requirement, and drafted a supplemental memo (the "Supplemental Memo") to "correct" the error.  Despite Hoffman's admission during his deposition that he gave the Supplemental Memo to First Marblehead with the intent that it be distributed to Option grantees, the Company never distributed the Supplemental Memo, did not inform House of its existence in response to his First Request for the Production of Documents, and wrongfully has refused to produce it.

## PROCEDURAL BACKGROUND

From the outset, First Marblehead has treated the discovery process as if it were little more than a game.  House propounded his First Request for Production of Documents (the "First Request", attached hereto as Ex. F) on November 12, 2004.  First Marblehead produced hardly any documents in response, and, notably, failed to provide a privilege log as required by Local Rule 34.1(e).[4]  As a result, although it was obvious at that early stage that First Marblehead had withheld several categories of responsive documents, House was kept in the dark as to the specific documents and categories of documents that were missing from First Marblehead's production.  Crucially, in the course of its initial production First Marblehead never indicated that it withheld the Supplemental Memo – and likely never would have, had Hoffman not revealed its existence during his deposition.  (See Hoffman Dep. pp. 51:14-53:18, 62:5-71:20, relevant passages attached hereto as Ex. G)  It further became apparent during Hoffman's deposition that First Marblehead also had refused to produce documents relating to the stock

---

[4]     House requested repeatedly that First Marblehead provide a privilege log, such that would inform House as to the universe of documents withheld by the Company.  During Rodney Hoffman's deposition on February 14, First Marblehead's counsel promised on the record to provide a privilege log.  (Hoffman Dep. pp. 15:16-16:10, relevant passages attached hereto as Ex. H)  Despite that promise, First Marblehead did not provide a privilege log until June 13, three days after the discovery cutoff date had passed – and months after it should have been provided.

option grants of other employees because, according to First Marblehead's counsel Kenneth

DeMoura, such grants are "private with respect to those employees." (Hoffman Dep. pp. 17:7-

18:6, relevant passages attached hereto as Ex. I)

As a result of the depositions of Ralph James, Rodney Hoffman, and Dan Meyers,

conducted on February 14 and 15, 2005, House's suspicions were confirmed that First

Marblehead had failed to produce relevant, responsive documents. House sent First Marblehead

a letter on February 28, 2005 (i) requesting specifically the Supplemental Memo and copies of

other employees' stock option grants, among other items, and (ii) insisting that First Marblehead

provide a privilege log. (A copy of that letter is attached hereto as Ex. J) House received no

response to this letter.

Over the next several months, House attempted several times to confer with First

Marblehead in an effort to resolve the remaining discovery issues, to no avail. Specifically, in an

effort to alleviate any concerns First Marblehead might have with respect to confidentiality

(although such concerns are unfounded), House's counsel offered to agree to the entry of a

protective order. First Marblehead did not even respond to this reasonable (though unnecessary)

request.

First Marblehead's utter disregard for the discovery rules continued throughout the

discovery period, which ended on June 10. For instance, at his deposition, Ralph E. Anbinder

(Vice Chairman of the First Marblehead Board of Directors) revealed that he never was asked to

search his files for documents responsive to House's First Request (Anbinder Dep. pp. 28:17-23,

relevant passages attached hereto as Ex. K) – despite the fact that he was House's immediate

supervisor during House's tenure at First Marblehead. The subpoena for documents House

served upon William R. Berkley (a First Marblehead outside director) never was responded to. (A copy of the subpoena is attached hereto as Ex. L)

In an attempt to confer to resolve these and other discovery issues, House's counsel sent an email on May 2, 2005, asking First Marblehead's counsel to conduct a discovery conference as required by Local Rule 37.1. (A copy of the May 2, 2005 email is attached hereto as Ex. M) The email went unanswered and, on May 23, 2005, counsel for House sent another letter, again requesting that First Marblehead provide, among other items, copies of other employees' option grants, and a privilege log. (A copy of the May 23, 2005 letter is attached hereto as Ex. N) Again, there was no response.

Following an unsuccessful attempt at mediation before Mag. Judge Swartwood, the parties jointly submitted a petition requesting an extension of the discovery deadline. The Court denied this petition, leaving June 10 as the discovery deadline. The parties then agreed to confer to attempt to resolve the remaining discovery issues, and scheduled a conference call for the morning of June 8. At First Marblehead's last-minute request the conference was postponed to the following Monday, June 13. Left with no alternative, House served First Marblehead with a Second Request for Production of Documents on June 10. (The "Second Request", a copy of which is attached hereto as Ex. O) In his Second Request, House again requested that First Marblehead produce, among other items, the Supplemental Memo and all documents relating to other employees' option grants.

On June 13, the parties made one final attempt to discuss the remaining withheld documents responsive to House's discovery requests. It was only then, well beyond the eleventh hour, that First Marblehead belatedly provided its privilege log. (A copy of First Marblehead's Privilege Log is attached hereto as Ex. P) The parties informally agreed to exchange all

remaining production by the end of that week.  That Friday, June 17, having not received any

additional documents or otherwise heard from First Marblehead, House's counsel called Mr.

DeMoura's office in the afternoon, only to find out that he had already left for the weekend.

House's counsel then sent Mr. DeMoura an email inquiring about the status of the remaining

production.  Mr. DeMoura responded by email that following Monday, June 20, indicating that

there was "no change to report", and that "First Marblehead will not provide information

regarding option grants to other employees."  (Copies of Mr. Aronoff's June 17 email and Mr.

DeMoura's June 20 response are attached hereto as Ex. Q)  Having failed in his efforts to

persuade First Marblehead to produce voluntarily the remaining documents responsive to his

discovery requests, House had no choice but to file the instant Motion.

## ARGUMENT

**I.     FIRST MARBLEHEAD WRONGFULLY REFUSES TO PRODUCE RELEVANT NON-PRIVILEGED DOCUMENTS**

### A.     First Marblehead Wrongfully Refuses to Produce Stock Option Grants Issued to Employees Other Than House

First Marblehead refuses to produce documents related to the option grants given to

employees other than House, under the untenable notion that such documents are confidential

and private, and therefore "privileged."  No such privilege exists, and the proper procedure First

Marblehead should have followed to address its confidentiality concern would have been to seek

a protective order.  Indeed, in an effort to move the discovery process forward, House

volunteered to submit to a protective order that would have alleviated First Marblehead's

(unfounded) concerns.

House propounded the following request to First Marblehead in his First Request:

> Request No. 4:  All documents concerning, relating to, reflecting or comprising any grant(s) of employee stock option(s) to any First Marblehead employee(s), including, but not limited to, any correspondence pertaining to same.

First Marblehead responded as follows (First Marblehead's Response to Defendant's First Request for Production of Documents is attached hereto as Ex. R):

> Response No. 3:  First Marblehead objects to this request to the extent that it seeks documents relating to stock option plans adopted by First Marblehead after defendant's termination of employment and to the extent that it seeks private and confidential information concerning individual employees other than defendant.  Subject to the foregoing general and specific objections, First Marblehead produces herewith documents responsive to this request.

In response to this request, First Marblehead produced, only, the stock option agreement unsigned by House.  No other option grants were produced.

After oral discovery confirmed the existence of option grants made to other employees, House again requested such documents in his Second Request:

> Request No. 10:  All documents reflecting and/or constituting grants of First Marblehead stock options, from 1995 to present.

Once again, First Marblehead refused to provide these documents.

It almost goes without saying that documents reflecting or relating to stock option grants made to other employees are both relevant and discoverable.  Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery regarding "any matter, not privileged, that is relevant to the claim or defense of any party … Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  One of the issues in this case is whether and how House's grant of Options may have differed from the grants given to other First Marblehead employees.  Specifically, House is entitled to know, among other things, how the terms of his Options differed from those of other employees, and how the terms of various employees' grants differed from each other.  This information is

extremely important:  on the one hand, House's Options may be unique in that they may have been the only First Marblehead stock options that vested immediately and were fully exercisable for ten years.  This would demonstrate that House had a special arrangement with First Marblehead with respect to his Options, one which the Company now wrongfully refuses to honor.  Alternatively, it may be the case that other employees' options varied in terms of their durations, strike prices, vesting schedules, etc.  This would indicate that the Company exercised a significant degree of flexibility under the 1996 Stock Option Plan to grant different kinds of options, or perhaps even that the Company granted options that were inconsistent with the express terms of said Plan.

The documents relating to the other employees' stock option grants are further relevant in that they should shed light on the question of whether and when employees received and signed written stock option agreements.  As noted earlier, House neither received nor signed a copy of the purported "agreement" First Marblehead now claims governs his Options.  If House was the only employee who never received a written grant, or, alternatively, if other employees also never received their grants, or if their grants were received years after the fact, such information could help demonstrate the reasonableness of House's reliance on First Marblehead's promises to him, among other things.

Although First Marblehead plainly understands and accepts the relevance of the stock option grants, it continues to withhold the stock option grants[5] as "privileged" on the grounds of "business confidentiality" and "privacy of employees".  Not only are no such privileges

---

[5]    According to First Marblehead's privilege log, the Company has withheld documents related to (i) a grant dated 10/15/96 to Ralph James, (ii) grants dated 6/15/97 to "various employees", and (iii) grants dated 6/15/98 to "various employees".  House has requested that all of these documents be produced.

recognized in Massachusetts (or elsewhere), but it is doubtful that the documents related to the stock option grants could even be deemed "private" or "confidential". Assuming, as House is forced to, that the grants given to other employees are substantially similar to the unsigned stock option agreement the Company claims governs House's Options (a copy of that purported agreement is attached hereto as Ex. S), the grants merely set forth the terms of the stock options, the name of the option holder, and the number of options granted. Moreover, First Marblehead has disclosed in its public filings much of the information the Company now claims is "privileged" – i.e., the names of certain of the individuals granted options, and the number of options outstanding.[6]

Even if, *arguendo*, the contents of other employees' stock option grants are private and/or confidential, First Marblehead's withholding of the documents as "privileged" is without any justification. It is well-settled that "[c]onfidentiality generally does not constitute grounds to withhold discovery. It does not equate to privilege." Mike v. Dymon, Inc., 1996 WL 674007, *3 (D. Kan. 1996) (citing Fed. Open Mkt. Comm. v. Merrill, 443 U.S. 340, 362 (1979)). The Federal Rules "do not differentiate between information that is private or intimate and that to which no privacy interests attach … the Rules often allow extensive intrusion into the affairs of both litigants and third parties." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 30, 104 S. Ct. 2199, 2206 (1984). Similarly, Massachusetts does not exempt from discovery documents

---

[6]     The Company's public filings do not disclose the specific terms of the various options granted, nor do they indicate whether individual employees actually received and signed their stock option agreements –two issues extremely relevant to House's claims and defenses.

relating to "business confidentiality," and such a privilege is not recognized in other jurisdictions.[7]

　　　　To the extent that First Marblehead is concerned about confidentiality, that concern has been addressed by House's offer to enter into an appropriate protective order.  As the Court instructed in Leary v. Geoghan, 2001 WL 1902393, *9 (Mass. Super. Ct. 2001),

> Where issues of confidentiality, as opposed to clearly recognized privileges, present themselves or when particular discovery disputes are not amenable to the rules governing specific types of discovery, than the parties need only look to Mass. R. Civ. P. Rule 26(c) to request a protective order from the court or to oppose such a request.[8]

First Marblehead declined to accept the offered protective order, and instead unilaterally withheld the stock option grants.  Its gamesmanship has forced House to bring this Motion – further justifying, as discussed below, the imposition of sanctions.  See, e.g., Moloney v. United

---

[7]　　See, e.g., IPALCO Enters., Inc. v. PSI Res., Inc., 148 F.R.D. 604, 606 (S.D. Ind. 1993 ("Neither federal common law nor federal case law establishes an evidentiary privilege for business strategies"); see also THK America, Inc. v. NSK Co. Ltd., 157 F.R.D. 637, 641 (N.D. Ill. 1993) ("there is no absolute privilege against production of trade secrets and similar confidential business information"; such material properly the subject of a protective order); Audiotext Communications Network, Inc. v. US Telecom, Inc., 1995 WL 625962, *11 (D. Kan. 1995) ("That information may be confidential does not make it privileged").

[8]　　See also Levin v. Ilan, 60 Mass. App. Ct. 1123, 1124, 805 N.E. 2d 1035, 1036 (Mass. App. Ct. 2004) (unpublished; a copy of which for the Court's convenience is attached hereto as Ex. T) (plaintiffs engaged in "foot dragging" by withholding documents based upon the "dubious assertion of a claimed 'privilege'"; proper procedure would have been to seek a protective order; discovery sanctions upheld); Andrew Corp. v. Rossi, 180 F.R.D. 338, 340, 342 (N.D. Ill. 1998) ("to facilitate discovery, confidential information is customarily made available … under a protective order"; "there is no absolute privilege for trade secrets and similar confidential information") (citations omitted); IPALCO Enters., 148 F.R.D. at 607 ("Protection of business strategies from discovery, if it is to exist at all, must come under the provisions of Rule 26(c)"); Audiotext Communications Network, 1995 WL 625962 at *11 ("When parties resist discovery on grounds of confidentiality, they should seek protection pursuant to Fed. R. Civ. P. 26(c)").

11

States, 204 F.R.D. 16, 21 (D. Mass. 2001) ("[I]t is improper to assert a privilege and then sit back and require the opposing party to file a motion to compel"; sanctions awarded).

### B. First Marblehead Wrongly Withholds as "Privileged" the Supplemental Memo and Other Documents Addressed to First Marblehead Employees

As described above, during the deposition of Rodney Hoffman, First Marblehead's former general counsel, it was revealed, for the first time, that Hoffman had drafted a memorandum – the Supplemental Memo – that purported to "correct" mistakes he made in an earlier memorandum that he had distributed to certain option grantees, including House. (Hoffman Dep. pp. 51:14-53:18, 62:5-71:20, relevant passages attached hereto as Ex. G) Hoffman testified that he authored the Supplemental Memo specifically to correct the omission from his earlier memorandum of a purported requirement that employees exercise their options within 90 days of their departure from the Company – the very requirement that, according to First Marblehead, renders House's Options now expired.

Although Hoffman testified that he gave the Supplemental Memo to the Company with the intent that it be distributed to the employees who had received his earlier memo, including House, First Marblehead apparently chose not to distribute the Supplemental Memo. More to the point, First Marblehead took steps to conceal from House the existence of the Supplemental Memo, despite the Memo's responsiveness to House's discovery requests. In his First Request, House propounded the following requests (First Marblehead's responses are included):

Request No. 2: All documents concerning, relating to, or reflecting House's employment with First Marblehead, including, but not limited to, documents relating to the terms of House's employment at First Marblehead, benefits, salary, and stock option(s).

Response No. 2: First Marblehead objects to this request to the extent it seeks confidential business information. Subject to the foregoing general and specific objections, First Marblehead produces herewith documents responsive to this request.

<u>Request No. 3</u>:  All documents concerning, relating to, reflecting or comprising any First Marblehead employee stock option plan(s), including but not limited to, any and all documents concerning or evidencing the terms of same.

<u>Response No. 3</u>:  First Marblehead objects to this request to the extent that it seeks documents relating to stock option plans adopted by First Marblehead after defendant's termination of employment and to the extent it seeks private and confidential information concerning individual employees other than the defendant.  Subject to the foregoing general and specific objections, First Marblehead produces herewith documents responsive to this request.

<u>Request No. 4</u>:  All documents concerning, relating to, reflecting or comprising any grant(s) of employee stock option(s) to any First Marblehead employee(s), including, but not limited to, any correspondence pertaining to same.

<u>Response No. 4</u>:  First Marblehead objects to this request to the extent that it seeks documents relating to stock option plans adopted by First Marblehead after defendant's termination of employment and to the extent that it seeks private and confidential information concerning individual employees other than the defendant.  Subject to the foregoing general and specific objections, First Marblehead produces herewith documents responsive to this request.

At no point did First Marblehead assert the attorney-client privilege or work product doctrine as a specific objection to any of these requests.[9]  To make matters worse, First Marblehead failed timely to provide a privilege log that would have disclosed to House the existence of the Supplemental Memo.

As detailed above, after Hoffman's deposition revealed the existence of the Supplemental Memo, House requested that it be produced.  House also reiterated this request in his Second Request:

---

[9]     In its response to Request No. 1 of House's First Request ("All documents relied upon in drafting the Complaint"), First Marblehead *specifically* objected on the grounds that "it requests disclosure of information protected from discovery by the attorney-client privilege and the work product doctrine."  The fact that this objection was not raised in response to Requests Nos. 2-4, to which the Supplemental Memo clearly was responsive, could only mean that First Marblehead either did not at that time deem the Supplemental Memo privileged, or wished to conceal from House its existence.

<u>Request No. 9:</u>  The supplemental memorandum drafted by Rodney Hoffman in or around 1997 relating to the terms of the 1996 Stock Option Plan, and all drafts thereof.

House did not receive First Marblehead's privilege log until after he propounded his Second Request.  First Marblehead listed the Supplemental Memo on that late-appearing log, (labeling it "Corrections and Amplifications", drafted by Hoffman and addressed to "First Marblehead Employees").  The log indicates that the Company has withheld the Supplemental Memo on the basis of "attorney-client" privilege and/or the "work product" doctrine.  Additionally, the privilege log lists another memorandum, entitled "Employee Stock Option Plan", also as withheld on the basis of attorney-client privilege and the work product doctrine.  That memorandum is dated July 11, 1997 (four days after Hoffman's first distributed memorandum), and also was authored by Hoffman and addressed to "First Marblehead Employees".

There is little question that both of the improperly withheld memoranda are relevant to House's claims and defenses.  House seeks to establish, among other things, that he never was told of the purported requirement that he exercise his Options within 90 days of his departure from First Marblehead, and that House relied reasonably on the Company's promise to him that he would have ten years, unconditionally, to exercise his Options.  The Supplemental Memo represents a concrete admission by First Marblehead that, as far back as July 1997, the Company knew it was reasonably foreseeable that its employees would rely on the errors in Hoffman's earlier memorandum.

First Marblehead's assertion of privilege with respect to these two documents is wholly unfounded.  "Since the attorney-client privilege runs contrary to full disclosure of pertinent information, it should be strictly construed."  <u>Ploof v. Cornu-Schaab Props., Inc.</u>, 1993 WL 818733, *2 (Mass. Super. Ct. 1993).  For this reason, to be protected from disclosure on the basis of attorney-client privilege "a document must have been intended to be confidential and made for

14

the purpose of giving or obtaining legal advice." City of Springfield v. Rexnord Corp., 196

F.R.D. 7, 9 (D. Mass. 2000). The memoranda prepared by Hoffman satisfy neither part of this

test.

To begin with, the memoranda never were intended to be confidential, as they both are

addressed generally to "First Marblehead Employees." It is well-settled that "[c]ommunications

between an attorney and his client are not privileged, though made privately, if it is understood

that the information communicated is to be conveyed to others." Peters v. Wallach, 366 Mass.

622, 627, 321 N.E. 2d 806, 809 (Mass. 1975).[10] Hoffman expressly testified at his deposition

that he gave the Supplemental Memo to the Company intending that it be distributed to the First

Marblehead employees who had received his earlier, erroneous memorandum, including House:

> Q. Did you intend that that supplement – withdrawn. Exhibit 3[11] that
> we're looking at was intended for distribution to employees of First
> Marblehead, right?
>
> A. Yes.

---

[10]    See also Brossard v. Univ. of Mass., 1998 WL 1184124, *6 (Mass. Super. Ct. 1998)
(citing Peters and holding that draft letters that were identical to final versions mailed to
third parties must be disclosed); Ploof, 1993 WL 818733 at *4-6 (counsel who drafted
letters given to third parties could be deposed about their authorship); City of Springfield,
196 F.R.D. at 8-10 (documents prepared by counsel were intended for dissemination to
public, therefore not privileged); Gretsky v. Miller, 160 F. Supp. 914, 915 (D. Mass.
1958) ("If the fact that an attorney drew, or prepared documents, can ever be regarded as
a communication, it is not a confidential one where the documents are for a public, or
quasi public, purpose, intended to be disclosed to third persons"); United States v.
Rockwell Int'l, 897 F.2d 1255, 1265 (3d Cir. 1990) ("The attorney-client privilege does
not apply to communications that are intended to be disclosed to third parties"); United
States v. Bergonzi, 216 F.R.D. 487, 493-94 (N.D. Cal. 2003) (report and related materials
drafted by attorney with the understanding that they were to be disclosed to the
Government not privileged); Henderson v. Nat'l R.R. Passenger Corp., 113 F.R.D. 502,
509 (N.D. Ill. 1986) ("Communications are not made in confidence when they are
intended to be disclosed to a third party").

[11]    "Exhibit 3" refers to Hoffman's earlier memorandum.

15

Q.  In fact, it's addressed that way.

A.  Yes.

**Q.  Did you intend for the supplement to be similarly distributed?**

**A.  Yes.**

Hoffman Dep., pp. 71:6-16.  (Relevant passages attached hereto as Ex. G) (emphasis added)

Moreover, the facts suggest that the memoranda conveyed no legal advice, but rather, merely described the terms of the 1996 First Marblehead Stock Option Plan – further bringing the memoranda outside the realm of attorney-client privilege.  It is axiomatic that the attorney-client privilege does not apply where attorneys act merely as "couriers of factual information, rather than legal advisers."  Dawson v. New York Life Ins. Co., 901 F. Supp. 1362, 1367 (N.D. Ill. 1995) (internal quotation marks omitted).[12]

### C.    First Marblehead Improperly Invokes the Work Product Doctrine

In its privilege log, First Marblehead asserts the work product doctrine as an additional basis for its withholding of the two July 1997 memoranda drafted by Rodney Hoffman, as well as a 11/22/96 First Marblehead Stock Option Plan with Hoffman's notes, a 12/11/96 memorandum drafted by Hoffman and addressed to Daniel Meyers and Victor M. Samra, Jr., and a 1/13/97 memorandum drafted by Hoffman and addressed to the "Stock Option Subcommittee of the Board of Directors".  The Company has misapplied this doctrine, and it should not operate to shield these items from disclosure.

---

[12]     Even to the extent that Hoffman may have conveyed "advice" through the memoranda, such advice was not "legal" in nature, but was more akin to business advice.  Such advice is not protected from disclosure by the attorney-client privilege.  See, e.g., Itoba Ltd. v. LEP Group PLC, 930 F. Supp. 36, 43 (D. Conn. 1996) (ordering disclosure of memorandum that attorney authored in connection with his role as a "business advisor" rather than as a legal advisor).

In order for the work product doctrine to apply, documents <u>must</u> be prepared in anticipation of litigation. "The work product doctrine is not an umbrella that shades all materials prepared by the lawyer, the doctrine focuses on material assembled and brought into being in anticipation of litigation … If the materials are assembled in ordinary course of business or pursuant to public requirements unrelated to litigation, the documents are not shielded by the work product privilege." <u>Exxon Chem. Patents, Inc. v. Lubrizol Corp.</u>, 131 F.R.D. 668, 670 (S.D. Tex. 1990).[13] Moreover, litigation must be more than a "remote possibility … the document must be prepared with an eye to some specific litigation." <u>Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.</u>, 125 F.R.D. 51, 54 (S.D.N.Y. 1989) (internal quotation marks omitted).

Here, the memoranda and other documents withheld by First Marblehead as "work product" were prepared well before House even left First Marblehead, and some seven to eight years before the instant litigation. As a result, it cannot possibly be argued that the work product doctrine applies to shield these materials from disclosure.

**D.    Sanctions Should Be Imposed Against First Marblehead, Including the Entry of Judgment in House's Favor**

Simply put, First Marblehead has treated the discovery process as if it were sport. To summarize, First Marblehead's outrageous behavior consisted of the following acts, among others:

- Failing to instruct Stephen E. Anbinder, House's direct supervisor during his tenure at the Company, to search for documents in his possession responsive to House's First Request;

---

[13]    <u>See also</u> 8 Wright, Miller & Marcus, *Federal Practice and Procedure*: Civil 2d § 2024 ("[T]here is no work product immunity for documents prepared in the regular course of business rather than for purposes of the litigation").

- Failing to produce numerous documents responsive to House's First Request and subsequent requests and correspondence, including the Supplemental Memo and other employees' stock option grants;

- Refusing, until the discovery cutoff date had passed, to provide a privilege log, and then providing only a "bare bones" list that offers no information as to First Marblehead's reasons for withholding various documents;

- Attempting to conceal from House the Supplemental Memo, the existence of which was finally revealed during the deposition Rodney Hoffman;

- Continuing to withhold documents on the purported basis of "confidentiality," even after House offered to stipulate to the entry of a protective order;

- Failing to respond to the subpoena for documents served upon William Berkley, a First Marblehead outside director;

- Wrongly invoking the work product doctrine in withholding documents that obviously were not drafted in contemplation of litigation;

- Refusing, until the very end of the discovery period, to respond to House's request to engage in a discovery conference to resolve these and other issues.

First Marblehead's has evinced a complete disregard for the Federal Rules of Civil Procedure, and courts have not hesitated to impose sanctions for similar behavior – even, in extreme cases, entering judgment against the offending party.  See, e.g., Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 10-11 (1st Cir. (Mass.) 1991) (upholding dismissal of case as a result of party's "deliberate pattern of delay and disregard of court procedures", including serving a last-minute privilege log that offered little information as to the basis for the privileges asserted); Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 12 (1st Cir. (Mass.) 1985) (upholding entry of judgment against party that demonstrated "evasiveness and intransigence" throughout the discovery process).

Rule 37(a) of the Federal Rules of Civil Procedure also provides that the Court shall award the party whose motion to compel is granted its "reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that … the opposing party's

18

nondisclosure, response, or objection was substantially justified …".  Given First Marblehead's

evasive and obstructive behavior throughout the discovery process, sanctions are entirely

appropriate in this instance.  <u>See</u>, <u>e.g.</u>, <u>Notice v. DuBois</u>, 187 F.R.D. 19, 22-23 (D. Mass. 1999)

(awarding movant who prevailed on motion to compel its costs and attorney's fees associated

with bringing the motion).

<u>**CONCLUSION**</u>

WHEREFORE, for all of the foregoing reasons, House requests that the Court grant the

following relief:

1.     Compel First Marblehead to produce every document withheld on the grounds of

"business confidentiality" and "privacy of employees", including documents related to the stock

option grants given to employees other than House;

2.     Compel First Marblehead to produce the undated memorandum authored by

Rodney Hoffman entitled "Corrections and Amplifications," in addition to the July 11, 1997

memorandum also authored by Hoffman entitled "Employee Stock Option Plan";

3.     Compel First Marblehead to produce all documents listed on its privilege log as

work product;

4.     Impose appropriate sanctions against First Marblehead for its discovery defaults;

and

5.        Grant such other and further relief as the Court deems appropriate.


                              Respectfully submitted,
                              Gregory House,
                              By his attorneys,


                              /s/William T. Hogan III_____
                              William T. Hogan, III BBO # 237710
                              Elizabeth D. Killeen BBO # 645178
                              **Hogan, Roache & Malone**
                              66 Long Wharf
                              Boston, MA  02110
                              (617) 367-0330

                              Peter N. Wang
                              Yonaton Aronoff
                              **Foley & Lardner LLP**
                              90 Park Avenue
                              New York, NY 10016
                              Attorneys for Defendant

Date: June 28, 2005

## LOCAL RULE 37.1 CERTIFICATE

I, Yonaton Aronoff, Esq., do hereby certify that I have conferred with counsel for Plaintiff, First Marblehead Corp., by telephone, email and letter on several occasions in advance of filing this Motion to Compel, in a good faith effort to narrow the areas of disagreement.  However, as described in the foregoing Motion to Compel Further Responses to Requests for Production of Documents and for Sanctions, Plaintiff's discovery responses remain wholly deficient.

                              _/s/: Yonaton Aronoff___
                              Yonaton Aronoff


## CERTIFICATE OF RULE 7.1 CONFERENCE AND OF SERVICE

I, William T. Hogan III, hereby certify that, prior to filing the above motion, counsel conferred concerning this motion and attempted in good faith to resolve or narrow the issues.  I further certify that on this 28th day of June 2005, I filed a copy of said motion electrically.  Notice of this filing will be sent to all parties via the United States District Court electronic filing system. Parties may access this filing through the Court's system.

                              /s/William T. Hogan III_____
                              William T. Hogan III