UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE FIRST MARBLEHEAD CORPORATION<br>　　　Plaintiff<br><br>v<br><br>GREGORY J. HOUSE<br>　　　Defendant | CIVIL ACTION NO. 04-11263PBS |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL**

<u>Introduction</u>

Notwithstanding the bluster of defendant's motion, this is a straightforward dispute about the plaintiff's objection to production of (a) confidential stock option grants issued by the plaintiff to other non-party employees, (b) documents created or maintained by plaintiff's then-outside counsel that were never seen by the defendant and (c) three other documents from that attorney's files.  Defendant also seeks sanctions, including default judgment, for alleged discovery "abuses."  The defendants motion should be denied because plaintiff has presented valid objections to the production of the requested documents and has not engaged in any discovery abuse.  After a brief summary of the facts relevant to this motion, plaintiff will address each issue *seriatim*.

<u>Facts</u>

This dispute arises from a belated attempt to exercise incentive stock options. The plaintiff, The First Marblehead Corporation ("First Marblehead" or the "Company"), seeks a declaratory judgment that an incentive stock option granted to its former

1

employee, Gregory House ("House"), expired as a matter of law and pursuant to the terms its 1996 Stock Option Plan (the "Plan") prior to House's attempt to exercise the option.[1] House quit his job at First Marblehead in 1998, and did not even attempt to exercise any stock option rights until 2004. Conversely, House alleges that the incentive stock option has not expired and First Marblehead's denial of his request to exercise constitutes a breach of contract or should be equitably estopped.

From November 2004 through June 10, 2005, the parties engaged in discovery including the depositions of six witnesses in Massachusetts, New York and Connecticut. Affidavit of Kenneth J. DeMoura, Esq. ¶ 6 (attached at Tab A). The parties, through counsel, have cooperated in scheduling, accommodated witness schedules and granted extensions when requested. DeMoura Aff. ¶ 7. Virtually all discovery disputes, save the three remaining disputes, have been resolved by counsel and the parties. DeMoura Aff. ¶¶ 17, 19. Although there have been some delays in addressing some of the discovery disputes, these delays were due, in large measure, to the parties pursuit of mediation efforts with Magistrate Judge Swartwood. DeMoura Aff. ¶¶ 10, 16. When the mediation efforts failed, the parties discussed the outstanding discovery issues and promptly reached resolution on all but those which are the subject of House's motion. DeMoura Aff. ¶ 17.

House has requested copies of incentive stock option grants to other First Marblehead employees. In December 2004, First Marblehead objected to the production of the option grants of other employees on the grounds that the request sought private and confidential information regarding other employees and information

---

[1] On July 1, First Marblehead filed a motion for summary judgment on all claims and counterclaims.

2

irrelevant to the claims or defenses raised in this action.  In the spirit of cooperation and disclosure,  First Marblehead advised House that the written option grants to other employees were identical to House's option grant attached to First Marblehead's complaint, except for the names, amount of stock and vesting schedule[2], and offered to enter a stipulation to that effect.  DeMoura Aff. ¶ 13.  First Marblehead also offered to produce a blank "form" that was used in preparing all of the other employees' grants.  Id. House declined First Marblehead's offer to stipulate and for production of the blank form.  Id.

House also seeks a Supplemental Memorandum dated July 11, 1997 and prepared by First Marblehead's then-outside attorney Rodney Hoffman.  The Supplemental Memorandum supplements a memorandum addressed and delivered to all First Marblehead employees dated July 7, 1997 setting forth some of the "principal terms" of the Plan (the "July 7 Memo").[3]  House received the July 7 Memo.  House did not receive the Supplemental Memo. In fact, there is no physical evidence that the Supplemental Memo was ever given to *anyone* at First Marblehead, and, in fact, no one at First Marblehead was aware of its existence until February 2005. DeMoura Aff.  ¶14.

The July 7 Memo was silent as to what action was required for employees to exercise their stock options upon leaving the Company.  There is no dispute about that fact.  At his deposition in February 2005, Hoffman disclosed that the Supplemental Memo expanded his description of the Plan and noted that the options issued under the Plan were only exercisable for three months from the date of employment termination.  While Hoffman testified that he "would have" delivered a copy of the Supplemental

---

[2] All the grants, except for the grant to House, contain a five-year vesting schedule.
[3] The July 7 Memo was produced during discovery and Attorney Hoffman was deposed on February 14, 2005.

3

Memo to the Company, it was in none of the Company's files.  Id.   Indeed, no one in First Marblehead management recalls receiving the Supplemental Memo, and none of the employees currently at the Company who were at the July 7 meeting and received the July 7 Memo has a copy of the Supplemental Memo, or recalls receiving it. Id. First Marblehead has asserted that the Supplemental Memo is irrelevant and subject to the attorney-client privilege in opposing its production.

House seeks three additional documents identified on First Marblehead's privilege log.  These documents are (1) a November 22, 1996 draft of the 1996 Stock Option Plan with Attorney Hoffman's Handwritten Notes; (2) a December 11, 1996 Memorandum from Attorney Hoffman to First Marblehead's officers, Daniel Meyers and Victor Samra; and, (3) a January 13, 1997 Memorandum from Hoffman to the Board of Directors and Stock Option Subcommittee.  The handwritten notes contained on the November 1996 draft represent Hoffman's comments about the draft Plan, conveyed to First Marblehead and incorporated into the December 11, 1996 Memorandum.   These documents are also being withheld on the basis of attorney-client privilege.

Based on the facts and the arguments set forth below, House's motion should be denied.

Argument

**1. Stock Option Grants to Other Employees Contain Private Information That Should Be Protected From Disclosure**

Fed. R. Civ. P. 26 permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party."  Information is relevant for purposes of Rule 26 "if the discovery appears reasonably calculated to lead to the discovery of

4

admissible evidence." Fed.R.Civ.P. 26(b)(1).  A court may limit discovery if it determines that it is unreasonably cumulative or duplicative, obtainable from another source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2); *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir.2002).

The production of personnel information implicates privacy concerns. *Whittingham v. Amherst College*, 164 F.R.D. 124 (D. Mass. 1995).  *See also, Gehring v. Case Corp.,* 43 F.3d 340, 342 (7th Cir. 1994) (turning over personnel files "would invade the privacy of the other employees"); *Ellman v. Hentges,* No. 99 C 50269, 2001 WL 649508, at *1 (N.D. Ill. June 8, 2001) (finding that "likelihood of discovering relevant information in … personnel files [was] outweighed by the employee's privacy interests"); *Graham v. Casey's General Stores,* 206 F.R.D. 251, 257 (S.D.Ind.2002).  Strong public policy exists against disclosure of personnel information that invades employee privacy unless "(1) the material sought is 'clearly relevant,' and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable." *Matter of Hawaii Corp.,* 88 F.R.D. 518, 524 (D. Hawaii 1980) (citing *New York Stock Exchange, Inc. v. Sloan,* 22 F.R.Serv.2d 500, 505 (S.D.N.Y.1976).

House makes two arguments.  First, House claims that other employee stock option grants are relevant to whether the terms of the grants differed from his.  This argument is baseless because House already knows how his option grant differed from the others.  He testified that he negotiated an immediate vesting of his options while others had a five-year vesting schedule.  Other than this difference and the name and amount of stock available, the other grants are identical, issued using the same "form" and most importantly, all governed by the Plan.

5

Second, House claims that he is entitled to discover whether the other employees signed their option grants. The issue of whether another employee received and signed his grant is plainly irrelevant to House's claim of "reliance" on First Marblehead's purported representations regarding his grant. The minimal relevance of the other grants is outweighed by the strong policy against disclosure of private personnel information.

First Marblehead has offered to produce a blank form of option grant and to stipulate that this form was used for all employee incentive stock option grants during the relevant time period. DeMoura Aff. ¶ 13. House has rejected this reasonable effort to resolve this discovery dispute. Id. House's motion to compel production of the stock option grants to other employees must be denied.

**2. The "Supplemental Memorandum" Created by First Marblehead's Outside Attorney Is Irrelevant and Protected Attorney-Client Communication**

During his deposition, First Marblehead's outside counsel, Rodney Hoffman testified that he had prepared a July 7, 1997 memorandum which he discussed with First Marblehead employees and which describes some of the terms of the incentive stock option plan. He also testified that after the meeting he noticed that the July 7 Memo did not describe, among other things, the Plan's requirement that incentive stock options be exercised within three months of employment termination, and that he drafted the Supplemental Memo to include this. He testified that he "would have" sent the Supplemental Memo to First Marblehead management.

The Supplemental Memo was not produced by First Marblehead in its December 2004 response to House's document request because First Marblehead did not have a copy. DeMoura Aff. ¶ 14. Indeed, there is no evidence that anyone at the company ever

6

received this supplement.  Id.  Hoffman provided a copy of the Supplemental Memo to counsel for First Marblehead on February 10, 2005.  Id.  Its existence was disclosed to House four days later during Hoffman's deposition.  Id.

The Supplemental Memo remains an attorney-prepared document that was not distributed outside of the attorney-client relationship.  Furthermore, the Supplemental Memo is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Nothing in the Supplemental Memo is inconsistent with the requirement of the Internal Revenue Code and the Plan that the incentive stock option granted to House be exercised within three months of employment termination.  Nor could it alter the terms of the Plan as a matter of law. [4]  Since House never received the Supplemental Memo he cannot claim reliance or contract rights arising from it.   The motion to compel should be denied.

### 3. The Additional Memoranda Sought By House Are Also Protected By the Attorney-Client Privilege

House seeks three additional documents identified on First Marblehead's privilege log.  These documents are (1) a November 22, 1996 draft of the 1996 Stock Option Plan with Attorney Hoffman's Handwritten Notes; (2) a December 11, 1996 Memorandum from Attorney Hoffman to First Marblehead's officers, Daniel Meyers and Victor Samra; and, (3) a January 13, 1997 Memorandum from Hoffman to the

---

[4] Aside from the fact that he never saw and therefore never relied on the Supplemental Memo, as a matter of law, House cannot rely on it to establish that he is entitled to an option that can be exercised for ten years without regard to his status as an employee of First Marblehead.  The Supplemental Memo does not constitute a written instrument approved by First Marblehead's Board of Directors, as required by 8 Del. C. § 157(a) (all stock options granted by Delaware corporation must be in writing approved by Board of Directors).  The Delaware court's strict adherence to the requirements of §157 preclude any equitable estoppel claims.  *Liebermann v. Frangiosa*, 844 A.2d 992, 1005 (Del. Ch. 2002).  A claimant "cannot use principles of equity to achieve a judicial order validating [a] stock [option] that was not issued . . . in conformity with law."  *Id.*  In *Liebermann*, the plaintiff asserted that the defendant directors should be equitably estopped from denying the validity of preferred shares which they voted to create but which did not otherwise comply with the requirements of §157.  The Supplemental Memo is irrelevant to this case.

Board of Directors and Stock Option Subcommittee. The handwritten notes contained on the November 1996 draft of the Plan represent Hoffman's comments about the draft Plan, conveyed to First Marblehead and incorporated into the December 11, 1996 Memorandum. The December 1996 Memorandum and the January 1997 Memorandum directed to the officers and Board of Directors clearly constitute legal advice to First Marblehead concerning the Plan and, with respect to the January 1997 Memo, advice regarding an option grant to Ralph James. These documents are unquestionably attorney-client privileged communications. House's motion to compel production of these documents must be denied.

4. **First Marblehead Has Complied With Its Discovery Obligations And Plaintiff's Motion for Sanctions Is Unwarranted.**

House seeks discovery sanctions, including judgment in his favor, pursuant to Fed. R. Civ. P. 37. As a matter of law, House cannot obtain a default judgment, because there has been no violation of an order of this court. As a matter of fact, First Marblehead has not engaged in any sanctionable conduct. The motion for sanctions must be denied.

*A. First Marblehead has not engaged in conduct warranting sanctions.*

House chronicles a list of what he claims are "outrageous" acts warranting sanctions. House has not established by any act or overall pattern any sanctionable conduct. First Marblehead denies that any of the acts House describes support his position that First Marblehead has treated the discovery process "as if it were a sport."

a. Stephen Anbinder

The first proffered outrageous act is allegedly failing to instruct Stephen Anbinder to search for documents responsive to House's First Request for Production of

8

Documents. Anbinder truthfully testified at his deposition that he was not asked to search for documents in response to House's Request for Production, however that does not mean Anbinder was not asked to provide such information prior to that time. Indeed, Anbinder was asked to provide information and documents regarding House and his stock option claim prior to the filing of suit and he advised the Company that he did not have any. DeMoura Aff. ¶ 5. First Marblehead did conduct a search of its files and records and did request that employees believed to have documents relating to House provide such documents to counsel. DeMoura Aff. ¶ 5. Furthermore, after his deposition, Anbinder repeated his search and once again found that he did not have any documents responsive to House's request. DeMoura Aff. ¶ 9-11. House was advised prior to filing this motion that Anbinder had searched his records and did not have documents responsive to the request. DeMoura Aff. ¶ 9-11. House's efforts to characterize First Marblehead's document production efforts otherwise blatantly twists a clear record to the contrary.

    b. Failing to Produce Documents

It is unclear what documents House refers to when alleging that First Marblehead has failed to produce "numerous" documents. The only documents which House seeks in this motion to compel are the option grants to other employees and various memoranda from its former attorney. House does not identify any other documents that First Marblehead has failed to produce. House alludes to documents requested in various correspondences; however, these documents have either been produced or are not in First Marblehead's possession, custody or control and House's counsel was advised of this prior to filing this motion. Subject to the properly made objections in its

responses to House's requests for production of documents, First Marblehead has produced all responsive documents.

    c. Privilege Log

House accuses First Marblehead of failing to provide a privilege log until after the discovery cutoff and then only providing a "bare-bones" list. Counsel provided the log shortly after the mediation failed to resolve the case and at a time when the parties clearly expected that discovery would be extended. Indeed, the discovery matters which House complains of only became an issue when the court denied the motion to extend discovery. There was no effort to conceal deliberately the documents being withheld. In fact, House's attorneys knew of the existence of the Supplemental Memo in February 2005. House fails to allege any prejudice that he suffered as a result of the delay in receiving the privilege log. The motion must be denied.

    d. Concealing the Supplemental Memo

House learned of the Supplemental Memo four days after its existence was discovered by First Marblehead. First Marblehead learned of the existence of the Supplemental Memo on February 10, 2005. Its existence was revealed on February 14, 2005 at the deposition of Rodney Hoffman. There was no effort to conceal its existence.

    e. First Marblehead's Refusal to Accept House's Offer of Protective Order

House offered to enter into a protective order regarding the production of stock option grants of other employees. The specifics of the order were not discussed however the offer was rejected by First Marblehead. In a good faith effort to resolve the discovery dispute, First Marblehead offered to stipulate that all the option grants were identical (save the name, number of shares and in House's case, vesting schedule) and offered to

produce a blank form of option grant that all others had signed.  House rejected this offer.

First Marblehead's objection to production of the option grants is made in good faith and supported by law.  A less intrusive alternative was proposed but rejected by House.

    e.  William Berkley Subpoena

House asserts that First Marblehead failed to respond to a subpoena served on William Berkley, one of its outside directors.  During his April 28, 2005 deposition, Berkley testified that he did not have any documents relating to House or the Stock Option plan in his control, custody or possession.  DeMoura Aff. ¶ 15.  House's attorney handed Berkley a subpoena *duces tecum* at the conclusion of his deposition, requesting production of documents relating to House and/or the stock option plan.  DeMoura Aff. ¶ 15.  Sometime later, First Marblehead's counsel advised House's attorney that Berkley did not have any documents in his possession.  Id.  House has not taken any steps to enforce the subpoena against Berkley.  Id.  Putting aside whether the subpoena was validly served, the fact is that the subpoena was not served on First Marblehead and First Marblehead had no duty to respond to it.

    F.  Refusing to Engage in Discovery Conferences Until Discovery Cutoff

First Marblehead never refused to engage in discovery conferences.  DeMoura Aff. ¶ 18.  Indeed several discovery conferences were held from February 2005 until after the discovery cutoff date.  The most contested issues (those which are the subject of this motion) were discussed generally but were not the subject of a discovery conference before the June mediation session with Magistrate Swartwood, as the parties hoped the case would be resolved at the mediation.  Immediately following the

mediation, the parties had several discussions and conferences regarding the outstanding discovery issues but were unable to resolve all of them.

As further evidence of First Marblehead's willingness to participate in and resolve discovery issues, the Court should consider that only three issues remain unresolved and are the subject of House's motion. All other discovery issues were addressed throughout the course of the discovery period and resolved. In fact, as late as June 10, 2005 House's counsel wrote "I am optimistic that we will be able to resolve informally all of our remaining discovery issues on Monday (June 13, 2005)." DeMoura Aff. ¶19.

Despite defendant's characterizations to the contrary, discovery has proceeded cooperatively in this case. There has been no "disregard for the Federal Rules of Civil Procedure". Sanctions are unwarranted and the motion should be denied.

*B. The Sanction of Dismissal Is In Any Event Unwarranted Because First Marblehead is not in violation of any court order.*

In this Circuit, a court order must be in effect and then violated before the discovery sanction of dismissal can be imposed. *R.W. International Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15 (1st Cir. 1991)(even a dilatory pattern of conduct and abuse of discovery does not support sanction of dismissal where no specific order is in effect and then violated); *Big Top USA, Inc. v. The Wittern Group*, 183 F.R.D. 331 (D. Mass. 1998). This rule is based on the express provisions of Rule 37 and the strong policy of the First Circuit in favor of disposing cases on the merits. *Figueroa Ruiz v. Alegria*, 896 F. 2d 645 (1st Cir. 1990).

First Marblehead is not in violation of any order of this Court. As a matter of law the sanction House seeks—dismissal of First Marblehead's claims and judgment in his favor—is unavailable. The motion must be denied.

<u>Conclusion</u>

For each of the above reasons, the defendant's Motion to Compel and For Sanctions should be denied.

Respectfully submitted,<br>
THE FIRST MARBLEHEAD CORPORATION<br>
By its attorneys<br>
<u>/s/ Kenneth J. DeMoura</u><br>
Kenneth J. DeMoura (BBO#548910)<br>
ADLER POLLOCK & SHEEHAN, P.C.<br>
175 Federal Street<br>
Boston, Massachusetts 02110<br>
(617) 482-0600

Dated: July 19, 2005