UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE FIRST MARBLEHEAD CORPORATION<br>    Plaintiff<br><br>v<br><br>GREGORY J. HOUSE<br>    Defendant | CIVIL ACTION NO. 04-11263PBS |

**AFFIDAVIT OF KENNETH J. DEMOURA, ESQ. IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL**

I, Kenneth J. DeMoura, under oath depose and say:

1.    I am a member in good standing of the bar of the Commonwealth of Massachusetts, the United States District Court for the District of Massachusetts, the First Circuit Court of Appeals and the District of Columbia.

2.    I am a partner in the law firm of Adler Pollock & Sheehan P.C. and the attorney of record for the plaintiff in this action.

3.    I submit this affidavit in support of First Marblehead's opposition to defendant's motion to compel and motion for sanctions.

4.    I filed this suit on behalf of First Marblehead in the Massachusetts Superior Court on May 19, 2004.

5.    Prior to filing suit, I conducted a pre-suit investigation of the facts and claims. My investigation included requests for all relevant documentation from my client and its employees, including Stephen Anbinder. I did receive documentation relating to the stock option plan and Mr. House's employment with First Marblehead. Mr. Anbinder did not have any documents in his possession and I was instead directed to Mr. House's

1

personnel file as the likely location of any of Mr. Anbinder's documents relating to Mr. House.   House's personnel file was produced to defendant.

6.     Beginning in October 1994 with the exchange of initial disclosures and ending on June 10, 2005, the parties engaged in discovery, including the depositions of six witnesses in Massachusetts, New York and Connecticut.

7.     The parties, through counsel, have cooperated in scheduling, accommodated witness schedules and granted extensions when requested.

8.     On February 28, 2005, defendant's counsel sent me a letter requesting a number of documents including the option agreement between First Marblehead and its former President Ralph James, various documents created by First Marblehead's former attorney Rodney Hoffman, and minutes of various directors meetings relating to stock options.

9.     On several occasions thereafter, I acknowledged this letter and repeated First Marblehead's position that First Marblehead objected to producing any option grants for other employees, including Mr. James' option grants, and that the documents that were created by Hoffman, most specifically, the Supplement to the July 7 memo were privileged and irrelevant.

10.    On April 28, 2005 I discussed outstanding discovery issues with Mr. Aronoff following the deposition of William Berkley.  During that discussion, I again restated First Marblehead's position.  At that time, Mr. Aronoff requested that we have a discovery conference as required by the Local Rules.  I stated that we should have such a conference and resolve all outstanding discovery matters but suggested that the conference occur after the mediation between the parties that had been scheduled with

Magistrate-Judge Swartwood. Mr. Aronoff agreed that we should postpone such discussions until after the mediation.

9. On May 23, 2005 I received a request from defendant's counsel that First Marblehead produce documents in the possession of Stephen Anbider.

10. After receiving this letter, I contacted Mr. Anbinder and requested that he again search for any documents relating to Mr. House, the stock option plan and grants of options.

11. After the unsuccessful effort to settle this case at the June 2 mediation, I followed up with Mr. Anbinder. At that time Mr. Anbinder told me that he did not have any documents and I informed defense counsel of this.

12. Virtually all discovery disputes, save the disputes which are the subject of defendant's motion to compel, have been resolved by counsel and the parties.

13. With respect to the option grants of other employees, First Marblehead objected to this request in December 2004. During efforts to resolve this discovery issue and in the spirit of cooperation and disclosure, I advised House that the written option grants to other employees were identical to House's option grant attached to First Marblehead's complaint, except for the names, amount of stock and vesting schedule, and stated that First Marblehead was prepared to stipulate to that effect. I also offered to produce a blank "form" that was used in preparing all of the other employees' grants. House declined the offer to stipulate and the production of the blank form.

14. House seeks a Supplemental Memo prepared by Hoffman after his meeting with First Marblehead employees in July 1997 and suggests that First Marblehead concealed this Supplemental Memo when it produced documents in December 2004. This is not true. The Supplemental Memo was not produced by First Marblehead in its December

2004 response to House's document request because First Marblehead did not have a copy of the document. Indeed, there is no evidence that anyone at the company ever received this supplement. Based on an internal inquiry at First Marblehead, no one in First Marblehead management recalls receiving the Supplemental Memo, and none of the employees currently at the Company who were at the July 7 meeting and received the July 7 Memo has a copy of the Supplemental Memo, or recalls receiving it. Hoffman provided a copy of the Supplemental Memo to me on February 10, 2005. Its existence was disclosed to House four days later during Hoffman's deposition.

15.     House states that First Marblehead has not properly responded to a subpoena issued to one of its outside directors, William Berkley. Although I objected to the method of service of the subpoena at the time it was handed to Mr. Berkley, (House's attorney handed it to Mr. Berkley after his deposition), the subpoena was not issued or served on First Marblehead and therefore First Marblehead had no duty to respond. Notwithstanding this fact, and the fact that Mr. Berkley had testified at his deposition that he didn't have any documents in his possession, I followed up to confirm that there were no documents. During one of our conversations after the June 2 mediation, I did advise Mr. Aronoff that Mr. Berkley did not have any documents responsive to the subpoena. To my knowledge, House has not taken any steps to enforce the subpoena against Berkley.

16.     Although there have been some delays in addressing some of the discovery disputes, these delays were due, in large measure, to the parties pursuit of mediation efforts with Magistrate Judge Swartwood.

17.  When the mediation efforts failed, the outstanding discovery issues were promptly discussed and resolution was reached on all but those which are the subject of House's motion.

18.  First Marblehead never refused to engage in discovery conferences. Indeed several discovery conferences were held from February 2005 until after the discovery cutoff date. The most contested issues (those which are the subject of this motion) were discussed generally but were not the subject of a formal discovery conference before the June mediation session with Magistrate Swartwood, as the parties hoped the case would be resolved at the mediation. Immediately following the mediation, the parties had several discussions and conferences regarding the outstanding discovery issues but were unable to resolve all of them.

19.  All other discovery issues were addressed throughout the course of the discovery period and resolved. In fact, as late as June 10, 2005 House's counsel wrote "I am optimistic that we will be able to resolve informally all of our remaining discovery issues on Monday (June 13, 2005)."

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 19TH DAY OF JULY, 2005.

/s/ Kenneth J. DeMoura