UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE FIRST MARBLEHEAD CORPORATION<br>    Plaintiff<br><br>v<br><br>GREGORY J. HOUSE<br>    Defendant | CIVIL ACTION NO. 04-11263PBS |

**PLAINTIFF'S MOTION FOR LEAVE TO
FILE REPLY TO OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT**

    Pursuant to Local Rule 7.1(B)(3), plaintiff The First Marblehead Corporation hereby requests leave of court to file a reply to the defendants opposition to First Marblehead's pending Motion for Summary Judgment. The reply, attached hereto, is necessary due to defendant's admissions in his papers that the stock option plan at issue governs the parties relationship and to distinguish this action from *Collins v. American International Group, Inc.*, 1998 WL 227889 (Del. Ch.), an unpublished Delaware Chancery Court opinion cited by the defendant in its opposition.

<u>Certificate of Compliance with Local Rule 7.1(A)(1)(2)</u>

    The undersigned counsel of record for plaintiff certifies that counsel for the parties have conferred in good faith in an effort to resolve or narrow the scope of the issues presented in this motion, but that counsel were unable to reach agreement as to the issues set forth herein.

                                        Respectfully submitted,

                                        THE FIRST MARBLEHEAD CORPORATION
                                        By its attorneys

                                        <u>/s/ Kenneth J. DeMoura</u>
                                        Kenneth J. DeMoura (BBO#548910)
                                        ADLER POLLOCK & SHEEHAN, P.C.
                                        175 Federal Street
                                        Boston, Massachusetts 02110
                                        (617) 482-0600

Dated: August 1, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE FIRST MARBLEHEAD CORPORATION<br>    Plaintiff<br><br>v<br><br>GREGORY J. HOUSE<br>    Defendant | CIVIL ACTION NO. 04-11263PBS |

**PLAINTIFF'S MEMORANDUM IN REPLY TO DEFENDANT'S**
**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Plaintiff, The First Marblehead Corporation ("First Marblehead"), submits this memorandum in reply to defendant's opposition to motion for summary judgment. In his opposition, the defendant, Gregory House ("House"), admits that the First Marblehead 1996 Stock Option Plan (the "Plan") governs the terms of the stock option at issue in this action. House's admission provides significant new support for First Marblehead's motion for summary judgment.

A. House's Option Expired Three Months After His Termination Even If The Option Were Nonstatutory

It is clear why House ignores the indisputable factual record that he was awarded an Incentive Stock Option, not a Nonstatutory Stock Option—he simply cannot avoid the fact that, as a matter of law, in order to be an incentive stock option, the option must provide that it be exercised within three months of employment termination. 28 U.S.C. § 422(a). House's option was an incentive stock option, and its exercisability ended three months after he quit First Marblehead. Summary judgment should enter as a matter of law.

Faced with this outcome, House creates a complete fiction[1] – that he received a nonstatutory stock option. To get there, House argues that the 1996 Stock Option Plan (the "Plan"), **_which he admits governs his stock option grant_**,[2] allows for the grant of both incentive and non-statutory stock options. Plan § 4.01. House has not read far enough into the Plan, the fiction does not help, and House's claim still fails.

House overlooks the fact that Section 7.02 (d) of the Plan requires that *all* stock options, not just incentive stock options, be exercised within three months of termination.[3] House has not, and can not, get around this clear language of the Plan.

It is well settled that courts construe unambiguous contract language as a matter of law. *Jefferson Chemical Co. v. Mobay Chemical Co.*, Del. Ch., 267 A.2d 635 (1970); *GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.*, 270 F. Supp. 2d 476 (D. Del.

---

[1] House's characterization of his option as nonstatutory ignores all of the evidence to the contrary, even the documents he relies on to oppose First Marblehead's summary judgment motion. The Compensation Review form he received in June 1997 indicates that he was receiving incentive stock options. [Ralph James Deposition p. 69-71: Appendix Tab G] [Exhibit 4 to Ralph James Deposition: Appendix Tab H] [House dep. p. 114-119: Appendix Tab A]. The meeting held in July 1997 for First Marblehead employees included a "Discussion of the Incentive Stock Option program". [Exhibit 2 to James Deposition: Appendix Tab I]. The July 7 memo described the options that the employees were being granted: "The options here will be 'Incentive Stock Options' or 'ISOs' under the Internal Revenue Code". [Exhibit 3 to James Deposition: Appendix Tab J]. There is not a shred of evidence to the contrary.

[2] "House does not dispute that his Options were granted pursuant to a written Plan, approved by the First Marblehead Board of Directors and shareholders." [Defendant Gregory House's Memorandum of Law In Opposition to Plaintiff's Motion for Summary Judgment, p. 16.] House's option was "granted consistent with and pursuant to the Plan." [Defendant Gregory House's Memorandum of Law In Opposition to Plaintiff's Motion for Summary Judgment, p. 13 (emphasis supplied)]

[3] When used in the Plan the term "Options" means both Incentive Stock Options and Nonstatutory Stock Options. Plan § 1. The termination of employment provision contained in §7.02 uses the term Option to refer collectively to both Incentive Stock Options and Nonstatutory Options:
> 7.02 Effect of Termination of Employment. Except to the extent otherwise determined by the Committee in writing, the effect on an Option of the termination of employment of a grantee and the extent to which the grantee or his or her estate, legal representative, guardian, or beneficiary may exercise rights thereunder, shall be as set forth below...
> (d)    Termination for Other Reasons. Upon the termination of the grantee's employment for reasons other than those set forth in subsections 7.02(a), (b) and (c), the Options will remain exercisable by the grantee for a period not extending beyond three months after the date of the termination of employment, but only to the extent of Options which are exercisable as of the date of such termination of employment.

Plan §7.02 (emphasis supplied).

2003). Accord, *Davis v. Dawson, Inc.*, 15 F. Supp. 2d 64, 107 (D. Mass. 1998). This Plan requires that ***all*** stock options granted thereunder (whether they are incentive stock options or nonstatutory options) be exercised within three months of termination. House's classification of his option as nonstatutory is a distinction without a difference. He is still left with an option that was fully vested and had a maximum term of ten years, but expired well before he attempted to exercise it. Summary judgment should be granted.

B. <u>House's Reliance on *Collins v. AIG* For His Promissory Estoppel Claim is Misplaced.</u>

To the extent that House's promissory estoppel claim is viable despite his admission that the Plan governs[4], House's reliance on *Collins v. American International Group, Inc.*, 1998 WL 227889 (Del. Ch.), an unpublished Delaware Chancery Court opinion to avoid summary judgment fails. *Collins* involved an oral promise to amend the terms of a stock option plan, a case clearly distinguishable on the facts. Moreover, it is unlikely that *Collins* would be decided the same way today in light of recent decisions by the Delaware Supreme Court and Chancery Court.

---

[4] Of course, House's admission that the Plan governs his stock option is fatal to his promissory estoppel claim. Promissory estoppel is a substitute for consideration in a contract action and is not used to alter the terms of a contract that the parties admit govern. *In re U.S. West, Inc. Securities Litigation*, 201 F. supp. 2d 302 (D. Del. 2002). *See also, Genencor International, Inc. v. Novo Nordisk A/S*, 766 A. 2d 8, 12 n.6 (Del. 2000) (citations omitted); *Holmes v. Lorch*, 320 F. Supp. 2d 516, 527 (S.D.N.Y. 2004) ("Promissory estoppel is "a rule applicable only in the absence of an enforceable contract'"). *See also All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869-870 (7th Cir.1999) ("Promissory estoppel is not a doctrine designed to give a party ... a second bite at the apple in the event it fails to prove a breach of contract.") (quoting *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir.1984)). Substituting promissory estoppel to establish contractual obligations in situations "where a comprehensive contract exists would contravene the fundamental rules that extrinsic evidence cannot be used to vary the unambiguous terms of a contract and that obligations inconsistent with the terms of a contract cannot be implied." *Hartford Fire Ins. Co. v Federated Dep't Stores, Inc.*, 723 F.Supp. 976, 993 (S.D.N.Y. 1989). House admits that the Plan governs his options. He cannot now substitute or vary the terms of the Plan by arguing promissory estoppel. As a matter of law, House's promissory estoppel claim must fail and First Marblehead's motion for summary judgment should be allowed.

The *Collins* case involved a twenty-six year AIG executive, who at the time he was being asked to retire understood that he was required to exercise his stock options within ninety days of his retirement. Collins claimed that as part of his severance package he was told by a senior human resources executive that he would be able to continue to exercise his options as they came due even after the ninety-day period, that AIG had allowed other retired employees to exercise their options after the ninety day period had passed and that credible evidence existed that such a specific promise had been made to Collins, on which he relied. Crucial to the court's decision were findings that there was a specific promise to extend the exercise period, that the ninety-day rule "has not been strictly enforced" by AIG and that "reliance on informal, oral agreements is not unusual at AIG." None of these elements is present in this case, and *Collins* is inapplicable.

Collins received a specific oral promise that he could extend his time to exercise his stock option beyond the ninety-day requirement set forth in AIG's plan. The Court found AIG had allowed such an extension before as a matter of course, and that therefore Collins' reliance on such a promise was reasonable. Here, House does not claim that he was aware of any similar pattern of conduct, and no such pattern existed. Furthermore, House can show no such promise by First Marblehead to extend exerciseability beyond the three month limit. Instead, House relies on his own confusion about the meaning of "fully vested." As the record shows, House asked for full vesting, the Plan allowed for it, and he got it. He now tries to recharacterize his request for full vesting into a request for "unconditional ownership." While House invites this Court to spend time trying to figure out what he means by "unconditional ownership," it is clear that such a request is fundamentally different, was never made, and is

inconsistent with the clear terms of the Plan. Promissory estoppel requires on a promise, not a recharacterization of facts or a misunderstanding of what "fully vested" means. The record is clear that First Marblehead was never asked for and never promised "unconditional ownership," and House's after-the-fact twisting of his tenor of request cannot create a promissory estoppel claim.

Furthermore, it is unlikely that *Collins* would be decided the same way today in light of recent decisions by the Delaware Supreme Court and Chancery Court. The Delaware courts have reaffirmed their strict adherence to the statutory requirement that the terms of all stock options must be evidenced by a writing approved by the corporation's board of directors and that oral promises to the contrary are unenforceable. 8 Del. C. § 157 . *See, Grimes v. Alteon, Inc.*, 804 A.2d 256 (Del. 2002) (holding that alleged promise of chief executive officer to allocate 10% of future stock offerings to existing stockholder was invalid without board approval). The Delaware court's strict adherence to the requirements of §157 preclude estoppel claims. *Liebermann v. Frangiosa*, 844 A. 2d 992 (Del. Ch. 2002) ("Consistent with our law's strict adherence to statutory prerequisites to the issuance and sale of stock, our case law has refused to overlook the statutory invalidity of stock even in situations when that might generate an inequitable result.") *See also, Jacobson v. Dryson Acceptance Corp.*, 2002 WL 31521109 (Del. Ch. 2002) (equitable doctrine of specific performance to issue stock is not available where agreement to issue stock did not comply with Delaware statutory law and oral contracts for issuance of shares of Delaware corporation are not enforceable).

*Collins* is distinguishable on its facts and has dubious precendential value in light of the later holdings in *Grimes* and *Alteon*. For the reasons stated

above and in First Marblehead's initial submissions, House cannot prevail on his promissory estoppel claim as a matter of law and First Marblehead is entitled to summary judgment.

## CONCLUSION

For each of the above reasons, First Marblehead's motion for summary judgment should be allowed and judgment should enter in favor of First Marblehead on all claims and counterclaims.

> Respectfully submitted,
>
> THE FIRST MARBLEHEAD CORPORATION
> By its attorneys
>
> /s/ Kenneth J. DeMoura
> Kenneth J. DeMoura (BBO#548910)
> ADLER POLLOCK & SHEEHAN, P.C.
> 175 Federal Street
> Boston, Massachusetts 02110
> (617) 482-0600

Dated: August 1, 2005