# Exhibit D

SJ Hearing.txt

1   of the options.
2           THE COURT:  Was it?  So in Delaware law, you think
3   that may apply?
4           MR. WANG:  Yes, definitely.
5           THE COURT:  But here it would not be the
6   enforcement of the contract.
7           MR. WANG:  But there's no question that in the
8   Collins case and actually that there's -- what they do in the
9   Collins case is to decide how many options had vested and then,
10  actually, they give them the value of those vested options.
11  Some of them hadn't vested.
12          THE COURT:  And that was a time deadline case?
13          MR. WANG:  Yes, exactly.  It was exactly the same
14  thing.  He had -- in fact, he was aware that he had 90 days, in
15  the Collins case, so he was well aware of the requirement.  And
16  the Officers said, "Don't worry.  We've extended this for other
17  people, we'll extend it for you."  The argument, then later on,
18  was -- much like this argument, "Wait a moment.  You can't do
19  that without the written approval of a board."  And what the
20  Collins case says -- subsequently endorsed by at least two
21  other cases, the Northern District of Illinois and the First
22  Circuit in the Ostler case says, "No, 157 doesn't require
23  extensions to be approved by the board, just so long as the
24  overall landscape, the overall architecture of a plan is
25  approved by a board."  So I think what your Honor is going to

                                                              21

1   find is that Collins is squarely on point.  And, actually, it's
2   not as good a case as ours because in Collins, he was aware of
3   the 90-day limitation.  Here, House was never aware of the
4   90-day limitation.
5           THE COURT:  What about your brother's argument that

SJ Hearing.txt

6   the Supreme Court cases essentially trump that?  One's a mere
7   Chancery case and the other is a Supreme Court of the state.
8              MR. WANG:  When your Honor reads the cases, you'll
9   see that those -- the other cases are about an entirely -- they
10  are not about options at all.  At all.  And the two cases
11  subsequent to Collins that dealt with options -- that's the
12  Ostler case and the Word case, look at Collins and specifically
13  endorse Collins as good law.
14             THE COURT:  All right.  Let's go.  Where are we on
15  this case?  Is this trial ready?
16             MR. WANG:  Other than -- what we've done, your
17  Honor, is -- the answer is we need to have a decision with
18  respect to our motion to compel.  Can I talk about that just
19  for one moment, your Honor, since I don't think your Honor has
20  -- so far as we know --
21             THE COURT:  I usually refer those to a magistrate
22  judge so if -- if there's a quick thing, fine, but if there's a
23  bunch of things, I'm going to refer it.
24             MR. WANG:  No, there's really only two areas and
25  your Honor has already talked about one.  And I want to make

                                                                22

1   clear that what Mr. DeMoura said and your Honor has directed is
2   that he give it to us with the --
3              THE COURT:  With the names deleted.  With their
4   privacy.
5              MR. WANG:  Well, I don't care who the individual
6   names are, so long as I know whether or not there are
7   signatures.  The key is were they distributed to people?  I
8   mean, it's also key as to what's in those grants.  But
9   Mr. DeMoura has --
10             THE COURT:  Well, that's fair.  Just say "signed"

Page 18

SJ Hearing.txt

11  or "unsigned."
12              MR. WANG:  Because that's what we need to know,
13  Judge, whether or not these were signed or unsigned, dated or
14  undated.
15              THE COURT:  That's right.  And the date should be
16  included, it just should be the signature that isn't, if
17  there's a separate signature date from the typed date.
18              MR. WANG:  That's fine.
19              MR. DeMOURA:  What about the amount of options?
20  That was another concern of the client, not wanting to --
21              MR. WANG:  If you don't know the name of the person
22  --
23              THE COURT:  If you don't know the name of the
24  person, it's no biggy.  So what's the next one?
25              MR. WANG:  Okay.  The second thing, your Honor, is

                                                                  23

1   --
2               THE COURT:  And it's subject to a protective order.
3               MR. WANG:  Thank you.  The second thing, your
4   Honor, is the memo -- the memos, but certainly at least one,
5   but you've still got to write a report for, that Mr. Hoffman
6   wrote afterwards, what I will refer to as the "Oops memo."  He
7   testified that he wrote that memo to be distributed to the same
8   group of employees who got the first memo.
9               THE COURT:  Well, is it protected by
10  attorney/client privilege?
11              MR. WANG:  How can it be, Judge?  It wasn't
12  intended for that purpose.  It was intended to be distributed
13  to all the employees.  It wasn't intended to give advice --
14              THE COURT:  Is it privileged?
15              MR. DeMOURA:  We take the position it is, your
                              Page 19

SJ Hearing.txt

16  Honor.
17              THE COURT:  So who was it written to?
18              MR. DeMOURA:  According to Mr. Hoffman's testimony,
19  he wrote the memo to give to the company to then give to
20  employees.  We never saw the memo, your Honor.
21              THE COURT:  But did he give it to the company?
22              MR. DeMOURA:  He didn't give it to the company.
23              THE COURT:  He did not?
24              MR. WANG:  He says he did.  They just didn't find
25  --

                                                                  24

1               THE COURT:  Excuse me.  If he did not, it is not
2   privileged.
3               MR. DeMOURA:  Well, we have another reason why it
4   shouldn't be discovered.
5               THE COURT:  Then it's not work product, because it
6   wasn't in anticipation of litigation.  If he handed it to the
7   company, it's attorney/client privileged.
8               MR. DeMOURA:  It's completely irrelevant to this
9   case, your Honor, because they never saw it -- House never saw
10  it.
11              THE COURT:  If it's not privileged, turn it over.
12  If there's a good faith claim for privilege, keep it.  But if
13  he didn't hand it to the company, it's not privileged.  If
14  there was no anticipation of litigation, it's not subject to
15  the work product doctrine.  And it is relevant.  Under any
16  theory, it's relevant.  So turn it over.
17          Now, what's the next issue?
18              MR. WANG:  That's it, Judge.  The only other thing
19  -- your Honor asked whether or not the case is trial ready?
20  The only thing that needs to be done -- and my friend and I

SJ Hearing.txt

21  have agreed that we'll hold off on it, pending your Honor's
22  decision, is expert -- exchange of expert reports.
23              THE COURT:  Why do you need that?  Evaluating the
24  options?
25              MR. WANG:  Yes, your Honor, because your Honor

                                                                    25

1   asked us how much was involved here.
2               THE COURT:  Yeah, how much?
3               MR. WANG:  And we said 7 million dollars.  He
4   basically said, "Oh, no, actually, it's less," and that's
5   because the 2500 options, as a result of a series of stock
6   splits, became 100,000 options.
7               THE COURT:  Let me ask you this.  Suppose it was
8   promissory estoppel and that he relied to his detriment, and
9   you say, "Well, he gets what he should have been informed
10  about."  So what was it three months out as opposed to 10
11  months out?
12              MR. DeMOURA:  2500, your Honor.
13              THE COURT:  Suppose -- I don't know.  A whole new
14  batch of eager beaver law clerks are coming in, in two weeks,
15  and I'm just going to have this right on their desks to dig it
16  out --
17              MR. WANG:  How about the existing law clerks,
18  they're not eager beavers any more?
19              THE COURT:  Are you kidding me?  We tired them
20  out.  It's that whole theory of don't get sick in July and
21  August when the new residents are in the hospital, and you've
22  got the new law clerks.  But apart from that, let me just say
23  the one thought I had, is that, at least on my general
24  understanding of promissory estoppel, if you reasonably relied
25  on a promise, i.e, let's say the memo, the mistaken memo, you