UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| FIRST MARBLEHEAD CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 04-11263PBS |
| | ) |
| GREGORY HOUSE, | ) |
| | ) |
| Defendant. | ) |

---

**DEFENDANT GREGORY HOUSE'S
SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER
SUPPORT OF HIS MOTION TO COMPEL PRODUCTION AND FOR SANCTIONS**

**INTRODUCTION**

Defendant Gregory House ("House") submits this memorandum of law in further support of his Motion to Compel Production and for Sanctions (the "Motion to Compel"). Even after this Court granted House's Motion to Compel and ordered plaintiff The First Marblehead Corporation ("First Marblehead," or the "Company") to produce the requested documents and information forthwith, First Marblehead continued stubbornly to withhold these materials for several weeks. Further, although the Company eventually provided certain of the materials, it continued to withhold *and conceal* from House one important document this Court had ordered produced. In so doing, First Marblehead not only significantly prejudiced House's ability to prosecute his claims and defenses in this litigation, but further disobeyed a direct Order of this Court. First Marblehead's behavior warrants sanctions under F.R.C.P. 37(b), including the entry of judgment against the Company, and – at minimum – House's costs in bringing the Motion to Compel and this Memorandum in further support thereof.

NYC_16483.1

## FACTS

This case centers on First Marblehead's refusal to honor stock options (the "Options") it issued to House while he was employed by the Company.[1] First Marblehead takes the position that House's Options expired three months after he resigned from First Marblehead in 1998. However, First Marblehead has been unable seriously to dispute that House never was informed of this purported requirement, orally or in writing. Instead, the Company relies on a provision of the Internal Revenue Code (§ 422) that confers favorable tax treatment upon "qualified" stock options bearing certain characteristics, one of these being that the options must be exercised within three months of an employee's resignation. The Company insists – against the overwhelming weight of the evidence – that House was granted qualified incentive stock options that expired three months after he resigned.

In fact, however, House was granted *non*-qualified Options that lacked any three-month post-departure exercise requirement. First Marblehead has obstructed discovery by House of important evidence confirming this fact, as well as evidence that under the 1996 First Marblehead Stock Option Plan (the "Plan"), the Company could *and in fact did* grant non-qualified Options, including the Options granted to House. Specifically, House was required to bring his Motion to Compel as a result of First Marblehead's refusal to produce two key categories of relevant and material documents: (i) a memorandum (the "Supplemental Memo",

---

[1]  First Marblehead seeks a declaratory judgment that House's Options have expired. House, in turn, has asserted counterclaims for breach of contract and promissory estoppel, and has filed a Motion to file an Amended Answer, by which House seeks to add an additional counterclaim for negligent misrepresentation. Most of the relevant facts are set forth in House's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.

NYC_16483.1

attached hereto as Exhibit A) authored by Rodney Hoffman, First Marblehead's then-outside General Counsel, that purported to correct the omission from an earlier memo (the "Memo", attached hereto as Exhibit B) of a requirement that Options be exercised within three months of an employee's resignation from the Company; and (ii) all grants of Options to other employees under the Plan, including (as only recently discovered by House) a grant of *non*-qualified Options to Ralph James (attached hereto as Exhibit C).[2]  House's Motion to Compel also requested that sanctions be imposed against First Marblehead, including the entry of judgment against First Marblehead, as well as House's costs in bringing the Motion.

At a hearing on August 5, 2005, this Court ruled on House's Motion to Compel and ordered these two categories of documents produced.[3]  (See Transcript of 8/5/05 Hearing, pp. 21-24; relevant pages attached hereto as Exhibit D)  The Court did not at that time rule on House's request for sanctions.  As set forth in House's Motion to Compel, First Marblehead's abuse of the discovery process prior to the August 5, 2005 hearing was itself sufficient to justify sanctions pursuant to F.R.C.P. 37.  But more disturbingly, that conduct continued even after this Court ordered the Company to produce these documents without further delay.  Despite this Court's clear instructions, and despite repeated correspondence from House's counsel in the weeks following the Summary Judgment hearing, First Marblehead delayed producing these materials until August 29, 2005.

---

[2] Although the grant of Options to James includes a three-month post-departure exercise requirement, its relevant language is found in Par.1 which states, "The Option is intended by the parties to be a non-qualified stock option and shall not be treated as an incentive stock option as such term is defined under Section 422 of the Internal Revenue Code." (emphasis in original)

[3] It is our recollection that during "off the record" colloquy with counsel at the August 5 hearing, the Court made clear that First Marblehead was to produce the documents "forthwith."

3

When the Company finally and delinquently provided documents on August 29, its production remained deficient in at least one material respect: although First Marblehead provided several option grants given to other employees (with the names of those employees redacted), House suspected, and later was able to confirm, that First Marblehead had not provided the Option grants to Ralph James, including, most notably, *a grant of non-qualified Options to James* under the 1996 Plan.[4] House never would have learned of this grant but for his keen suspicion that First Marblehead had continued to withhold documents.[5]

Upon review of the Supplemental Memo, it is obvious why First Marblehead fought so hard first to conceal from House its existence,[6] and then to resist its production: the Supplemental Memo represents an unequivocal *admission* by the Company that House's Option grant contained no requirement that he exercise his Options within three months of his departure.

---

[4] Dan Meyers, First Marblehead's CEO, had testified in his deposition that he believed Ralph James may have been granted non-qualified Options. (Meyers Dep., pp. 87-88; relevant pages attached hereto as Exhibit E) As a result, House specifically requested James' grants on numerous occasions dating back to February 28, 2005. (A copy of a 2/28/05 letter requesting James' grants is attached hereto as Exhibit F) Upon (belatedly) receiving several Option grants on August 29, House noticed that there did not appear to be any grants of non-qualified Options. That same day, House's counsel sent First Marblehead's counsel an email inquiring whether James' grant was included in the production. (A copy of that email is attached hereto as Exhibit G) Having received no response to this query, House's counsel sent another email on September 6. (A copy of that email is attached hereto as Exhibit H) First Marblehead again failed to respond. Finally, on September 15, First Marblehead sent certain of James' grants, including the grant of non-qualified Options.

[5] Indeed, as House only received James' grants because he specifically and repeatedly requested them, he can only assume that First Marblehead continues to conceal and withhold other relevant documents and information.

[6] As explained in House's Motion to Compel, First Marblehead did not provide the Supplemental Memo in its initial document production in December 2004, nor did it provide a privilege log at that time (or at any time until June 2005, despite House's repeated requests that it do so). House did not discover its existence until Hoffman's deposition.

NYC_16483.1

Hoffman entitled the Supplemental Memo "Corrections and Amplifications," and the document states in relevant part, "I found that I had misstated one of the terms of the option in the summary memo which I distributed on Monday. <u>Mea</u> <u>culpa</u>. A copy of that revised memo is attached and you should substitute it for the [earlier, distributed Memo]." (emphasis in original) The Supplemental Memo purports to correct Hoffman's earlier Memo by including an additional requirement that Options be exercised within three months of an employee's departure. However, *it is undisputed that First Marblehead never distributed the Supplemental Memo to House*.[7] As this Court noted at the August 5 hearing, the Supplemental Memo "is relevant. Under any theory, it's relevant. So turn it over." (<u>See</u> Transcript of 8/5/05 Hearing, p. 24; relevant pages attached hereto as Exhibit D)

First Marblehead's dilatory conduct has significantly prejudiced House's ability to maintain his claims and defenses. Both categories of documents at issue are material, relevant, and non-privileged, and should have been turned over <u>months</u> ago. For example, the grant of non-qualified Options to James demonstrates that, contrary to the position the Company has taken all along, First Marblehead in fact granted non-qualified Options under the Plan (to both House and James, among perhaps others). In addition, the Supplemental Memo provides House the basis for an alternative counterclaim for negligent misrepresentation,[8] and further bolsters his

---

[7] Indeed, at the August 5 hearing, First Marblehead's counsel admitted on the record that House "never saw it." (<u>See</u> Transcript of 8/5/05 Hearing, p. 24; relevant pages attached hereto as Exhibit D)

[8] After receiving the Supplemental Memo, House sought leave to file an Amended Answer adding such a claim. First Marblehead's concealing and withholding of the Supplemental Memo prevented House from asserting such a claim at an earlier date. Although no further discovery is required for this claim, House was deprived of the ability to depose relevant First Marblehead principals regarding their receipt (and failure to distribute) the Supplemental Memo.

NYC_16483.1

promissory estoppel and breach of contract claims (by confirming that House's Options contained no three-month post-departure exercise requirement).

Additionally, by attempting to conceal from House the grant of non-qualified Options to James, First Marblehead evinced flagrant disregard for the Federal Rules of Civil Procedure, which are designed to encourage open discovery. Even more disturbing, the Company simply ignored an Order of this Court. F.R.C.P. 37(b)(2) authorizes sanctions against a party who disregards a court order, *including the entry of judgment against that party.*[9] See, e.g., Farm Contr. Svcs., Inc. v. Fudge, 831 F.2d 18, 20-21 (1st Cir. (Mass.) 1987) (upholding sanction of dismissal against party who disobeyed court order that it produce certain documents).[10] At the very least, monetary sanctions should be imposed against First Marblehead, including House's costs in bringing the Motion to Compel and this Memorandum in further support thereof. See,

---

[9] F.R.C.P. 37(b)(2) states in relevant part:

> If a party . . . fails to obey an order to provide or permit discovery … the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> . . .
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

[10] See also Barretto v. Citibank, N.A., 907 F.2d 15, 16-17 (1st Cir. 1990) (dismissal sanction warranted due to plaintiffs' "deliberate disregard for the express orders of the court" that it provide discovery); Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 10-11 (1st Cir. 1991) ("plaintiff's conduct evinced a deliberate pattern of delay and disregard for court procedures that was sufficiently egregious to incur the sanction of dismissal"); Big Top USA v. The Wittern Group, 183 F.R.D. 331, 339-341 (D. Mass. 1998) (dismissing plaintiff's claims against two defendants due to plaintiff's noncompliance with court orders that it produce certain documents and information).

e.g., Legault v. Zambarano, 105 F.3d 24, 26-27 (1st Cir. 1997) (upholding award of monetary sanctions against attorney and client for obstructionist tactics during discovery).[11]

---

[11] See also Russell v. Town of Reading, 208 F.R.D. 24, 25-26 (D. Mass. 2002) (awarding costs for failure to comply with discovery requests and court order).

NYC_16483.1

Dated this 30th day of September, 2005.

                          Respectfully submitted,
                          Gregory House,
                          By his attorneys,

                          /s/William T. Hogan III_____
                          William T. Hogan, III BBO # 237710
                          **Hogan, Roache & Malone**
                          66 Long Wharf
                          Boston, MA  02110
                          (617) 367-0330

                          Peter N. Wang (admitted *pro hac*)
                          Yonaton Aronoff (admitted *pro hac*)
                          **Foley & Lardner LLP**
                          90 Park Avenue
                          New York, NY 10016

                          *Attorneys for Defendant Gregory House*

CERTIFICATE OF RULE 7.1 CONFERENCE AND OF SERVICE

I, William T. Hogan III, hereby certify that, prior to filing the above motion, counsel conferred concerning this motion and attempted in good faith to resolve or narrow the issues.  I further certify that on this 30th day of September 2005, I filed a copy of said motion electrically.  Notice of this filing will be sent to all parties via the United States District Court electronic filing system.  Parties may access this filing through the Court's system.

                          /s/William T. Hogan III_____
                          William T. Hogan III