# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---------------------------------------------------------

FIRST MARBLEHEAD CORP.,       )

                            )

          Plaintiff,       )

                            )

vs.                       )     Civil Action No. 04-11263PBS

                            )

GREGORY HOUSE,           )

                            )

          Defendant.      )

---------------------------------------------------------

## DEFENDANT, GREGORY HOUSE'S PROPOSED
## SPECIFIC INSTRUCTIONS TO THE JURY

      Defendant, Gregory House ("House"), appearing by and through his undersigned counsel, hereby submits his proposed specific instructions to the jury. House respectfully reserves the right to supplement and/or amend his proposed instructions during trial.

DATED: April 12, 2007

                          Respectfully submitted,
                          Gregory House,
                          By his attorneys,

                          /s/Peter N. Wang
                          Peter N. Wang (admitted *Pro Hac Vice*)
                          Yonaton Aronoff (admitted *Pro Hac Vice*)
                          **Foley & Lardner LLP**
                          90 Park Avenue
                          New York, NY 10016

<u>CERTIFICATE OF SERVICE</u>

I, Yonaton Aronoff, hereby certify that on this 12th day of April 2007, I served a copy of this document via the United States District Court electronic filing system to all counsel of record.

<u>//S//Yonaton Aronoff</u>

Yonaton Aronoff

## DEFENDANT'S PROPOSED SPECIFIC INSTRUCTIONS TO THE JURY

**REQUEST**[1]                                                      **REQUEST NO.**

| | |
|---|---|
| Introduction To The Case | 1 |
| A Corporation's Acts And Knowledge | 2 |
| Weighing Conflicting Testimony | 3 |
| Deposition Testimony | 4 |
| Expert Witness Testimony | 5 |
| Defendant/Counter-Claimant's Burden Of Proof, Generally | 6 |
| General Description of Defendant/Counter-Claimant's Claim | 7 |
| Negligent Misrepresentation – Elements Of Claim | 8 |
| Negligent Misrepresentation – False Statements And/Or Omissions | 9 |
| Negligent Misrepresentation – Liability For Half-Truths | 10 |
| Negligent Misrepresentation – Omissions Alone | 11 |
| Negligent Misrepresentation – Materiality | 12 |
| Negligent Misrepresentation – Duty | 13 |
| Negligent Misrepresentation – Intent Not Necessary | 14 |
| Negligent Misrepresentation – Not Sole Factor | 15 |
| Negligent Misrepresentation – Proof Of Reasonable Reliance | 16 |
| Negligent Misrepresentation – Causation | 17 |
| Damages – Reasonable Certainty | 18 |
| Damages – Negligent Misrepresentation | 19 |
| Damages – Value Of Exercised Stock Options | 20 |

---

[1] Defendant also seeks general instructions about such matters as (1) inferences; (2) credibility; (3) bias; (4) sympathy; (5) the obligation of jurors to rule on the evidence presented; and (6) what is, and is not evidence, among others. Such general instructions are not specifically requested herein, but upon the Court's direction, will be provided.

3

## REQUEST NO. 1

## INTRODUCTION TO THE CASE

The defendant in this case, Gregory House, formerly was employed by the plaintiff, First Marblehead Corporation.  It is undisputed that in the spring of 1997, First Marblehead granted Mr. House 2,500 stock options.

Stock options allow their owner the "option" to purchase stock in a company at a specific price.  Stock options may have certain restrictions and other unique features, called "terms."  In this case, some of the terms of Mr. House's options were that they had a ten-year duration, and an exercise price of $32/share.  It is undisputed that Mr. House was told of these terms when he was granted his options.

However, another one of the terms of the stock options First Marblehead granted to Mr. House was that the options had to be exercised within three months, should Mr. House resign from his employment with the Company.  Mr. House alleges that First Marblehead failed to inform him of this key term and that, as a result, he did not know that his options would expire if he failed to exercise them within three months after he left First Marblehead.

Mr. House left First Marblehead in February 1998, and did not attempt to exercise his options until 2004.  When he did so, the Company informed him that his options had expired.

Although technically First Marblehead is the "plaintiff" in this case and Mr. House is the "defendant," that is because of a procedural technicality that you need not worry about.  In fact, the sole claim in this case is a claim for negligent misrepresentation, asserted by Mr. House against First Marblehead.  In essence, Mr. House alleges that First Marblehead was negligent for failing to inform him that his stock options would expire if he did not exercise them within three months of his resignation in February 1998.

## REQUEST NO. 2

## A CORPORATION'S ACTS AND KNOWLEDGE

First Marblehead is a corporation. You are instructed that a corporation like First Marblehead can act only through its officers, agents, or employees. Any negligence or fault of First Marblehead's officers, agents, or employees who are acting within the scope of their employment or agency is the negligence or fault of First Marblehead. For example, if you find that Rodney Hoffman, First Marblehead's lawyer, or Dan Meyers, First Marblehead's former CEO, made negligent misrepresentations and/or omissions, you must attribute such misrepresentations to First Marblehead.

Likewise, a corporation like First Marblehead gains knowledge and information through its officers, agents, or employees. Therefore, in this case, you may find that First Marblehead had certain knowledge or understood certain matters or gained certain information through its officers, agents, or employees. For example, if you find that any knowledge, understanding, information or appreciation about the events at issue in this trial were obtained by First Marblehead's officers, agents, or employees, such knowledge, understanding, information or appreciation should be presumed to be known and appreciated by First Marblehead. Sunrise Properties, Inc. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C., 425 Mass. 63, 66-69 (Mass. 1997).

**REQUEST NO. 3**

**WEIGHING CONFLICTING TESTIMONY**

You may find that there is conflicting testimony in this case. You are not required to decide any issue according to the testimony of several witnesses that does not convince you as against the testimony of a smaller number of witnesses, or other evidence, that is more convincing to you. This does not mean that you are free to disregard the testimony of any witness merely from caprice, prejudice, or from a desire to favor either side. However, you may disregard the testimony of any witness, if it is not convincing as compared to the testimony of another witness. It is up to you, the jury, to weigh conflicting testimony and, ultimately, to appraise its value. See Massachusetts Jury Instructions, Civil, § 20.2 (1999).

NYC_24008.2

**REQUEST NO. 4**

**<u>DEPOSITION TESTIMONY</u>**

Testimony may have been read, seen or heard from a deposition or depositions. A deposition is testimony taken under oath prior to trial and preserved in writing. You must consider a witness's deposition testimony as if it had been given here in court. <u>See</u> Massachusetts Jury Instructions, Civil, § 20.4 (1999).

7

## REQUEST NO. 5

## EXPERT WITNESS TESTIMONY

You may have heard testimony in this case from expert witnesses.  An expert is allowed to express his or her opinion on those matters about which he or she has special knowledge, skill, experience, training or education.  See, e.g., Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 588 (1993) (quoting Fed. R. Evid. 702, emphasis added); Commonwealth v. Lanigan, 419 Mass. 15, 25-26 (1994) (adopting the basic reasoning of Daubert and noting that Fed. R. Evid. 702 is the same as Rule 702 of the Massachusetts Proposed Rules of Evidence).  Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing the expert's testimony, you may consider the expert's qualifications, his or her opinion and his or her reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  An expert witness should be given no more credibility in your eyes than anyone other witness.  The fact that the expert witness discusses his credentials before testifying is only to establish that he has the credentials to give the opinion he gives.  It does not mean that this opinion is entitled to any greater weight or credibility.

When you are assessing the expert's testimony, you must carefully scrutinize the facts on which the expert's opinion rests.  An opinion that is based upon facts that are not proven, or facts that you find not to be true, is not beneficial.  See Higgins v. Delta Elevator Serv. Corp., 45 Mass. App. Ct. 643, 647 n.7, rev. denied, 428 Mass. 1109 (1998); I Hon. Patrick F. Brady et al., Mass. Superior Court Civil Pattern Jury Instructions, § 4.10 (1998).  You may give expert testimony whatever weight you find it deserves in light of all the evidence in this case, making sure to remember that the determination of the facts in this case rests solely with you.

In resolving the conflict in the testimony of expert witnesses, you should weigh the opinion of one expert against that of another.  In doing this, you should consider the qualifications and credibility of each witness, the facts and materials on which each opinion is based, and the reasons for each opinion.  The opinions of expert witnesses, however, should not be considered by you as conclusive, even if no conflicting or contrary opinions are introduced. In other words, they are not binding on you, even if uncontradicted.  See Massachusetts Jury Instructions, Civil, § 20.16 (1999).

## REQUEST NO. 6

### DEFENDANT/COUNTER-CLAIMANT'S BURDEN OF PROOF – GENERALLY

The standard of proof in a civil case is that a claimant must prove his or her case by a preponderance of the evidence. To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all relevant exhibits received in evidence, regardless of whom may have produced them.

A party in a civil case having the burden of proving a particular fact does not have to establish the existence of that fact as an absolute certainty. Neither does he or she have to establish the existence of that fact beyond reasonable doubt or to a moral certainty. That is the standard in a criminal case. But in a civil case – and this is a civil case – it is sufficient if the party having the burden of proving a particular fact establishes the existence of that fact as the greater likelihood, the greater probability. That is what preponderance of evidence really means: greater likelihood, greater probability. See Massachusetts Jury Instructions, Civil, § 1.14(d) (1999).

NYC_24008.2

## REQUEST NO. 7

## <u>GENERAL DESCRIPTION OF DEFENDANT/COUNTER-CLAIMANT'S CLAIM</u>

The sole claim in this case is a claim for negligent misrepresentation, asserted by Mr. House against First Marblehead.  Mr. House alleges that First Marblehead had a duty to inform him that his options would expire if he failed to exercise them within three months of his resignation from the Company, and that First Marblehead or its representatives breached that duty and caused Mr. House to allow his stock options to expire.  As a result, Mr. House alleges that his stock options – which would be very valuable today had he exercised them in 1998 – expired and became worthless.

10

## REQUEST NO. 8

## **NEGLIGENT MISREPRESENTATION – ELEMENTS OF CLAIM**

Mr. House's claim or cause of action against First Marblehead is for negligent misrepresentation.  Mr. House has the burden of persuading you of the following:

(i) First Marblehead or its representatives supplied false information for the guidance of Mr. House;

(ii) First Marblehead or its representatives supplied the information when it was acting in the course of its business;

(iii) House justifiably relied on the information supplied by First Marblehead or its representatives;

(iv) First Marblehead failed to exercise reasonable care or competence in obtaining or communicating the information; and

(v) Mr. House has been damaged as a result of his reliance on the false information.

Nota Constr. Corp. v. Keyes Assocs., 694 N.E.2d 401, 405 (Mass. App. Ct. 1998).

**REQUEST NO. 9**

**NEGLIGENT MISREPRESENTATION – FALSE STATEMENTS AND/OR OMISSIONS**

In determining whether First Marblehead or its representatives supplied false information for the guidance of Mr. House, you can consider any false statements of a material fact that First Marblehead or its representatives communicated to Mr. House as well as any omission of a material fact that First Marblehead or its representatives failed to tell Mr. House. <u>Kannavos v. Annino</u>, 356 Mass. 42, 48 (Mass. 1969).

NYC_24008.2

## REQUEST NO. 10

## **NEGLIGENT MISREPRESENTATION – LIABILITY FOR HALF-TRUTHS**

Under the law, a half-truth is as wrongful as a "whole" lie where the half-truth misleads a party. Although there may be no duty imposed upon one party to a transaction to speak for the information of the other, if he does speak to a given point of information, voluntarily or at the other's request, he is bound by the law to speak honestly and divulge all material facts that bear upon the points that lie within his knowledge. Thus, if you find that First Marblehead or its representatives provided Mr. House with fragmentary or incomplete information about the terms of Mr. House's stock options, you may find that First Marblehead's failure to fully disclose information was misleading. Kannavos v. Annino, 356 Mass. 42, 48 (Mass. 1969); Golber v. BayBank Valley Trust Co., 46 Mass. App. Ct. 256, 258 (Mass. App. Ct. 1999).

13

# REQUEST NO. 11

## NEGLIGENT MISREPRESENTATION – OMISSIONS ALONE

When a party like First Marblehead has a duty to Mr. House to exercise reasonable care to disclose information about the terms and conditions of his stock options, First Marblehead's (or its representatives') failure to disclose a fact to Mr. House that it knows may justifiably induce Mr. House to act or to refrain from acting subjects First Marblehead to the same liability as if it made an affirmative representation to Mr. House about the nonexistence of information that it failed to disclose. Fox v. F & J Gattozzi Corp., 41 Mass. App. Ct. 581, 587 (Mass. App. Ct. 1996); Restatement (Second) of Torts, § 551(1).

14

**REQUEST NO. 12**

**<u>NEGLIGENT MISREPRESENTATION – MATERIALITY</u>**

      A fact is "material" if a reasonable person in Mr. House's position would attach importance to the fact misrepresented in determining Mr. House's choice of action in the transaction in question.  For example, if you find that a reasonable person in Mr. House's position would attach importance to the requirement that he or she exercise his or her stock options within three months following his or her resignation, you may find that fact to be material.  <u>Zimmerman v. Kent</u>, 31 Mass. App. Ct. 72, 77-78 (Mass. App. Ct. 1991).

NYC_24008.2

**REQUEST NO. 13**

**NEGLIGENT MISREPRESENTATION – DUTY**

A party who makes representations under circumstances where he knows that the party receiving the representations will be relying upon them has a duty to exercise reasonable care in making the representations.  Restatement (Second) of Torts s. 552 (1977); <u>Nycal Corp. v. KPMG Peat Marwick LLP</u>, 426 Mass. 491, 495-498 (Mass. 1998).

**REQUEST NO. 14**

**NEGLIGENT MISREPRESENTATION – INTENT NOT NECESSARY**

Liability for negligent misrepresentation does not require a showing that First Marblehead or its representatives knew that the relevant statements were false or that First Marblehead or its representatives actually intended to deceive Mr. House by failing to disclose material information.  Kitner v. CTW Transp., Inc., 53 Mass. App. Ct. 741, 749 (Mass. App. Ct. 2002).

17

## REQUEST NO. 15

## NEGLIGENT MISREPRESENTATION – NOT SOLE FACTOR

Mr. House must prove that he reasonably relied on First Marblehead's, or its representatives', misrepresentation(s) and/or omission(s); that is, that First Marblehead or its representatives caused Mr. House to do something he otherwise would not have done, such as refrain from exercising his stock options.  You are instructed, however, that any false statement or omission need not have been the sole or even the predominating factor in Mr. House's reliance for there to be liability to First Marblehead.  Mr. House could rely, and be justified in relying, as long as he had a reasonable belief in the truth of the matter later found out to be false. Deluca v. Jordan, 57 Mass. App. Ct. 126, 139 (Mass. App. Ct. 2003).

18

## REQUEST NO. 16

## <u>NEGLIGENT MISREPRESENTATION – PROOF OF REASONABLE RELIANCE</u>

Mr. House's reliance on information provided by First Marblehead or its representatives was reasonable unless he was confronted with representations that were "preposterous or palpably false."  <u>Mahaney v. John Hancock Mut. Life Ins. Co.</u>, 6 Mass. App. Ct. 919, 920 (Mass. App. Ct. 1978); <u>Marram v. Kobrick Offshore Fund, Ltd.</u>, 442 Mass. 43, 60 (Mass. 2004).

### REQUEST NO. 17

### **NEGLIGENT MISREPRESENTATION – CAUSATION**

To recover damages, Mr. House need only show "that there was greater likelihood or probability that the harm complained of was due to causes for which [First Marblehead or its representatives] was responsible than from any other cause." <u>McLaughlin v. Berstein</u>, 356 Mass. 219, 226 (Mass. 1969).

Mr. House is "not required to eliminate entirely all possibility that [First Marblehead's or its representatives'] conduct was not a cause. It is enough that [he] introduce evidence from which reasonable [persons] may conclude that it is more probable that the event was caused [First Marblehead or its representatives] than that it was not." <u>Mullins v. Pine Manor College</u>, 389 Mass. 47, 58 (Mass. 1983) (citations omitted).

The question of causation is whether it was more probable than not that House's actions were within the reasonably foreseeable risk of harm created by First Marblehead's, or its representatives', negligence. Another way of stating the issue is whether reasonable measures by First Marblehead or its representatives probably would have prevented House's alleged loss. <u>See Fund v. Hotel Lenox of Boston, Inc.</u>, 418 Mass. 191, 192-193 (Mass. 1994) (citations omitted).

Mr. House "is only required to show a greater likelihood that its injury was caused [by First Marblehead or its representatives] . . . than by some other cause." <u>Coyne v. John S. Tilley Co., Inc.</u>, 368 Mass. 230, 239 (Mass. 1975); <u>MacDonald v. Najjar</u>, 362 Mass. 119, 122 (Mass. 1972).

"Proximate cause does not require the particular act which caused [the] injury to have been foresee[able], only that the general character and probability of the injury be foreseeable." <u>Glick v. Prince Italian Foods Of Saugus, Inc.</u>, 25 Mass. App. Ct. 901, 902 (Mass. App. Ct. 1987); <u>Rohde v. Lawrence Gen. Hosp.</u>, 34 Mass. App. Ct. 584, 588 (Mass. App. Ct. 1993).

For liability, if the loss is caused by the defendant, "it is not necessary that injury in the precise form in which it in fact resulted should have been foreseen. It is enough that it now appears to have been a natural and probable consequence." <u>Hill v. Winsor</u>, 118 Mass. 251, 259 (Mass. 1875); <u>Payton v. Abbott Labs</u>, 386 Mass. 540, 555 (Mass. 1982).

## REQUEST NO. 18

## DAMAGES – REASONABLE CERTAINTY

"Prospective profits may be recovered [] when the loss of them appears to have been the direct result of the wrong complained of and when they are capable of proof to a reasonable degree of certainty.  They need not be susceptible of calculation with mathematical exactness, provided there is a sufficient foundation for a rational conclusion."  Augat, Inc. v. Aegis, Inc., 417 Mass. 484, 488 n.4 (Mass. 1994), quoting Lowrie v. Castle, 225 Mass. 37, 51-52 (1916).

## REQUEST NO. 19

## <u>DAMAGES – NEGLIGENT MISREPRESENTATION</u>

A party is entitled to recover as damages for negligent misrepresentation any "pecuniary loss" it suffered as a consequence of its reliance upon the negligent misrepresentations and/or omissions.  Restatement (Second) of Torts § 552B (1977).  "Pecuniary loss" is defined as a loss of money or something of monetary value.  <u>Black's Law Dictionary</u> (1979).  In other words, if you find that Mr. House relied reasonably on materially false representations or omissions made by First Marblehead or its representatives, then Mr. House "is entitled to any loss of money or loss of something which money could acquire suffered as a consequence of reliance on the representation" or omission.  <u>Masso v. United Parcel Service of America, Inc.</u>, 884 F.Supp. 610, 618 (D.Mass. 1995).

22

**REQUEST NO. 20**

**DAMAGES – FULL VALUE OF EXERCISED STOCK OPTIONS**

A party who fails to exercise stock options as a consequence of another's negligent misrepresentations and/or omissions may recover the full value of what he lost due to the misrepresentations and/or omissions, which includes the highest value of the stock he/she would have received had he/she exercised the options, adjusted for any splits or dividends that occurred subsequently. I instruct you that, had he held onto them, the 2,500 shares of stock that Mr. House would have received had he exercised his stock options when he left First Marblehead subsequently would have become 150,000 shares through a series of stock splits and dividends. If you find that Mr. House would not have allowed his 2,500 stock options to lapse into valuelessness but for First Marblehead's negligent misrepresentations and/or omissions, and that he would have held onto his 2,500 shares of First Marblehead stock, then you may award Mr. House the highest value of his 150,000 shares, minus $80,000, the amount it would have cost Mr. House to exercise his Options. Trytko v. Hubbell, Inc., 28 F.3d 715, 724 (7th Cir. 1994).