UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

FIRST MARBLEHEAD CORP., )
)
    Plaintiff, )
)
vs. ) Civil Action No. 04-11263PBS
)
GREGORY HOUSE, )
)
    Defendant. )

---

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE FROM TRIAL THE
ANTICIPATED TESTIMONY OF ROBERT A. SHERWIN**

Defendant Gregory House ("House"), by and through counsel, respectfully states as follows in support of his motion *in limine* for an order to exclude Plaintiff First Marblehead Corp.'s ("First Marblehead") proposed expert, Robert A. Sherwin, from testifying during the trial in this matter.[1]

**PRELIMINARY STATEMENT**

First Marblehead's attempt to introduce Mr. Sherwin's expert testimony is nothing more than a thinly-veiled (and improper) effort to instruct the judge and jury as to what law to apply in this case, and inappropriately to direct the jury what conclusions to reach. Indeed, a review of Mr. Sherwin's report reveals that his "expert conclusions" do no more than summarize (1) his view of how a reasonable investor would hypothetically have acted with respect to the options at issue (for which the witness has no "expertise," in any event); and (2) his interpretation of the proper method for measuring damages in this case (which is based entirely on an improper standard of law). Mr. Sherwin's so-called expert conclusions thus impermissibly consists of legal and factual inferences which directly invade the provinces of the judge and jury. The

---

[1] Mr. Sherwin's expert report is attached hereto as Exhibit A.

Federal Rules of Evidence and the law of this Circuit make clear that this type of purported expert testimony is not considered helpful to the trier of fact and thus should be precluded as a matter of law.

## FACTUAL BACKGROUND

The background facts of this litigation are set forth in detail in House's Opposition to First Marblehead's Motion for Summary Judgment, and the parties' Joint Pretrial Statement (filed herewith). The facts pertinent to this motion are essentially not disputed and may be stated in brief.

This action stems from House's attempt to exercise the employee stock options (the "Options")[2] First Marblehead granted House during his employment. House was granted his Options in or around the spring of 1997 and all of his Options were fully vested upon his voluntary departure from First Marblehead in February 1998. As now admitted by First Marblehead, House was never provided with a copy of the stock option agreement governing his Options, or any other communication that would have revealed to him that his Options would expire three months after the end of his employment.[3] First Marblehead's counsel, Rodney Hoffman, has conceded that that was a "mistake." House thus alleges that First Marblehead's

---

[2] House's Options contained a $32 per share "strike price," and were subject to the condition that they be exercised within ten years.

[3] Neither of the two documents First Marblehead actually gave to House relating to his Options mention the purported 90-day exercise requirement. In fact, the Court of Appeals for the First Circuit, in its Order vacating the grant of summary judgment on House's negligent misrepresentation claim, acknowledged that it is "undisputed" that First Marblehead failed to provide House with a revised memo to remedy the "misleading nature" of the Option memo which was given to House. See The First Marblehead Corp. v. Gregory House, No. 06-1114, filed December 26, 2006 (attached hereto as Exhibit B).

2

failure to inform him that his Options expired three months after the end of his employment constitutes negligent misrepresentation and caused him to suffer significant financial damages.[4]

In an effort to refute House's negligent misrepresentation claim, First Marblehead seeks to introduce the testimony of an "expert," Robert A. Sherwin of Analysis Group, Inc. (an economic, financial and strategy consulting firm). In his expert report, Mr. Sherwin states that he was asked to address two specific questions:

> (1) "whether a reasonable investor in Mr. House's position would have exercised [the Options] to purchase the shares of First Marblehead at an exercise price of $32.00 per share between March and May of 1998 (i.e., the three-month period following his resignation);" and
>
> (2) "whether Mr. House has been damaged by allegedly not being informed about the three-month expiration of his [O]ptions."

Exhibit A, p. 3.  In his report, Mr. Sherwin reached the following two conclusions:

> (1) "[i]t is extremely unlikely that a reasonable investor in Mr. House's position would have exercised [the Options] at an exercise price of $32.00 per share between March and May of 1998;" and
>
> (2) "[e]ven if Mr. House had exercised his [O]ptions between March and May of 1998, his damages would be zero."

Id.  As explained more fully below, Mr. Sherwin's anticipated testimony should be excluded at trial because such testimony is directly prohibited by the Federal Rules of Evidence and the law of this Circuit.

## ARGUMENT

### I. Mr. Sherwin's Anticipated Testimony Should Be Excluded At Trial

It is black letter law that a trial court must act as a "gatekeeper" to ensure that evidence presented by expert witnesses is not only relevant, but also reliable and helpful to the jury's

---

[4] First Marblehead went public in October 2003, as a result of which House's Options became worth more than $8 million.

evaluation of such evidence.  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993) ("Daubert"); Kumhoe Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1998) (extending "gatekeeper" obligation beyond "scientific" testimony to all expert testimony).

As the Supreme Court noted in Daubert, the "primary locus" of this obligation is Federal Rule of Evidence 702.  That Rule provides in pertinent part:

> If scientific, technical, or other specialized knowledge *will assist the trier of fact to understand the evidence or to determine a fact in issue*, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise…

Fed. R. Evid. 702 (emphasis added).  Yet the expert report and anticipated testimony of Mr. Sherwin will *not* assist the Court in determining evidence or facts material to this case.  Instead, Mr. Sherwin's expert report and testimony infringes upon the judge's role as the arbiter of the law and the jury's role as fact-finder; the report and testimony thus should be excluded as a matter of law.

### A. Mr. Sherwin's Proposed Expert Report and Testimony Regarding The Conduct of a "Reasonable Investor" Improperly Invades the Province Of the Jury And Is Irrelevant

The Federal Rules of Evidence and the law in this Circuit are clear that an expert cannot merely tell the jury what result to reach.  See, e.g., Fed. R. Evid. 704, Advisory Committee Notes; Dinco v. Dylex Limited, 111 F.3d 964, 973 (1st Cir. 1997) (notwithstanding Federal Rule of Evidence 704's abolition of the bar against ultimate issue opinions, "that is not a carte blanche for experts to substitute their views for matters well within the ken of the jury") (internal citation omitted).  Yet, Mr. Sherwin's expert report, in large measure, does precisely this by concluding that "it is extremely unlikely that a reasonable investor in Mr. House's position would have exercised [the Options] . . . between March and May of 1998."  Exhibit A, p. 3.  In other words,

4

First Marblehead is seeking to introduce Mr. Sherwin's so-called expert opinion for purposes of demonstrating to the jury that it would not have mattered whether First Marblehead had informed House of the true expiration period of his Options because – according to Mr. Sherwin – a reasonable investor would have allowed the Options to expire had he known the correct information.

The question of how a reasonable investor (and House) would have acted if he had been presented with all of the information regarding the Options, however, is a question of fact expressly reserved for the jury.[5]  See e.g., Davis v. Protection One Alarm Monitoring, Inc., 456 F. Supp. 2d 243, 249 (D. Mass. 2006) (recognizing that the "application of the reasonable person standard is uniquely within the competence of the jury"); U.S. v. Buchanan, 964 F. Supp. 533, 537-538 (D. Mass. 1997) (excluding expert testimony which concluded that defendant's conduct was not consistent with generally accepted standards of conduct in industry, in part, because such testimony improperly usurped the jury's fact finding authority).

Moreover, as Daubert makes plain, expert testimony must be "sufficiently tied to the facts" to help the jury resolve the factual dispute.  Daubert, supra, 509 U.S. at 591.  Expert testimony which relies on assumptions that are not relevant cannot "assist the trier of fact" as Rule 702 requires.  Here, Mr. Sherwin's subjective testimony as to what a reasonable investor would or would not have done regarding the Options is entirely irrelevant.  The only pertinent

---

[5]  Moreover, the notion that Mr. Sherwin somehow is qualified to proffer an opinion on the issue of how a "reasonable investor" would have acted is ludicrous.  Mr. Sherwin's background and expertise admittedly is in valuations and damages (see Exhibit A); he is not some kind of "human behavior" expert and thus is not qualified to provide such testimony as a matter of law.  See, e.g., Levin v. Dalva Bros., Inc., 459 F.3d 68, 78 (1st Cir. 2006) (recognizing that a proposed expert witness is an expert in one area does not *ipso facto* qualify him to testify as an expert in other areas;  affirming the exclusion of expert testimony on matters outside the scope of expert's expertise).

5

question presented by this litigation is what *House* would have done had he been informed of the expiration period.  The question of whether House would have exercised his Options during March and May of 1998 *can only be answered and addressed by House himself* (and certainly not by a so-called "expert").  Mr. Sherwin's conclusion and opinion regarding the "reasonable investor" thus is besides the point and should not be admitted into evidence.[6]  See e.g., Hochen v. Bobst Group, Inc., 290 F.3d 446, 452-453 (1st Cir. 2002) (finding district court did not abuse its discretion by excluding expert testimony which proffered a perspective irrelevant to the issue in question).

      **B.**    **Mr. Sherwin's Proposed Expert Report And Anticipated Testimony Regarding The Calculation Of Damages Offers Nothing More Than An Improper Legal Conclusion**

This Circuit (as well as numerous other Circuit Courts) long has held that "[i]t is not for the witnesses to instruct the jury as to applicable principles of law, but for the judge." Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 99 (1st Cir. 1997).  Indeed, in our legal system, "legal questions and instructions to the jury . . . [are] exclusively the domain of the judge." Id.  The rationale for this rule is simple: "The danger is that the jury may think that the 'expert' in the particular branch of the law knows more than the judge – [] an impermissible inference . . ." Id.

Despite this well-established rule of law, Mr. Sherwin seeks to instruct the judge and jury on the proper legal standard for calculating damages.  Specifically, Mr. Sherwin opines that if House had exercised his Options between March and May of 1998, he would have suffered no damages at all.  See Exhibit A, pp. 3, 9.  Mr. Sherwin appears to be assuming that the damages in

---

[6] Even assuming *arguendo* that Mr. Sherwin's proposed expert report and testimony is relevant (which it is not), such testimony should be excluded under Rule 403, because Mr. Sherwin's opinions regarding a reasonable investor will serve only to confuse the issues, and mislead the jury.

6

NYC_24038.1

this case must be limited solely to House's out of pocket expenses. This conclusion, however, constitutes nothing more than an improper legal conclusion as to the appropriate standard for measuring damages in negligent misrepresentation cases – albeit, an incorrect legal standard (see infra at 7-8) – and thus should not be permitted into evidence.  See, e.g., Chapman v. Bernard's Inc., 167 F. Supp. 2d 406, 421 (D. Mass. 2001) (striking legal conclusions from expert report because such conclusions cannot "properly assist the trier of fact as required by Rule 702"); U.S. v. Buchanan, 964 F. Supp. 533, 537-538 (D. Mass. 1997) (excluding expert testimony which concluded that defendant's conduct was not consistent with generally accepted standards of conduct in industry, in part because such testimony improperly usurped the jury's fact finding authority and tread on the judge's function to instruct the jury on the law); Pond v. Poirier, 1987 WL 17867, *5-6 (D. Mass. 1987) (striking expert affidavit which concluded that defendant failed to meet professional standards and demonstrated "gross negligence" because the Federal Rules of Evidence "do[] not permit the expert to testify as to the legal standard to be applied").

The case of Trytko v. Hubbell, 28 F.3d 715 (7th Cir. 1994)[7] -- a case almost factually identical to the one at bar[8] -- is directly on point, and provides the correct damage model to be applied.  In that case, the Court correctly recognized that it is solely within the province of the judge to determine and instruct the jury as to the proper legal theory of the measure of damages.  There, the Court reviewed, among other things, the trial court's instruction to the jury regarding

---

[7] The Trytko opinion is attached hereto as Exhibit C.

[8] In the Trytko case, John Trytko, a retired employee of Hubbell, Inc. brought an action against his former employer for, among other things, negligent misrepresentation.  Trytko alleged, as House does here, that he failed to exercise certain stock options granted to him by his former employer before the options expired because he relied on the negligent misrepresentations and omissions made to him by his former employer.  These misrepresentations, Trytko claimed, led him to believe that the period in which he could exercise his options was longer than it actually was.

7

the applicable theory of damages, and ultimately affirmed its correctness (without reference to any expert testimony). Indeed, the Court noted that the instruction was the product of the parties' and the trial court's efforts to cull the appropriate law from various sources -- none of which included expert testimony. Id. at 726; see also State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1576-77 (Fed. Cir. 1989) ("the methodology of assessing and computing damages is committed to the sound discretion of the [d]istrict [c]ourt").

In any event – and notwithstanding the legal impropriety of Mr. Sherwin's damage calculation – Mr. Sherwin's testimony regarding the method for calculating damages also should be excluded because *the standard he seeks to employ is simply wrong as a matter of law*. Indeed, the Trytko Court made clear that the proper method for calculating damages in a case involving an employer's negligent misrepresentations concerning the expiration period of an employee's stock options is as follows:

> The damages for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to that plaintiff of which the misrepresentation is a legal cause including the difference between the value of what the plaintiff has received in the transaction and its purchase price or other value given for it and the pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

Id. at 725, fn. 8. In other words, the proper measure of damages for negligent misrepresentation is what is referred to as "reliance damages," or the value of the right foregone as a result of the misrepresentation. Id. at 723. The Court in Trytko held that had the jury correctly applied the legal theory of damages provided to it by the judge, it would have found Trytko was damaged in the amount equal to the value his stock shares would have been worth as of the date of trial if he had exercised his options within the allotted period of time, minus the sum he would have had to pay to exercise those options. Id. at 724. By comparison, Mr. Sherwin's calculation of damages wrongly fails to consider the right that House forewent as a result of his reliance on the

8

misrepresentations -- namely the right to exercise his Options and then retain the stock purchased until it rose in value. Mr. Sherwin's purported expert calculation of damages thus not only constitutes an improper intrusion into the duties of the Court, but also is based on a legal standard that simply is incorrect. At base, Mr. Sherwin's so-called expert opinion regarding the calculation of damages is "not helpful" under Rule 702 and must be excluded.

## CONCLUSION

House's motion *in limine* to exclude Mr. Sherwin's expert report and anticipated testimony should be granted in its entirety.

DATED: April 12, 2007

                                        Respectfully submitted,
                                        Gregory House,
                                        By his attorneys,

                                        /s/Peter N. Wang
                                        Peter N. Wang (admitted *Pro Hac Vice*)
                                        Yonaton Aronoff (admitted *Pro Hac Vice*)
                                        **Foley & Lardner LLP**
                                        90 Park Avenue
                                        New York, NY 10016

**CERTIFICATE OF RULE 7.1 CONFERENCE AND OF SERVICE**

I, Yonaton Aronoff, hereby certify that, prior to filing the above motion, counsel conferred concerning this motion. I further certify that on this 12th day of April 2007, I served a copy of the above motion via the United States District Court electronic filing system to the undersigned counsel of record.

//S//Yonaton Aronoff

Yonaton Aronoff

Kenneth J. DeMoura, Esq.
**Adler Pollock & Sheehan PC**
175 Federal Street, 10th Floor
Boston, MA  02110
(617) 482-0600