UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE FIRST MARBLEHEAD CORPORATION
    Plaintiff

v

GREGORY J. HOUSE
    Defendant

CIVIL ACTION NO. 04-11263PBS

**MOTION IN LIMINE OF THE FIRST MARBLEHEAD CORPORATION TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING THE VIABILITY OR VALUE OF PLAINTIFF'S STOCK OPTIONS**

Plaintiff The First Marblehead Corporation ("First Marblehead") respectfully moves the Court *in limine* to preclude from the trial of this matter any reference to, evidence of, or argument concerning the viability (e.g. ability to exercise), or, in the alternative, value, of stock options purportedly held by Defendant Gregory J. House ("House"). Judicial estoppel bars House from introducing any evidence, or making any argument, of the ability to exercise, or value of, his alleged stock options (or his belief as such) where he d enied previously the existence of such stock options in his prior divorce proceeding. This factual position is entirely inconsistent with House's claim in this matter and exemplifies the very type of "fast and loose" utilization of the courts that judicial estoppel prevents.

**I.    The Prior Divorce Proceeding And Relevant Omissions**

House's one claim in this action involves the alleged, negligent misrepresentation by First Marblehead of House's ability to exercise for ten successive years (beginning approximately in 1997) about 2,500 stock options granted to him by First Marblehead during his employment with First Marblehead. House alleges that First Marblehead "fail[ed] to inform [him] that the 2,500 stock options granted to him … were set to expire if not exercised within

three months of [his] resignation." Joint Pretrial Memorandum, Defendant's Summary of the Evidence, § III. House resigned from First Marblehead on or about February 28, 1998. Id. House maintains that he was informed and believed that his First Marblehead stock options could have been exercised at any point in the ten years from their issuance in or about 1997. Id.

In or about 1998 through 1999, House was a party to a divorce proceeding then pending in the Massachusetts Probate and Family Court Department, Essex County, Civil Action No. 98D-2453-DV1 (the "Divorce Proceeding"). On April 7, 1999, as part of the Divorce Proceeding, House submitted (1) a Financial Statement, in which he identified all assets, liabilities, income, and expenses;[1] and (2) a Separation Agreement, in which House represented the he fully described in the Divorce Proceeding his assets to the best of his knowledge and ability, and that the Separation Agreement was executed based upon, and in consideration of, such representations.[2] House certified that the information and contents contained in the Financial Statement were made "under the penalties of perjury that the information stated [], if any, is complete, true, and accurate." **Exhibit 1**. House further certified that he understood that "willful misrepresentation of any of the information provided will subject me to sanctions and may result in criminal charges being filed against me." Id. The Financial Statement bears House's signature, dated April 7, 1999. Id.

The purpose of the Financial Statement and the Separation Agreement is to identify truthfully and accurately, among others, all of House's then-current assets, including stock, deferred compensation, and all other investments and assets. While House identified certain retirement plans among other assets, House omitted any reference to the stock options in, or deferred compensation in the form of, First Marblehead shares of stock. The Probate and Family

---

[1] A true and accurate copy of the Financial Statement is attached hereto as **Exhibit 1**.
[2] A true and accurate copy of the Separation Agreement is attached hereto as **Exhibit 2**.

Court accepted these tacit denials of stock options or deferred compensation sworn to by House by approving the Separation Agreement and Financial Statement and incorporating them into its Findings and Order of separation.[3]    House now directly contradicts the very factual position taken successfully in the Divorce Proceeding by claiming the existence of, ability to exercise, and significant value of, his stock options, or simply his belief as such.

## II.    Judicial Estoppel Squarely Applies To Bar Evidence Or Argument Of The Existence, Viability, Or Value Of House's Purported Stock Options

The doctrine of judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987). See New Hampshire v. Maine, 532 U.S. 742, 749 (2001).  Judicial estoppel does not require that the issue have been actually litigated in the prior proceeding. Id. at 748-49; 18 MOORE'S FEDERAL PRACTICE § 134.30, at 134-69 (3d ed. 2005).  The Federal courts have recognized that the purpose of the doctrine is to protect the integrity of the judicial process, and, therefore, applies even to *factual positions taken and omissions made* by parties in various proceedings. See, e.g., New Hampshire, 532 U.S. at 750 (factual position); Patriot Cinemas, Inc., 834 F.2d at 213-14 (factual position); ); Howell v. Town of Leyden, 335 F.Supp.2d 248, 251 (D. Mass. 2004)(omission), citing Payless Wholesale Distributors, Inc. v. Alberto Culver, 989 F.2d 570, 571 (1st Cir. 1993); Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 324-325 (3rd Cir. 2003)(omission).  At root, the doctrine prevents parties from playing "fast and loose" with the courts.  Alternative System Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004)(citations omitted).

The Supreme Court has identified several factors to consider in applying judicial

---

[3] A true and accurate copy of the Findings and Order Under M.G.L. Ch. 208, Sec. 1A of the Probate and Family Court is attached hereto as **Exhibit 3.**

estoppel, the first of which is whether the party's later position is inconsistent with its earlier position, i.e., mutually inconsistent. <u>New Hampshire</u>, 532 U.S. at 750-51. The second is whether the party has succeeded in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception of inconsistent court determinations, suggesting that either the first or second court was misled. <u>Id.</u> Another consideration with respect to the second factor is whether an unfair advantage or detriment would be created. <u>Id.</u> The application of the doctrine does not turn on whether the party asserting the inconsistent position benefited or otherwise prevailed from the other court's acceptance of the party's initial position. <u>Alternative System Concepts, Inc.</u>, 374 F.3d at 33.

House's contrary factual positions here and in the Divorce Proceeding are precisely the type of "fast and loose" litigation tactic that judicial estoppel is meant to protect the courts and litigants from. <u>See, e.g.</u>, <u>Kale v. Obuchowski</u>, 985 F.2d 360 (7th Cir. 1993)(partner was judicially estopped from asserting his alleged interest in property because he had denied any interest in the property during prior state court divorce proceedings), <u>citing</u> <u>Finley v. Kesling</u>, 105 433 N.E.2d 1112, 1118-19 (1st D. Ill. App. 1982)(husband who obtained favorable allocation of property in divorce proceeding by claiming no interest in certain stock was judicially estopped from claiming in later litigation that he owned that certain stock); <u>Allen v. Zurich Insurance Co.</u>, 667 F.2d 1162, 1167 (4th Cir. 1982)(preventing party from claiming both that he was and was not an employee of the defendant). Quite simply, there is no way in which House's factual position in this matter can be reconciled with the plainly inconsistent factual position in the Divorce Proceeding. To be sure, House claims here, and particularly during the period encompassing the Divorce Proceeding, that (1) he believed his stock options were exercisable, and (2) that the

stock options had value. In complete contrast, House previously represented in the Divorce Proceeding, via the Financial Statement and Separation Agreement and under the pains and penalties of perjury and the risk of criminal prosecution, either that (1) the stock options did not exist or were not exercisable, or (2) the stock options had no value. Taking either position in the Divorce Proceeding against his positions in this matter creates an irreconcilable mutual inconsistency. Nor can the mere passage of time, or even a claim of mistake, render these inconsistencies right.[4] New Hampshire, 532 U.S. at 750-51. Plainly, House's prior stock option position for which he gained judicial relief is contradictory in all respects with his current position and the rights he now claims.

Rounding out the application of judicial estoppel to House's current position is the obvious acceptance by the Probate and Family Court in its Findings and Order Under M.G.L. Ch. 208, Sec. 1A of House's position in the Financial Statement and Separation Agreement that (1) the stock options did not exist or were not exercisable, or (2) the stock options had no value. Had it been otherwise, the Probate and Family Court would have certainly compelled House to amend his Financial Statement and Separation Agreement or instituted proceedings to rectify what would then amount to House's perjurious statements. Clearly, the Probate and Family

---

[4] Any argument by House that mistake or inadvertence (i.e., the absence of malice) contributed to his position of the inability to exercise or value the stock options in the Divorce Proceeding is incredible legally and factually. See Alternative System Concepts, Inc., 374 F.3d at 35 (noting possible exception to judicial estoppel where the "new, inconsistent position is the product of information **neither** known **nor** readily available to [the party] at the time the initial position was taken.")(emphasis added); Howell, 335 F.Supp.2d at 251 n.5 (2004)(noting that even where facts do not support fraud or malice toward the court, the existence of serious prejudice to judicial proceedings is sufficient to warrant judicial estoppel), citing Desjardins v. Van Buren Cmty. Hosp., 37 F.3d 21, 33 (1st Cir. 1994). The Supreme Court in New Hampshire, under similar circumstances, rejected New Hampshire's "mistake" argument that, had it known then what it knew now (concerning river boundaries), it would not have taken its earlier, inconsistent factual position in a prior pending action. New Hampshire, 532 U.S. at 753-54. The Supreme Court noted that New Hampshire, like House in completing his detailed Financial Statement under penalties of perjury and subject to criminal proceedings, had every incentive to fully research and disclose its facts when the prior inconsistent statement was made. Id. at 754. Moreover, if House's current position is meritorious – that he always considered the stock options as not expiring for ten years and, therefore, had value – then he would have certainly represented the existence of the stock options in the sworn Financial Statement; to do otherwise is perjury. He deliberately did not. See Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302, 1308 (11th Cir. 2001)("deliberate or intentional manipulation can be inferred from the record").

Court accepted and used House's Financial Statement in fashioning a proper divorce decree. Id. Further, because the Probate and Family Court accepted House's no-stock option position, House directly benefited from his original, contrary position, all to First Marblehead's clear disadvantage now. The unfair advantage to House is apparent, and mocks the efficacy of the judicial system in the process – precisely the circumstances which judicial estoppel is meant to prevent. See Alternative System Concepts, Inc., 374 F.3d at 34-35. House cannot abuse the courts and litigants by attempting to "switch horses midstream to revive a previously abandoned (and flatly inconsistent) claim." Id. at 35.

Accordingly, because of House's prior inconsistent representations concerning the existence and value – or lack thereof – of his purportedly viable stock options, and the Probate and Family Court's acceptance of those representations in the form of the sworn-to Financial Statement, among others, the Court should preclude House from taking the new and completely contrary position that he possesses stock options that he believed could have been exercised beyond their three-month, post-termination period. Alternatively, the Court should, for the very same reasons, preclude House from claiming any value to the purported stock options in direct contradiction to his sworn-to Financial Statement.

## III.    Conclusion

Based on the foregoing reasons, Plaintiff The First Marblehead Corporation respectfully requests, based on the doctrine of judicial estoppel, that the Court enter an order barring at the trial of this matter any reference to, evidence of, or argument concerning (1) the purported existence and ability to exercise Defendant Gregory House's stock options, or his belief as such, and/or (2) that said stock options have value.

Respectfully submitted,

THE FIRST MARBLEHEAD CORPORATION
By its attorneys

/s/ Kenneth J. DeMoura
Kenneth J. DeMoura/BBO#548910
Michael D. Riseberg/BBO# 567771
ADLER POLLOCK & SHEEHAN, P.C.
175 Federal Street
Boston, Massachusetts 02110
(617) 482-0600

*414626_1*

## CERTIFICATE OF RULE 7.1 CONFERENCE AND OF SERVICE

The undersigned hereby certifies that prior to filing the above motion counsel conferred concerning its subject matter in a good faith attempt to resolve or narrow the issues presented. The undersigned further certifies that he served a copy of the above motion via the United States District Court electronic filing system to all counsel of record on April 12, 2007.

/s/ Kenneth J. DeMoura
Kenneth J. DeMoura/BBO#548910

# Exhibit 1

# Filed Under Seal Pursuant To Local Rule 5.3(B)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE FIRST MARBLEHEAD CORPORATION
    Plaintiff

v                                    CIVIL ACTION NO. 04-11263PBS

GREGORY J. HOUSE
    Defendant

**CONFIDENTIAL INFORMATION – SUBJECT TO L.R. 5.3 AND 7.2**

**FILED UNDER SEAL**

**CONTAINS EXHIBIT 1 TO THE FIRST MARBLEHEAD CORPORATION'S MOTION
IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING THE
VIABILITY OR VALUE OF STOCK OPTIONS**

       This package contains documents which are filed under seal pursuant to Local Rule
5.3(B) by The First Marblehead Corporation. In accordance with that Local Rule, the contents
hereof shall be retained by the Court as part of the record.

                          Respectfully submitted,

                          THE FIRST MARBLEHEAD CORPORATION
                          By its attorneys

                          Kenneth J. DeMoura/BBO#548910
                          Michael D. Riseberg/BBO# 567771
                          ADLER POLLOCK & SHEEHAN, P.C.
                          175 Federal Street
                          Boston, Massachusetts 02110
                          (617) 482-0600

*414752_1*

**Exhibit 2**

CLIENT'S COPY

## AGREEMENT

This agreement is made this _1_ day of ~~December, 1998,~~ *March 1999* by and between

Jennifer A. House, 17 Goodwin's Court, Marblehead, Essex County, Massachusetts

(hereinafter referred to as "Jennifer" or "wife") and Gregory James House, 441 East

Erie, Apartment 2104, Chicago, Illinois (hereinafter referred to as "Gregory" or

"husband").  All references in this Agreement to "parties" shall mean the above-

named Jennifer and Gregory.

### STATEMENT OF FACTS

Jennifer and Gregory were married in Frasier Colorado on February 13, 1994,

and last lived together at Marblehead, Massachusetts on March 1, 1998.

There are no children of this marriage.

Serious and irreconcilable differences have arisen between Jennifer and

Gregory and, despite mutual efforts to resolve such differences, each party

acknowledges that an irretrievable breakdown of the marriage exists.  Jennifer and

Gregory each desires to terminate the marital relationship.

There is presently pending a Complaint for Divorce pursuant to M.G.L.

Chapter 208, Section 1B in the Essex Probate Court  (Docket No. 98D-2453-DV1).

This Agreement is made in order to settle and determine all of the matters

which should be settled in view of the existing Divorce Complaint and the separation

of the parties, and this Agreement shall be binding upon the parties henceforth.



## PURPOSE

Jennifer and Gregory desire and intend at this time, and by this instrument, to settle all matters relating to the interests and obligations of each party. The above statement of Purpose of this Agreement shall not in any way limit the effects of any of the covenants of the parties contained herein.

## REPRESENTATION

Jennifer and Gregory declare and acknowledge that each of them understands the position, circumstances and prospects of the other, and the terms, provisions and conditions of this Agreement, and believe such terms, provisions and conditions to be fair, adequate and reasonable. The parties further state they have negotiated the terms of this Agreement directly, that Jennifer has had independent legal advice by counsel of her own choosing, that Gregory has been advised of his rights to counsel and has chosen not to be represented by counsel, and that, after having read this Agreement line by line, they freely and fully accept the terms, conditions and provisions hereof and enter into this Agreement voluntarily and without any coercion whatsoever. The parties further acknowledge and declare that this Agreement contains the entire agreement between the parties hereto, and that there are no agreements, promises, terms, conditions or understandings, and no representations or inducements, express or implied, leading to the execution hereof, other than those herein set forth, and that no oral statement or prior written matter extrinsic to this Agreement shall have any force or effect. The parties represent and acknowledge that each has fully described their assets and liabilities to the other party to the best of his or her knowledge and ability, both orally and otherwise, and by the exchange of financial statements supplementing such information, of which

Jennifer and Gregory each acknowledge receipt. Each party has carefully considered the income, financial resources, and liabilities and expenses of the other and of themselves, as represented on their respective financial statements, and the within Agreement is executed based upon their said knowledge. Jennifer and Gregory acknowledge, represent and agree that after having been afforded such opportunities for full discovery of any and all pertinent data with regard to the assets, liabilities, income and expenses of the other, that they each have waived their rights of further discovery, fully cognizant of their rights, and that they each execute this Agreement based upon their personal knowledge, discovery of, and oral and written representations of the other party which they each believe to be a true and complete and accurate reflection of the other party's current financial status and circumstances. Any prejudice suffered by either Jennifer or Gregory as a result of failing to undertake further discovery proceedings shall not affect the validity of the within Agreement and shall not be a basis for either Jennifer or Gregory to void the within Agreement. Both parties agree that the within Agreement is fair and reasonable.

## CONSIDERATION

NOW, THEREFORE, in consideration of the promises and of the covenants and agreements herein contained, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties covenant and agree to the following:

SEPARATE STATUS

From the date of this Agreement, Jennifer and Gregory shall continue to live separate and apart from one another for the rest of their lives, as fully as if sole and unmarried.

I.    WAIVER OF ESTATE CLAIM

Except as otherwise provided herein and except to enforce the provisions of this Agreement, Jennifer and Gregory each hereby waive any and all rights in law or in equity that he or she may now have or hereafter acquire as spouse under the laws of any jurisdiction, to elect to take against any last will or codicil made by the other, now or hereafter in force, including all rights of dower or of courtesy, to share in the estate of the other in case of intestacy, to act as executor or administrator of the estate of the other, and hereby waives, renounces, and relinquishes unto the other, their respective heirs, executors, administrators, and assigns forever, all and every interest, of any kind or character, which either may now have or may hereafter acquire in or to any real or personal property of the other, and whether now owned or hereafter acquired by either.

Jennifer and Gregory shall each have the right to dispose of his or her property by will, or otherwise, in such manner as each may, in his or her uncontrolled discretion, deem proper, and neither one will claim any interest in the estate of the other, except to enforce any obligation imposed by this Agreement, and except to take an interest created or confirmed subsequent to the date of the execution of this Agreement.

It is the intention of the parties that their respective estates shall be administered as though no marriage between them had ever existed.

II.    <u>INDEMNIFICATIONS</u>

Except as specifically addressed in this Agreement, the parties represent that there are no outstanding obligations or claims in the name of the other or for which the other, his or her legal representative, or his or her property may become liable including lawsuits.   Jennifer and Gregory further covenant at all times to hold the other free, harmless and indemnified from and against all debts, charges, liabilities or lawsuits hereafter contracted or incurred by him or her in breach of the provisions of this paragraph and from any and all attorneys' fees, costs and expenses incurred by the other as a result of any such breach.

<u>STRICT PERFORMANCE</u>

The failure of Jennifer and Gregory to insist in any instance upon the strict performance of any of the terms hereof shall not be construed as a waiver of such term or terms for the future, and such terms shall nevertheless continue in full force and effect.

III.    <u>VALIDITY AND SEVERABILITY</u>

In the event any part of this Agreement shall be held invalid, such invalidity shall not invalidate the whole Agreement, but so long as the remaining provisions of this Agreement continue to reflect fairly the intent and understanding of the parties in executing this Agreement.  Said Agreement shall continue to be valid and binding.

This Agreement shall be construed and governed according to the laws of the Commonwealth of Massachusetts.

## IV. MUTUAL RELEASE

Except as otherwise herein provided, Jennifer and Gregory each hereby releases and forever discharges the other from any and all action, suits, debts, claims, demands and obligations whatsoever, both in law and in equity, which either of them has ever had, now have, or may hereafter have against the other, upon or by reason of any matter, cause, or thing up to the date of this Agreement, including, but not limited to, claims against the property of the other, it being the intention of the parties that henceforth there shall exist as between them only such rights and obligations as are specifically provided for in this Agreement. The parties agree that they will do all things and sign all documents and instruments of transfer which may be required to carry out the provisions of this Agreement.

## V. EXHIBITS

There are annexed hereto and hereby made a part hereof Exhibits A, B, C, D and E. Jennifer and Gregory agree to be bound by, and to perform and carry out all the terms of the said Exhibits to the same extent as if each of said Exhibits was fully set forth in the text of this Agreement.

## VI. COUNTERPARTS

This Agreement is executed in three (3) counterparts, each of which shall be deemed to be an original and all constitute together one and the same instrument, this being one of the said counterparts.

_____
Jennifer House

_____
Gregory House

House Agreement - Page 6

COMMONWEALTH OF MASSACHUSETTS

Essex        , ss.                                  March 1, 1999
                                                    ~~December~~, 1998

Before me personally appeared Jennifer House and acknowledged her execution of the foregoing Agreement to be her free act and deed.

_Sally F. Bisegna_

SALLY F. BISEGNA  ~~Myra S. Lyons~~, Notary Public
My commission expires: ~~4/26/02~~ 2/19/2004


COMMONWEALTH OF MASSACHUSETTS

Essex        , ss.                                  March 1, 1999
                                                    ~~December~~, 1998

Before me personally appeared Gregory House and acknowledged his execution of the foregoing Agreement to be his free act and deed.

_Sally F. Bisegna_

SALLY F. BISEGNA
Notary Public
My commission expires: 2/19/2004

## EXHIBIT A

## SUPPORT AND MAINTENANCE

Alimony

     1.    Gregory waives any and all claims for past, present and future support, maintenance and alimony for Jennifer.

     2.    Jennifer waives any and all claims for past, present and future support, maintenance and alimony from Gregory.

Medical Insurance and Expenses

     3.    Each party is presently covered by his/her own medical and hospital insurance through his/her employer.  The parties intend to continue with this arrangement.

     4.    Each party shall be responsible without limitation for all of his or her own uninsured medical, hospital, psychological, dental, and other health care costs.

EXHIBIT B

EQUITABLE DISTRIBUTION OF PROPERTY

1.     The parties acknowledge that in entering into this Agreement, they have considered the length of their marriage, their ages, health, stations, occupations, sources of income, vocational skills, employability, assets, liabilities, their personal and financial needs, and the opportunity of each party for the future acquisition of capital assets and income.   They have also considered the contributions of each of them in the acquisition, preservation and appreciation in the value of their estate and respective estates, the contributions of the parties as homemaker to the family unit.

2.    Whenever called upon to do so by the other, each party shall forthwith execute, acknowledge and deliver to or for the other party without consideration any and all deeds, assignments, bills or sale or other instruments that may be necessary or convenient to carry out the provisions of this Agreement, or that may be required to enable the other party to sell, encumber, hypothecate, or otherwise dispose of the property now or hereafter owned or acquired by such other party.

Real Property

3.     The parties own as tenants by the entirety the real estate located at 17 Goodwin's Court, Marblehead, Massachusetts (the "Marital Home").   The property is currently under agreement and is expected to be sold on or around March 1, 1999.  The National Grand Bank holds the mortgage on the Marital Home and the current balance of the note secured thereby approximates $240,000.00.

4.     Jennifer is currently living in the marital residence and shall remain there until the sale.  While she remains on the property, she shall have exclusive

*House Agreement - Page 9*

use and occupancy of the property. Gregory shall make the payments in accordance with the mortgage and note. Jennifer shall pay Gregory the sum of Six Hundred and Forty Nine ($649.00) Dollars per month as her contribution toward the payments. Jennifer shall pay the remaining expenses, including insurance and utilities.

5.    The parties shall at no time voluntarily cause or permit any manner of encumbrance or lien to affix to his or her interest in the house, except as now exists, and that if any lien, attachment or encumbrance shall hereafter attach to his or her interest, whether voluntary or involuntary, each shall use his or her best efforts to bring about the discharge of same, and if he or she shall not discharge the same, the amount of said encumbrance and the costs relating thereto shall be deducted from that party's share in the proceeds from the sale of the house.

6.    Upon the sale of the real estate, the net proceeds shall be shared by the parties on an equal ~~fifty/fifty~~ 54/46 basis. For purposes of this Agreement, the term net proceeds shall be defined as the purchase price, less mortgages, liens, encumbrances, closing costs and broker's commission, if any. *with Gregory rec. 54% and Jennifer 4*

7.    The parties shall each be responsible for their respective share of federal or state income tax resulting from the sale of said property, if any.

Personal Property

8.    The parties shall retain any pensions, IRA's or other retirement plans in their own names. Gregory waives his rights to an interest in Jennifer's pension and retirement benefits. Jennifer waives her rights to any interest in Gregory's pension and retirement benefits.

9.    The parties shall retain any bank accounts and investments accounts in their own name. Each waives any right to bank accounts or investment accounts held in the name of the other.

10.    The parties shall retain any automobiles in their own name.

11.    Each party shall be solely responsible for his or her own debts and liabilities.

12.    The parties acknowledge that they have heretofore divided between them all the remainder of their personal property to their mutual satisfaction. Henceforth each of them shall own, have and enjoy, independently of any claim or right of the other, all items of personal property of every kind now or hereafter owned or held by him or her, with full power to dispose of the same as fully and effectually, in all respects and for all purposes, as if he or she were unmarried.

13.    Except as expressly provided otherwise herein, all other personal property held in the sole name or in the sole possession of either party, including, without limitation, securities, bank accounts, retirement funds, stocks, automobiles and tangible personal property, shall belong to the party in whose name or possession said personal property is presently located. Correspondingly, each hereby waives, now and forever, any and all claims to any and all kinds of personal property possessed by, or standing in the name of, the other, whether pursuant to Mass. General Law Chapter 208, Section 34 or otherwise.

14.    Once all transfers provided in this Agreement have been effectuated, all property standing in the name of, or in the possession of either Gregory or Jennifer under the terms of this Agreement shall remain his or her own property, free from any claim by the other, except to enforce the provisions of the within

Agreement. Each party may dispose of his or her property as he or she sees fit without interference by the other. The provisions contained herein shall apply to the proceeds from the sale of any property, shall apply to all property of any kind and nature acquired by either party in the future, and shall apply to each party's respective heirs, executors, administrators and assigns. Except as specifically set forth herein, the parties hereby mutually waive and release any and all rights, if any they have, to assign, transfer, or convey any property, items or things belonging to the other or from the estate of the other, for all times, now and in the future, except to enforce the provisions of the within Agreement.

## EXHIBIT C

## LIABILITIES AND DEBTS

1.      Except as specifically provided elsewhere in this Agreement, the husband and wife shall each assume responsibility for the liabilities listed on their respective Supplemental Rule 401 Financial Statements, filed herewith, copies of which are attached and incorporated herein by this specific reference; and each agrees to indemnify and hold harmless the other from and against all actions, suits, debts, claims, demands and obligations whatsoever, both in law and in equity, relating to such liabilities.

2.      Except as otherwise set forth in this Agreement, each party hereby warrants and represents that he or she has not charged any bills or other obligations to the account of the other or to an account for which the other may be responsible. Further, the parties warrant and represent that neither has nor will incur any debt whatsoever for which the other or his or her estate or legal representative will be liable. Except as otherwise provided in this Agreement, all debts or other obligations standing in the name of a party shall be the responsibility of that party. In the event that either party breaches any of the provisions of this exhibit, he or she shall indemnify the injured party for all losses and damages occasioned by said breach, including reasonable attorneys fees and costs.

3.      Each party hereby warrants and agrees that he or she will not use the other's name to obtain credit.

# EXHIBIT D

## LEGAL REPRESENTATION AND FEES

1.      Gregory has not been represented by counsel relative to this Agreement.  Jennifer has been represented by Myra S. Lyons, Esq.  Gregory acknowledges that he was informed and advised to seek counsel and further acknowledges that he was neither advised nor counseled by Attorney Lyons.

2.      Gregory (should he consult with an attorney) and Jennifer shall each be solely responsible for their respective attorney's fees and any other expenses incurred in connection with this action, and shall pay his or her own attorney for that attorney's fees and expenses incurred in connection with the negotiation and preparation of this Agreement and all related matters, including all court appearances and the prosecution of any complaints for divorce; and each agrees to indemnify and save harmless the other from any and all claims on account of such legal fees and expenses which the other shall be obligated to pay.

3.      If either Gregory or Jennifer shall commit a breach of any of the provisions of this Agreement, the breaching party will be obligated to pay to the non-breaching party all attorneys fees, costs and expenses incurred by the non-breaching party in attempting to enforce the provisions of the within Agreement.

## EXHIBIT E

## SURVIVAL OF AGREEMENT

1.    At any hearing upon a divorce complaint between the parties, a copy of this Agreement may be submitted to the Court and may be incorporated into a judgment of divorce.  Notwithstanding such incorporation, this Agreement, shall not be merged into the judgment of divorce, but shall survive the same and be thereafter forever binding upon Jennifer and Gregory.

# Exhibit 3

# Commonwealth of Massachusetts
## The Trial Court

_____Essex_____ Division    Probate and Family Court Department    Docket No. ____98D 2453-DV1

## Findings And Order Under M.G.L. Ch. 208, Sec. 1A

Jennifer A. House

and

Gregory J. House

This action came on for hearing before the Court, ____John C. Stevens, III._____ J. presiding, and the issues having been duly heard, the Court makes the following Findings and Order:

## Findings

1. An irretrievable breakdown of the marriage of the parties does - ~~does not~~ - exist;

2. The separation agreement executed by the parties does - ~~does not~~ - make proper provisions for ~~custody~~ ~~for support and maintenance~~ - for alimony - for the disposition of the marital property;

3. Upon entry of judgment, the wife may resume her ~~maiden~~ - former name. Jennifer Ann Fox.

## Order For Approval

☐ ~~The separation agreement executed by the parties is hereby approved as fair and reasonable and the same shall have the full force and effect of an order of this Court and is incorporated and merged in this order.~~

☒ The separation agreement executed by the parties is hereby approved as fair and reasonable and the same shall have the full force and effect of an order of this Court and is incorporated but not merged in this order and shall survive and remain as an independent contract.

~~The separation agreement executed by the parties is hereby approved as fair and reasonable and shall have the full force and effect of an order of this Court and is incorporated but not merged in this order and shall survive and remain as an independent contract except for those provisions related to the child(ren) which provisions shall merge and shall not survive.~~

## Order Of Disapproval

☐ The Court hereby disapproves the agreement executed by the parties and the same is null and void and of ~~no further effect. Judgment shall be entered dismissing this action without prejudice.~~

APR - 7 1999
_____
Date

_____
Justice of the Probate and Family Court

CJ-D 406 (9/96)