**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---------------------------------------------------------
FIRST MARBLEHEAD CORP.,      )
                                     )
           Plaintiff,       )
                                     )
vs.                                )   Civil Action No. 04-11263PBS
                                   )
GREGORY HOUSE,          )
                                   )
           Defendant.     )
---------------------------------------------------------

## JOINT PRETRIAL MEMORANDUM

Plaintiff, First Marblehead Corporation ("First Marblehead" or the "Company"), and defendant, Gregory House ("House"), appearing by and through their respective undersigned counsel, hereby submit this Joint Pretrial Memorandum, pursuant to 26(3) of the Federal Rules of Civil Procedure and L.R. 16.5(d). Counsel for First Marblehead and House have conferred for the purpose of preparing this Memorandum.

**I.**    <u>Names and addresses of trial counsel.</u>

| | |
|---|---|
| Kenneth J. DeMoura, Esq. | Peter N. Wang, Esq. |
| Michael D. Riseberg, Esq. | Yonaton Aronoff, Esq. |
| Adler Pollock & Sheehan PC | Foley & Lardner LLP |
| 175 Federal Street, 10th Floor | 90 Park Avenue |
| Boston, MA 02110 | New York, NY 10016 |
| *Counsel for Plaintiff* | *Counsel for Defendant* |

**II.**    <u>A concise summary of the evidence that will be offered by (Plaintiff) First Marblehead with respect to both liability and damages.</u>

Gregory House originally asserted claims for breach of contract and promissory estoppel, against First Marblehead, in which he sought to enforce a purported agreement that his incentive stock options were subject to a ten-year term and, therefore, still exercisable six years after he left the Company. This Court's dismissal of those claims was affirmed by the First Circuit.

House's only remaining claim is for negligent misrepresentation in which he will attempt to prove -- not that he is entitled to the benefit of a ten-year option -- but that if he had been properly informed that his options were subject to a three-month expiration provision, he would have exercised all, or a portion, of his options within three-months of his resignation from First Marblehead in February 1998.

The evidence will show that First Marblehead was not negligent in failing to inform House of the three-month expiration provision, and that even if House was provided limited information about his stock options, his reliance on the limited information was not justifiable. House was a self-professed expert in incentive stock options and, therefore, he knew or should have known that all incentive stock options must expire within three months of an employee's resignation from a company to comply with the federal tax code. Regardless, House knew that his stock options were governed by the terms of the stock option plan and his particular stock option grant, both of which clearly set forth the three-month expiration provision. Yet House abruptly resigned from First Marblehead in February 1998 without bothering to obtain or even request a copy of the plan or his individual stock option grant. Nor did he conduct an exit interview.

Even if House could establish that First Marblehead made a negligent misrepresentation and that he justifiably relied on it, he will not be able to establish that he would have exercised all or even a portion of his stock options within three months of leaving First Marblehead in February 1998. When he left the company (after less than two years of employment), First Marblehead was still a small unproftible start-up, with fewer than 30 employees. The company had lost money every year since it was founded in 1991 and it continued to lose money until 2002. House was not alone in leaving First Marblehead without exercising any of his stock

options.  No employee who left the company before 2002 exercised any of their incentive stock options.  The first employee to exercise any of their stock options did not do so until July 2002, more than four years after House left the company.  House admitted (in an e-mail that he wrote to his brother during this litigation and before the dismissal of his breach of contract claim and prior to bringing any negligent misrepresentation claim) that his options in 1998 were not worth nearly the $78,000 it would have cost him to exercise them.  Consequently, shortly before House left First Marblehead, he offered to sell his options to the company's chairman at a substantial discount.  The offer was declined.  Moreover, a year after House left First Marblehead he filed a sworn financial statement in his divorce proceeding in Essex County Probate Court in which he failed to list the stock options as an asset, proving that he knew that the option had expired or was completely worthless.  Nothing in House's personal financial profile suggests that he would have had the financial wherewithall or willingness to assume the significant risk of investing in a privately owned start-up company that was still years away from an uncertain public stock offering.  Indeed, in 1998, the stock market was replete with similarly risky investment opportunities which House never pursued.  There is, therefore, no reason (without the benefit of 20/20 hindsight) to believe House would have made such an investment in First Marblehead.

III.    A concise summary of the evidence that will be offered by (Defendant) House with respect to both liability and damages.

House's claim in this case centers on First Marblehead's failure to inform House that the 2,500 stock options granted to him by the Company (the "Options") were set to expire if not exercised within three months of House's resignation.  House believes the evidence will show that First Marblehead negligently misrepresented to him the terms of his Options, that he reasonably relied on such misrepresentations by failing to exercise his Options prior to their expiration, and that, as a result, House forfeited significant bargained-for consideration.

House was employed by First Marblehead from April 1996 to February 1998 as President of First Marblehead Data Services, an affiliate of First Marblehead.  As part of House's offer of employment with First Marblehead, he was promised that an employee stock option plan would be initiated and that these options would constitute a significant portion of his compensation.  In fact, shortly after House was hired, the Company approved the 1996 First Marblehead Stock Option Plan (the "Plan"), and proceeded to grant options thereunder to certain employees, including House.

Among other things, the Plan provided that options granted thereunder have ten-year durations.  The Plan further provided that options be exercised within three months of a grantee's resignation from the Company.

House was granted 2,500 Options in the spring of 1997.  Although he was informed of several of the terms of his Options – the ten-year duration, the number of Options granted (2,500), and the strike price of each Option ($32) – House never was apprised of one *critical* term of his Options, the three-month, post-resignation exercise provision.

The evidence will demonstrate that First Marblehead had numerous opportunities to fulfill its duty to inform House of the three-month exercise restriction, but nonetheless failed ever to inform House of that key clause.  Among other occasions:

- Although the Plan required that First Marblehead distribute "a writing . . . specifying the terms and conditions" of employees' options thereunder, House <u>never</u> was furnished with a copy of the Plan during his tenure.  Nor was House ever given a copy of his formal, written "grant" document (entitled "June 15, 1997 Grant of Incentive Stock Options").  Had he been given either of these documents, House would have discovered the three-month exercise restriction.

- At some point in the spring of 1997, First Marblehead's CEO Dan Meyers asked House to help value the stock options that First Marblehead would soon be issuing. House agreed, and met with Meyers and Stephen Anbinder (House's supervisor) to price the options.  Meyers informed House that the options First Marblehead would be granting (to House, among others) would be valued as having the following *and only the following* features: (i) a ten-year duration; (ii) a $32 "strike price"; (iii) a $32 "underlying price"; (iv) a volatility, which Meyers asked House to determine; and (v) an interest rate.  Based upon these parameters, and again, without being provided with a copy of the Plan, House calculated a value for the options.  House was <u>never</u> told during this meeting (or at any other time) that the options had to be exercised within three months of an employee's departure from the Company – in fact, had House been informed of such a restriction, his calculations would have been substantially different.

- Soon after House helped price the Options, House met with Meyers and Ralph James (then First Marblehead's Executive Vice President) for his annual performance/compensation review.  During this meeting, House was given a worksheet (the "Worksheet") indicating that he had been granted 2,500 Options.  The Worksheet did not mention the three-month exercise restriction, nor did Meyers or James inform House of this provision.

- On July 7, 1997, employees of First Marblehead (including House) were given a memorandum (the "Memo") written by Rod Hoffman, outside counsel for First Marblehead, which, among other things, outlined the essential terms of the Plan. Pursuant to the Memo, the Options were exercisable within ten years of the date of their grant.  Additionally, the Memo provided that in the event that a First Marblehead employee resigned or was terminated for "cause," any unvested options would terminate immediately – *the vested options, however, could be exercised at any time prior to the ten-year expiration date*.  The Memo contained <u>no</u> provision or requirement with respect to a three-month time period for exercising options upon an employee's departure from First Marblehead.  Similarly, in his presentation about the Options on July 7, 1997, Hoffman failed to mention any such requirement.  ***Hoffman subsequently has conceded that this omission was a "mistake."***

- Sometime after the July 1997 meeting, Hoffman realized that he mistakenly had omitted mention of the three-month exercise restriction from his Memo and presentation. As a result, Hoffman authored a second, supplemental memorandum, entitled "Corrections and Amplifications," which stated in relevant part, "I found that I had misstated one of the terms of the option in the summary memo which I distributed on Monday. <u>Mea</u> <u>culpa</u>. A copy of that revised memo is attached and you should substitute it for the [Memo]." (emphasis in original) This second, supplemental memorandum added the additional requirement that the Options be exercised within three months of an employee's resignation. Hoffman gave this supplemental memorandum to the Company with the intent that it be distributed to the recipients of his earlier Memo. *First Marblehead never distributed Hoffman's second memorandum to House.*

- When House departed First Marblehead in or around February of 1998, he gave two weeks notice to Meyers and James, among others. House informed Meyers and James that he planned to work for ABN-AMRO in Chicago. At no time during his last two weeks at the Company, or within the three months following his departure, did First Marblehead tell House that his Options would expire if not exercised within that time period.

In sum, the evidence will show that First Marblehead failed to exercise reasonable care in informing House about the terms of his Options, by distributing documents to House that failed to mention the requirement that House exercise his Options within three months of his departure, by failing to distribute documents to House in its possession that may have informed House of such a requirement (the Plan, the "June 15, 1997 Grant of Incentive Stock Option", and Hoffman's second, supplemental memorandum), and by otherwise failing to inform House of any such requirement. These misrepresentations and omissions were highly material, in that they pertained to a key term of House's Options.

House reasonably relied on First Marblehead's material misrepresentations and omissions by leaving the Company in 1998 with the understanding that he had ten years to exercise his Options, and by electing not to exercise his Options within the three months following his resignation. The evidence will show that, but for First Marblehead's negligent misrepresentations, House would have exercised all, or a portion of, his Options prior to their expiration, and he thus would have obtained 2,500 shares of First Marblehead common stock.

First Marblehead completed its initial public offering on October 31, 2003. House's 2,500 shares, through two stock splits and a stock dividend, would have adjusted to 150,000 shares, at a price of approximately $.53 per share, as of March 1, 2007. The highest value of House's stock position, meaning the amount House would have received had he been able to exercise his Options and sell his shares at their highest value (accounting for the $80,000 exercise payment) would have been $8,419,000. As a result, First Marblehead's negligent misrepresentations damaged House in the amount of at least $8,419,000, plus interest.

**IV.**    <u>The facts established by pleadings or by stipulations or admissions of counsel.</u>

1.    House was recruited by Dan Meyers, his friend and First Marblehead's CEO, to work at First Marblehead in early 1996.

2.    Meyers was aware that, in leaving his job at ABN AMRO to join First Marblehead, House's salary would be reduced significantly. Meyers promised House that he would receive valuable stock options to compensate him for the reduction in salary.

3.    House began working at First Marblehead in April 1996, soon becoming President of First Marblehead Data Services, an affiliate of First Marblehead.

4.    Shortly after House began working at First Marblehead, the Company approved the 1996 First Marblehead Stock Option Plan (the "Plan").

5.    At his compensation review in or about June 1997, House received a worksheet (the "Worksheet") indicating that he had been granted 2,500 Incentive Stock Options, valued at $31.25 per share.

6.    Some weeks after House received the Worksheet, he received another document – a memorandum (the "Memo") addressed to "First Marblehead Employees," authored by Rodney Hoffman, First Marblehead's outside general counsel. The Memo was accompanied by an

announcement that Hoffman would be giving a presentation relating to the incentive stock options.

7.  The Memo confirmed the ten-year duration and strike price. The Memo did not state that the Incentive Stock Options were to be exercised within three months of an employee's resignation.

8.  The Memo also set forth a vesting schedule whereby only 20% of the Incentive Stock Options were to vest immediately, with the remainder of the Incentive Stock Options to vest 20% each year for the following four years. The Memo further indicated that the Company could defer the vesting of up to 10% of an employee's Incentive Stock Options each year, based on his performance, and that if the employee resigned or was terminated "for cause" all of the unvested Incentive Stock Options would terminate immediately.

9.  The vesting schedule set forth by the Memo came as a surprise to House, and he found it objectionable. Accordingly, House immediately went to Meyers and stated that all of his Options should vest immediately. Meyers agreed.

10.  On or about February 28, 1998, House resigned his position with First Marblehead, and began employment with ABN-AMRO in Chicago.

11.  House alleges that he was never given a copy of his written stock option agreement during his tenure at the Company, or within the three months following his resignation.

12.  House did not exercise his Options during his tenure or within the three months following his resignation.

13.  On October 21, 2003, First Marblehead completed its initial public offering.

14.  In February 2004, House contacted Meyers and attempted to exercise his Options.

15.     The Company refused to allow House to exercise his Options, contending that House's Options expired three months after he left the Company.

**V.**     <u>Contested issues of fact.</u>

1.     Whether First Marblehead breached a duty to inform House that his Options would expire if not exercised within three months of his resignation.   House believes the evidence will show that First Marblehead breached its duty to him; First Marblehead disagrees.

2.     Whether First Marblehead misrepresented and/or omitted material terms of House's Options in communicating with House about his Options.   House believes the evidence will show that First Marblehead made material misrepresentations and/or omissions about the terms of his Options; First Marblehead disagrees.

3.     Whether House relied upon First Marblehead's representations and omissions to him concerning the terms of his Options.   House believes the evidence will show that he did so rely; First Marblehead believes the evidence will show that House did not so rely.

4.     Whether House's reliance upon First Marblehead's representations and omissions to him concerning the terms of his Options was reasonable.   House believes the evidence will show that his reliance was reasonable; First Marblehead believes the evidence will show that any reliance by House was unreasonable.

5.     Whether House would have exercised some, or a portion of, his Options within the three months following his resignation, had he been informed of the three-month exercise restriction.   House believes the evidence will show that he would have; First Marblehead believes the evidence will show that he would not have.

6.     Whether and how much House was damaged by relying upon First Marblehead's representations and omissions to him concerning the terms of his Options.   House believes the

evidence will show that he was damaged; First Marblehead believes that the evidence will show that House suffered no damages.

**VI.**   <u>Jurisdictional questions.</u>

The parties do not believe there are any jurisdictional questions.

**VII.**   <u>Questions raised by pending motions.</u>

There presently are no motions pending before this Court.

**VIII.**   <u>Issues of law, including evidentiary questions, together with supporting authority.</u>[1]

1.   <u>Negligent Misrepresentation.</u>

- Under Massachusetts law, a party may recover for negligent misrepresentation if he can show that the supplier of information "(i) in the course of [its] business, (ii) supplied false information for the guidance of others, (iii) in their business transactions; (iv) causing and resulting in pecuniary loss to those others (v) by their justifiable reliance on the information, and (vi) with failure to exercise reasonable care or competence in communicating the information." <u>Nota Constr. Corp. v. Keyes Assocs.</u>, 694 N.E. 2d 401, 405 (Mass. App. Ct. 1998) (citation omitted).

- "There is much case law in Massachusetts supporting the proposition that a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party." <u>V.S.H. Realty, Inc. v. Texaco, Inc.</u>, 757 F.2d 411, 415 (1st Cir. 1985); <u>see also</u> <u>Kannavos v. Annino</u>, 356 Mass. 42, 48, 247 N.E.2d 708, 711-12 (Mass. 1969).

- A party may be liable for negligent misrepresentation for its affirmative misrepresentations and/or its omissions. <u>See</u> <u>Fox v. F&J Gattozzi Corp.</u>, 672 N.E.2d 547, 550-51 (Mass. App. Ct. 1996); Rest. (2d) of Torts § 551(1) (1977) ("One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as tough he had represented the nonexistence of the matter that he has failed to disclose if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.").

- House asserts that an employer can be liable for negligent misrepresentation for failing to inform an employee of the true exercise deadline of his options. <u>Trytko v. Hubbell, Inc.</u>, 28 F.3d 715, 718-21 (7th Cir. 1994).

---

[1]   <u>See also</u> the parties' proposed jury instructions, and motions in limine submitted herewith, which address the issues of law in further detail.

- House asserts that a party's reliance is assumed to be reasonable unless that party was confronted with representations that were "preposterous or palpably false." Mahaney v. John Hancock Mut. Life Ins. Co., 6 Mass. App. Ct. 919, 920, 380 N.E.2d 140, 141 (Mass. 1978) (quoting Yorke v. Taylor, 332 Mass. 368, 374, 124 N.E.2d 912, 916 (Mass. 1955)). First Marblehead disputes that Massachusetts law on negligent misrepresentation permits any presumption of reasonable reliance and asserts that reasonable reliance is an essential element of House's negligent misrepresentation claim that must be proven by House by a preponderance of the evidence. The cases cited by House to the contrary are distinguishable as they are not negligent misreprentation cases but rather involve claims for common law deceiet and equitable rescission.

2.    Damages.

- It is House's position that, an employee who justifiably relied upon an employer's negligent, material misrepresentations and omissions concerning the true exercise deadline of his options may recover for the full, split-adjusted value of the shares he would possess at the date of trial had he exercised his options before they expired, subtracting the amount it would have cost to exercise the options. Trytko, 28 F.3d at 721-24. First Marblehead asserts that House not entitled to benefit of the bargain damages but rather is only entitled to out-of-pocket damages measured as of the expiration date of his options. First Marblehead challenges the applicability of Trytko to this action. Inasmuch as Trytko involves the application of Indiana common law, its applicability in Massachusetts is doubtful. Moreover First Marblehead disputes House's interpretation of Trytko.

**IX.    Requested amendments to the pleadings.**

House requests that his Amended Answer, Affirmative Defenses, and Counterclaims, dated September 7, 2005, be read to state that House's 2,500 Options would have adjusted to 150,000 (not 100,000) shares as a result of two stock splits and a stock dividend. House states that the reason for this requested amendment is that, at the time House submitted his Amended Answer, Affirmative Defenses, and Counterclaims, the dividend had not yet been declared by the Company. First Marblehead opposes this amendment to the pleadings and requests the opportunity to be heard prior to trial on this issue.

The parties reserve the right to request further amendments in the future, to the extent the need arises.

11

**X.**    Additional matters to aid in the disposition of the action.

House states that there presently exists one issue requiring the Court's attention that could potentially aid in the disposition of this action.  First Marblehead formally is the "plaintiff" in this case, by virtue of its Complaint seeking a declaratory judgment that House's Options expired by their terms – this is the sole cause of action asserted in First Marblehead's Complaint. However, this issue was decided in First Marblehead's favor by the Court's November 18, 2005 Memorandum and Order, which also dismissed House's counterclaims for breach of contract, promissory estoppel, and negligent misrepresentation.  By Opinion and Order dated December 22, 2006, the Court of Appeals for the First Circuit reinstated House's negligent misrepresentation counterclaim, but otherwise upheld this Court's November 18, 2005 Memorandum and Order (including the District Court's granting of First Marblehead's request for a declaratory judgment).  As a result, House's negligent misrepresentation claim (which *assumes* that House's Options expired by their terms) is the only claim asserted by either party in this case.  Accordingly, for the purpose of the trial of this action, House is the plaintiff-in-interest, and First Marblehead is the defendant-in-interest.  House respectfully submits that he should be treated as the plaintiff, and First Marblehead as the defendant, for all trial-related purposes, including, among other things, the order of examination of witnesses, *voir dire*, respective burdens of proof, etc.

The parties reserve the right to present additional matters that could aid in the disposition of this action to the Court at a later date, should either party become aware of any.

**XI.**    The probable length of the trial.

Taking into account this Court's customary trial day of 9 a.m. to 1 p.m., the parties believe that the trial should take six (6) to eight (8) days.

**XII.** The names, addresses and telephone numbers of witnesses to be called (expert and others) and whether the testimony of any such witness is intended to be presented by deposition.[2]

- Gregory House. 1 River Court, Apartment 1911, Jersey City, NJ 07310. Mr. House is a fact witness and is expected to testify in-person.

- Dan Meyers. Mr. Meyers' last known address is 25 Summer St., Marblehead, MA, 01945. Mr. Meyers is a fact witness and is expected to testify in-person.

- Ralph James. Mr. James' last known address is 79 Puritan Lane, Swampscott, MA, 01907. Mr. James is a fact witness and is expected to testify in-person.

- Rodney Hoffman. Mr. Hoffman's last known address is 97 Cochrane St., Melrose, MA, 02176. Mr. Hoffman is a fact witness and is expected to testify in-person.

- Stephen E. Anbinder. Mr. Anbinder's last known address is 151 Central Park West, New York, NY, 10023. Mr. Anbinder is a fact witness and his testimony will be presented by deposition.

- Paul A. Marcus. Director, Huron Consulting Group LLC, 470 Atlantic Avenue, Boston, MA, 02210. Mr. Marcus is an expert witness and is expected to testify in-person.

- Robert A. Sherwin. Analysis Group, Inc., 601 South Figueroa Street, Suite 1300, Los Angeles, CA 90017. Mr. Sherwin is an expert witness and is expected to testify in-person.

- Bruce Lefenfeld, 7 Temi Road, Beverly, MA 01915. Mr. Lefenfeld is a fact witness and is expected to testify in person.

- Jennifer Hill Fox, 9 Quincy Park, Unit 2, Beverly, MA 01915. Ms Fox (formerly Mrs. Gregory House) is a fact witness and is expected to testify in-person.

- Peter Tarr, Esq., Chairman and General Counsel, The First Marblehead Corporation, 800 Boylston Street, Boston, MA 02119. Mr. Tarr is a fact witness and is expected to testify in-person.

- Robin Camara, Executive Vice President, The First Marblehead Corporation, 800 Boylston Street, Boston, MA 02119. Ms Camara is a fact witness and is expected to testify in-person.

---

[2] House objects to several of the witnesses listed by First Marblehead, and will present his objections by April 19, 2007, in accordance with the Court's pretrial orders.

- <u>Gary Santos</u>, The First Marblehead Corporation, 800 Boylston Street, Boston, MA 02119.  Mr. Santos is a fact witness and is expected to testify in-person.

- <u>Victor Samra</u>, address unknown.  Mr. Samra is a fact witness and is expected to testify in-person.

- <u>William Berkeley</u>, address unknown.  Mr. Berkeley is a fact witness and is expected to testify in-person.

The parties reserve the right to amend or otherwise supplement this witness list.

**XIII.**   <u>The proposed exhibits.</u>

<u>A.  Proposed Exhibits of Gregory House</u>

| No. | Title | Date | Bates Nos. | Exhibit Reference |
|---|---|---|---|---|
| 1. | Compensation Review Form | 6/97 | GH0341 | James 4 |
| 2. | Agenda for July 7 Staff Meeting | 7/7/97 | GH0020 | James 2 |
| 3. | Memo re: Employee Stock Option Plan | 7/7/97 | GH0021-0022 | James 3 |
| 4. | Grant of Incentive Stock Options | 6/15/97 | | Anbinder 2 |
| 5. | Grant of Incentive Stock Options (signed) | 6/15/97 | FM1-8 | |
| 6. | Supplemental Memorandum | [unknown] | FM3000-3005 | |
| 7. | Handwritten note | [unknown] | GH0030 | House 3 |
| 8. | 1996 First Marblehead Stock Option Plan | | | Anbinder 1 |
| 9. | Meyers letter to National Grand | 5/24/96 | GH0029 | |

14

| | | | | |
|---|---|---|---|---|
| | Bank | | | |
| 10. | 401(k) Summary Plan Description | 5/9/97 | GH0071-0085 | |
| 11. | Memo re: Preparation of Estate Planning Documents for First Marblehead Employees | 3/28/96 | GH0297 | |
| 12. | Ralph James note to House | 12/21/96 | GH0501 | |
| 13. | Hoffman memo to Leffenfeld | [unknown] | FM3449 | |
| 14. | Hoffman memo to Leffenfeld | [unknown] | FM3450 | |
| 15. | Hoffman memo to Stock Option Committee and Board of Directors | 1/13/97 | FM3473-3509 | |
| 16. | Deutsch Williams invoice | 11/5/96-9/5/97 | FM3546-3569 | |
| 17. | Leffenfeld note to House w/ 401(k) form | [unknown] | GH0559-0560 | |
| 18. | Lefenfeld memo to House | 12/30/98 | GH0562 | |
| 19. | 401(k) forms | 1998 | GH0563-0564 | |
| 20. | House 401(k) materials | 10/4/00 | GH0403-0408 | |
| 21. | "Fundamentals" Booklet | [unknown] | FM3097-3197 | |
| 22. | Prospectus | 10/30/03 | FM3319-3448 | |

| 23. | Information on stock option grants from First Marblehead prospectus | 6/3/04 | FM3198-3204 | |
| 24. | Tarr letter to House | 2/27/04 | FM9 | |
| 25. | Hoffman email to Tarr, et al., and email string | 3/19/04 | FM3466 | |
| 26. | Tarr letter to Wang | 3/19/04 | FM3453 | |
| 27. | Tarr letter to Wang | 4/5/04 | FM3463 | |
| 28. | Tarr email to Johnson, and email string | 4/7/04 | FM3467 | |
| 29. | Hoffman email to DeMoura, and email string | 10/20/05 | FM3570-3575 | |
| 30. | DeMoura letter to Brooks | 11/9/05 | FM3576-3586 | |
| 31. | Tarr email to Brooks, and email string | 2/2/06 | FM3587 | |
| 32. | Tarr email to Brooks | 2/3/06 | FM3588 | |
| 33. | Tarr email to Brooks | 3/1/06 | FM3589 | |
| 34. | DeMoura letter to Brooks | 1/5/07 | FM3594-3595 | |
| 35. | James memo to Hoffman | 1/9/98 | FM3469 | |
| 36. | Lefenfeld email | 3/13/98 | FM17 | |

| | | | | |
|---|---|---|---|---|
| | to House | | | |
| 37. | Lefenfeld email to House | 3/16/98 | FM18 | |
| 38. | Lefenfeld note to House | 3/31/98 | FM20-22 | |
| 39. | Lefenfeld note to House w/401(k) form and envelope | 1998 | GH1121-1123 | |
| 40. | Grant of Incentive Stock Option to Ralph James | 7/19/01 | [no bates no.] | |
| 41. | Complaint Against Rodney Hoffman and Deutsch Williams | 1/26/07 | FM3092-3096 | |
| 42. | First Marblehead Consolidated Financial Statements For Year Ended March 31, 1997 | 1997 | FM3240-3251 | |
| 43. | First Marblehead Consolidated Financial Statements For Fifteen Months Ended June 30, 1998 | 1998 | FM3252-3264 | |
| 44. | First Marblehead Consolidated Financial Statements for Year Ended June 30, 1999 | 1999 | FM3265-3278 | |

| 45. | First Marblehead Consolidated Financial Statements, June 30, 2001 and 2000 | 2001 | FM3279-3296 | |
| 46. | First Marblehead Consolidated Financial Statements, June 30, 2002 and 2001 | 2002 | FM3297-3318 | |
| 47. | Plaintiff's Response to Defendant's First Set of Interrogatories | 12/17/04 | | |
| 48. | Plaintiff's Response to Defendant's First Set of Requests for Admission | 12/17/04 | | |
| 49. | Plaintiff's Responses to Defendant's Third Set of Interrogatories | 4/3/07 | | |

    B.  Proposed Exhibits of First Marblehead.

| No. | Title | Date | Bates Nos. | Exhibit Reference |
| --- | --- | --- | --- | --- |
| 1. | Compensation Review Form | 6/97 | GH0341 | James 4 |
| 2. | Agenda for July Staff Meeting | 7/7/97 | GH0020 | James 2 |
| 3. | Memo re: Employee | 7/7/97 | GH0021-22 | James 3 |

| | | | | |
|---|---|---|---|---|
| | Stock Option Plan | | | |
| 4. | Grant of Incentive Stock Option to Gregory House | 6/15/97 | | Anbinder 2 |
| 5. | Grant of Incentive Stock Options (signed) | 6/15/97 | FM1-8 | |
| 6. | 1996 First Marblehead Stock Option Plan | | | Anbinder 1 |
| 7. | House 401(k) materials | 10/4/00 | GH0403-08 | |
| 8. | Email from Gregory House to housel@hotmail.com | 2/7/05 | GH0542-0545 | |
| 9. | Financial Statement filed by Gregory House with Essex Probate and Family Court | 4/7/99 | GH0551-558 | |
| 10. | Husband's Affidavit of Irretrievable Breakdown, signed by House | 3/1/99 | | House 2 |
| 11. | Chase Bank Statement | 6/98 | GH0607-608 | |
| 12. | Chase Bank Statement | 5/98 | GH0609-612 | |
| 13. | Chase Bank Statement | 4/98 | GH0613-614 | |
| 14. | Chase Bank Statement | 3/98 | GH0615-618 | |
| 15. | Delta Employees Credit Union Statement | 6/98 | GH0679 | |

| 16. | Delta Employees Credit Union Statement | 5/98 | GH0681 | |
| 17. | Delta Employees Credit Union Statement | 3/98 | GH0683 | |
| 18. | Delta Employees Credit Union Statement | 2/98 | GH0685 | |
| 19. | Memo from Samra to All Staff RE:T&E Policy | 10/17/96 | GH0301-303 | |
| 20. | 401K Account Information and Statements | | GH0343-0424 | |
| 21. | LaSalle Bank Statement | 6/98 | GH0713 | |
| 22. | LaSalle Bank Statement | 3/98 | GH0715 | |
| 23. | LaSalle Bank Statement | 6/98 | GH0713 | |
| 24. | Bank Statement | 6/17/98 to 7/17/98 | GH0853-856 | |
| 25. | Bank Statement | 5/15/98 to 6/16/98 | GH0857-862 | |
| 26. | Bank Statement | 4/17/98 to 5/14/98 | GH0863-868 | |
| 27. | Bank Statement | 3/18/98 to 4/16/98 | GH0869-874 | |
| 28. | Bank Statement | 2/18/98 to 3/17/98 | GH0875-880 | |
| 29. | Bank Statement | 1/17/98 to 2/17/98 | GH0881-886 | |

| 30. | Bank Statement | 8/19/98 to 9/16/98 | GH0845-848 | |
| 31. | Bank Statement | 7/18/98 to 8/18/98 | GH0849-852 | |
| 32. | Participant Account Statement Investment Election | 1/1/98 to 3/31/98 | GH1032 | |
| 33. | Termination Form and Envelope | 12/3/98 | GH1121-1123 | |
| 34. | Rollover Form | 4/1/96 | GH0089 | |
| 35. | 401K Quartely At-A-Glance Summary | 10/96 to 12/96 | GH0295-296 | |
| 36. | Findings and Order Under G.L. ch. 208, sec. 1A (House Divorce Decree) | 4/7/99 | | |
| 37. | Judgment of Divorce Nisi (House Divorce) | 5/7/99 | | |
| 38. | Request for Trial/Pre-trial Assignment (House Divorce) | 3/99 | | |
| 39. | Trial Date Notice (House Divorce) | 3/99 | | |
| 40. | Complaint for Divorce (House Divorce) | 10/27/98 | | |
| 41. | Agreement between Gregory House and Jennifer House | 3/1/99 | | |
| 42. | Memorandum from House to Anbinder et al. | 2/26/98 | GH0342 | House 2 |

| 43. | First Marblehead Annual Report 2004 | | 3097-3197 | |
|---|---|---|---|---|
| 44. | First Marblehead Prospectus for Initial Public Offering | | | |
| 45. | First Marblehead Grant of Incentive Stock Option | 6/15/98 | 3205-3234 | |
| 46. | First Marblehead Consolidated Financial Statements for year ended 3/31/97 and periods from 12/15/95 to 3/31/96 | | 3240-3251 | |
| 47. | First Marblehead Consolidated Financial Statements for fifteen months ended on 6/30/98 and year ended 3/31/97 | | 3252-3264 | |
| 48. | First Marblehead Consolidated Financial Statements for year ended 6/30/99 | | 3265-3278 | |
| 49. | First Marblehead Consolidated Financial Statements for year ended 6/30/01 and 6/30/00 | | 3279-3296 | |
| 50. | First Marblehead Consolidated Financial Statements for year ended 6/30/02 and 6/30/01 | | 3297-3318 | |
| 51. | Initial Public | 10/30/03 | 3319-3448 | |

| | Offering of Stock | | | |
|---|---|---|---|---|
| 52. | Email from Rodney Hoffman to Peter Tarr | 4/7/04 | 3467 | |
| 53. | Memorandum from Ralph James to Rodney Hoffman | 1/9/98 | 3469 | |
| 54. | Invoice for Legal Services | 8/7/97 | 3565-3567 | |

The parties reserve the right to supplement this list of proposed exhibits.

**XIV.** <u>The parties' respective positions on any remaining objections to the evidence identified in the pretrial disclosure required by Fed. R. Civ. P. 26(a)(3).</u>

To be supplied by April 19, 2007, per the Court's pretrial orders.

<u>RESPECTFULLY SUBMITTED</u>

/s/ Kenneth J. DeMoura                          /s/ Peter N. Wang
Kenneth J. DeMoura, Esq.                        Peter N. Wang, Esq.
Michael D. Riseberg, Esq.                       Yonaton Aronoff, Esq.
Adler Pollock & Sheehan PC                      Foley & Lardner LLP
175 Federal Street, 10th Floor                  90 Park Avenue
Boston, MA  02110                               New York, NY  10016
(617) 482-0600                                  (212) 338-3413
*Counsel for Plaintiff*                         *Counsel for Defendant*