UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE FIRST MARBLEHEAD CORPORATION
    Plaintiff

v

GREGORY J. HOUSE
    Defendant

CIVIL ACTION NO. 04-11263PBS

**AMENDED MOTION IN LIMINE OF THE FIRST MARBLEHEAD CORPORATION
TO PRECLUDE EVIDENCE OR ARGUMENT THAT DEFENDANT BELIEVED
THE STOCK OPTIONS HAD VALUE, AND, THEREFORE,
WOULD HAVE EXERCISED THEM TIMELY**

Plaintiff The First Marblehead Corporation ("First Marblehead") respectfully moves the Court *in limine* to preclude from the trial of this matter any reference to, evidence of, or argument that Defendant Gregory J. House ("House") would have exercised his stock options. Judicial estoppel bars House from arguing that he would have exercised his stock options prior to their expiration period because they had value where he denied previously the existence and value of such stock options in his prior divorce proceeding. This factual position is entirely inconsistent with House's claim in this matter and exemplifies the very type of "fast and loose" utilization of the courts that judicial estoppel prevents.

**I.    The Prior Divorce Proceeding And Relevant Omissions**

House's one claim in this action involves the alleged, negligent misrepresentation by First Marblehead of House's ability to exercise for ten successive years (beginning approximately in 1997) about 2,500 stock options granted to him by First Marblehead during his employment with First Marblehead. House alleges that First Marblehead "fail[ed] to inform [him] that the 2,500 stock options granted to him … were set to expire if not exercised within

three months of [his] resignation." Joint Pretrial Memorandum, Defendant's Summary of the Evidence, § III. House resigned from First Marblehead on or about February 28, 1998. Id. House maintains that he was informed and believed that his First Marblehead stock options could have been exercised at any point in the ten years from their issuance in or about 1997. Id. Further, House maintains now that had he known of the expiration period of the stock options, he would have exercised them. Id.

In or about 1998 through 1999, House was a party to a divorce proceeding then pending in the Massachusetts Probate and Family Court Department, Essex County, Civil Action No. 98D-2453-DV1 (the "Divorce Proceeding"). On April 7, 1999, as part of the Divorce Proceeding, House submitted (1) a Financial Statement, in which he identified all assets, liabilities, income, and expenses;[1] and (2) a Separation Agreement, in which House represented the he fully described in the Divorce Proceeding his assets to the best of his knowledge and ability, and that the Separation Agreement was executed based upon, and in consideration of, such representations.[2] House certified that the information and contents contained in the Financial Statement were made "under the penalties of perjury that the information stated [], if any, is complete, true, and accurate." **Exhibit 1**. House further certified that he understood that "willful misrepresentation of any of the information provided will subject me to sanctions and may result in criminal charges being filed against me." Id. The Financial Statement bears House's signature, dated April 7, 1999. Id.

The purpose of the Financial Statement and the Separation Agreement is to identify truthfully and accurately, among others, all of House's then-current assets, including stock, deferred compensation, and all other investments and assets. While House identified certain

---

[1] A true and accurate copy of the Financial Statement is attached hereto as **Exhibit 1**.
[2] A true and accurate copy of the Separation Agreement is attached hereto as **Exhibit 2**.

retirement plans among other assets, <u>House omitted any reference to the stock options in, or deferred compensation in the form of, First Marblehead shares of stock</u>. The Probate and Family Court accepted these tacit denials of stock options or deferred compensation sworn to by House by approving the Separation Agreement and Financial Statement and incorporating them into its Findings and Order of separation.[3]  House now directly contradicts the very factual position taken successfully in the Divorce Proceeding by claiming that, because the stock options had value, he would have exercised them prior to their expiration.

## II.    Judicial Estoppel Squarely Applies To Bar Evidence Or Argument That House Would Have Properly Exercised His Stock Options

The doctrine of judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." <u>Patriot Cinemas, Inc. v. General Cinema Corp.</u>, 834 F.2d 208, 212 (1st Cir. 1987).  <u>See</u> <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749 (2001).  Judicial estoppel does not require that the issue have been actually litigated in the prior proceeding.  <u>Id.</u> at 748-49; 18 MOORE'S FEDERAL PRACTICE § 134.30, at 134-69 (3d ed. 2005).  The Federal courts have recognized that the purpose of the doctrine is to protect the integrity of the judicial process, and, therefore, applies even to *factual positions taken and omissions made* by parties in various proceedings.  <u>See, e.g.,</u> <u>New Hampshire</u>, 532 U.S. at 750 (factual position); <u>Patriot Cinemas, Inc.</u>, 834 F.2d at 213-14 (factual position); ); <u>Howell v. Town of Leyden</u>, 335 F.Supp.2d 248, 251 (D. Mass. 2004)(omission), <u>citing</u> <u>Payless Wholesale Distributors, Inc. v. Alberto Culver</u>, 989 F.2d 570, 571 (1st Cir. 1993); <u>Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.</u>, 337 F.3d 314, 324-325 (3rd Cir. 2003)(omission).  At root, the doctrine prevents parties from playing "fast and loose" with the courts.   <u>Alternative System Concepts, Inc. v. Synopsys, Inc.</u>, 374 F.3d 23, 33 (1st Cir.

---

[3] A true and accurate copy of the Findings and Order Under M.G.L. Ch. 208, Sec. 1A of the Probate and Family Court is attached hereto as **Exhibit 3**.

2004)(citations omitted).

The Supreme Court has identified several factors to consider in applying judicial estoppel, the first of which is whether the party's later position is contradicts its earlier position, i.e., mutually inconsistent. New Hampshire, 532 U.S. at 750-51. The second is whether the party has succeeded in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception of inconsistent court determinations, suggesting that either the first or second court was misled. Id. Another consideration with respect to the second factor is whether an unfair advantage or detriment would be created. Id. The application of the doctrine does not turn on whether the party asserting the inconsistent position benefited or otherwise prevailed from the other court's acceptance of the party's initial position. Alternative System Concepts, Inc., 374 F.3d at 33.

House's contrary factual positions here and in the Divorce Proceeding are precisely the type of "fast and loose" litigation tactic that judicial estoppel is meant to protect the courts and litigants from. See, e.g., Kale v. Obuchowski, 985 F.2d 360 (7th Cir. 1993)(partner was judicially estopped from asserting his alleged interest in property because he had denied any interest in the property during prior state court divorce proceedings), citing Finley v. Kesling, 105 433 N.E.2d 1112, 1118-19 (1st D. Ill. App. 1982)(husband who obtained favorable allocation of property in divorce proceeding by claiming no interest in certain stock was judicially estopped from claiming in later litigation that he owned that certain stock); Allen v. Zurich Insurance Co., 667 F.2d 1162, 1167 (4th Cir. 1982)(preventing party from claiming both that he was and was not an employee of the defendant). Quite simply, there is no way in which House's factual position in this matter can be reconciled with the plainly inconsistent factual position in the Divorce Proceeding. To be sure, House claims here, and particularly during the period encompassing the

Divorce Proceeding, that he believed his stock options had value and that he would have exercised them prior to their expiration. In complete contrast, House previously represented in the Divorce Proceeding, via the Financial Statement and Separation Agreement and under the pains and penalties of perjury and the risk of criminal prosecution, that the stock options had no value and that, therefore, no intention of exercising them. Taking the position Divorce Proceeding against his position in this matter creates an irreconcilable mutual inconsistency. Nor can the mere passage of time, or even a claim of mistake, render these inconsistencies right.[4] New Hampshire, 532 U.S. at 750-51. Plainly, House's prior stock option position for which he gained judicial relief is contradictory in all respects with his current position and the rights he now claims.

Rounding out the application of judicial estoppel to House's current position is the obvious acceptance by the Probate and Family Court in its Findings and Order Under M.G.L. Ch. 208, Sec. 1A of House's contrary position in the Financial Statement and Separation Agreement that the stock options had no value, and that he had no intention of exercising them. Had it been otherwise, the Probate and Family Court would have certainly compelled House to amend his Financial Statement and Separation Agreement or instituted proceedings to rectify

---

[4] Any argument by House that mistake or inadvertence (i.e., the absence of malice) contributed to his position of the inability to exercise or value the stock options in the Divorce Proceeding is incredible legally and factually. See Alternative System Concepts, Inc., 374 F.3d at 35 (noting possible exception to judicial estoppel where the "new, inconsistent position is the product of information **neither** known **nor** readily available to [the party] at the time the initial position was taken.")(emphasis added); Howell, 335 F.Supp.2d at 251 n.5 (2004)(noting that even where facts do not support fraud or malice toward the court, the existence of serious prejudice to judicial proceedings is sufficient to warrant judicial estoppel), citing Desjardins v. Van Buren Cmty. Hosp., 37 F.3d 21, 33 (1st Cir. 1994). The Supreme Court in New Hampshire, under similar circumstances, rejected New Hampshire's "mistake" argument that, had it known then what it knew now (concerning river boundaries), it would not have taken its earlier, inconsistent factual position in a prior pending action. New Hampshire, 532 U.S. at 753-54. The Supreme Court noted that New Hampshire, like House in completing his detailed Financial Statement under penalties of perjury and subject to criminal proceedings, had every incentive to fully research and disclose its facts when the prior inconsistent statement was made. Id. at 754. Moreover, if House's current position is meritorious – that the stock options had value and that he would have exercised them – then he would have certainly represented the existence of the stock options in the sworn Financial Statement; to do otherwise is perjury. He deliberately did not. See Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302, 1308 (11th Cir. 2001)("deliberate or intentional manipulation can be inferred from the record").

what would then amount to House's perjurious statements. Clearly, the Probate and Family Court accepted and used House's Financial Statement in fashioning a proper divorce decree. Id. Further, because the Probate and Family Court accepted House's position, House directly benefited from his inconsistency, all to First Marblehead's clear disadvantage now. The unfair advantage to House is apparent, and mocks the efficacy of the judicial system in the process – precisely the circumstances which judicial estoppel is meant to prevent. See Alternative System Concepts, Inc., 374 F.3d at 34-35. House cannot abuse the courts and litigants by attempting to "switch horses midstream to revive a previously abandoned (and flatly inconsistent) claim." Id. at 35.

Accordingly, because of House's prior inconsistent position concerning the value – or lack thereof – of the stock options that he did not exercise, and the Probate and Family Court's acceptance of same in the form of the sworn-to Financial Statement, among others, the Court should preclude House from taking the new and completely contrary position that he valued the stock options and would have exercised them timely.

## III.    Conclusion

Based on the foregoing reasons, Plaintiff The First Marblehead Corporation respectfully requests, based on the doctrine of judicial estoppel, that the Court enter an order barring at the trial of this matter any reference to, evidence of, or argument that Defendant Gregory House would have exercised his stock options prior to their expiration period because they he considered them to have value.

Respectfully submitted,

THE FIRST MARBLEHEAD CORPORATION
By its attorneys

/s/ Kenneth J. DeMoura
Kenneth J. DeMoura/BBO#548910
Michael D. Riseberg/BBO# 567771
ADLER POLLOCK & SHEEHAN, P.C.
175 Federal Street
Boston, Massachusetts 02110
(617) 482-0600

*414626_1*

## CERTIFICATE OF RULE 7.1 CONFERENCE AND OF SERVICE

The undersigned hereby certifies that prior to filing the above motion counsel conferred concerning its subject matter in a good faith attempt to resolve or narrow the issues presented. The undersigned further certifies that he served a copy of the above motion via the United States District Court electronic filing system to all counsel of record on April 13, 2007.

/s/ Kenneth J. DeMoura
Kenneth J. DeMoura/BBO#548910