**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

-----------------------------------------------------------

FIRST MARBLEHEAD CORP.,       )
                               )
              Plaintiff,       )
                               )
vs.                             )   Civil Action No. 04-11263PBS
                               )
GREGORY HOUSE,            )
                               )
              Defendant.    )

-----------------------------------------------------------

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING
THE VIABILITY OR VALUE OF DEFENDANT'S STOCK OPTIONS**

Defendant Gregory House ("House") submits this memorandum of law in opposition to plaintiff First Marblehead Corporation's ("First Marblehead" or the "Company") motion *in limine* to preclude evidence or argument concerning the viability or value of House's stock options (the "Motion"). First Marblehead's Motion is a desperate and weightless last-minute effort to dispose of the case on the eve of trial. Both the factual record and case law directly on-point – about which it is hard to imagine that First Marblehead's counsel was unaware – completely refutes First Marblehead's argument. The Motion should be denied.

## FACTS

First Marblehead's Motion rests entirely on one central (yet infirm) premise: that House somehow attempted to conceal from the Massachusetts Probate and Family Court, and/or his ex-wife Jennifer House, the existence of his First Marblehead stock options (the "Options") in connection with his divorce proceedings in 1998-1999. This suggestion is completely unfounded.

In fact, as House has testified, he and Ms. House discussed the Options before their divorce, and Ms. House fully understood that House had been granted the Options as part of his compensation.. (House Dep. at 207:1-208:23)[1]

Sometime after House resigned from his position at First Marblehead in February 1998, he and Ms. House decided to end their marriage. The parties signed a Separation Agreement (see Motion, Ex. 2) that governed the terms of their divorce and the distribution of their assets. As reflected in the Separation Agreement, House and his wife decided to divide only a single asset, that being the proceeds of the sale of their home in First Marblehead. Id. House and his wife agreed that House would receive 54% of the proceeds from the sale of their home, and Ms. House would receive 46%. Id. They further agreed that *they would each keep all of their respective personal property*, including, among other things, "*securities*, bank accounts, retirement funds, *stocks*, automobiles and tangible personal property." Id. (emphasis added). Ms. House was represented by counsel during this process, however House was not. Id. Although House and Ms. House were also each asked to submit a Financial Statement in connection with the Probate Court proceeding (Motion, Ex. 1), the Separation Agreement stated specifically that each party "has fully described their assets and liabilities to the other party to the best of his or her knowledge and ability, both *orally* and otherwise, *and* by the exchange of financial statements supplementing such information …" (Motion, Ex. 2) (emphases added). House testified yesterday (April 18, 2007) that he completed the form quickly, and "haphazardly," because he knew that it had no significance to the divorce proceedings and that he simply made a mistake.

---

[1] Relevant excerpts of House's deposition are attached hereto as Ex. 1.

## ARGUMENT

### I.    There Is No "Judicial Estoppel" In This Case

First Marblehead contends that House should be "judicially estopped" from asserting, as part of his negligent misrepresentation claim, that he believed when he left the Company in February 1998 that his Options had value and were fully valid and exercisable for ten years, because the Options were not listed as assets on the Financial Statement House submitted in connection his divorce proceeding.  (Motion, pp. 4-5)  Thus, in essence, First Marblehead's Motion seeks dispositive relief (*i.e.*, dismissal of the entire case).  Such a drastic, inequitable outcome on the eve of trial is completely unwarranted in this case.[2]

#### A.    House's Divorce Proceeding Consisted Of An Uncontested, Court-Approved Settlement, And Thus The Doctrine Of Judicial Estoppel Is Entirely Inapplicable

In order for judicial estoppel to apply, it is "widely recognized" that, at a minimum, two conditions must be shown: first, the previously-asserted position must be "mutually exclusive" of, or "clearly inconsistent" with, the presently-asserted position; second, the party to be estopped "must have succeeded in persuading a court to accept its prior position."  Id. at 267 (citations omitted).

---

[2] As an initial matter, it is a mystery why First Marblehead waited so long – until the eve of trial – to advance such an argument.  House asserted his negligent misrepresentation claim in his Amended Answer, Affirmative Defenses and Counterclaims dated September 7, 2005.  (Ex. 2)  On October 17, 2005, before First Marblehead submitted any response to House's Amended Answer, counsel for House informed counsel for First Marblehead that the Options were not included on the Financial Statement, and offered to stipulate to that fact.  (See 10/17/05 Y. Aronoff email to K. DeMoura, attached as Ex. 3)  First Marblehead ultimately rejected House's stipulation offer, and four days later filed its Answer to House's Amended Counterclaims (Ex. 4), in which it did not assert, as an affirmative defense or otherwise, any "judicial estoppel" defense.  Indeed, the first time the Company ever raised this issue was last week, as the parties were preparing for trial.

Putting aside whether the first condition of this test exists, which is debatable, the second prong cannot possibly be satisfied. As the First Circuit has stated, "In determining whether a party 'succeeded' in a prior proceeding, we look to whether the prior forum accepted the legal or factual assertion alleged to be at odds with the position advanced in the current forum." In re Bankvest Capital Corp., 375 F.3d 51, 60 (1st Cir. (Mass.) 2004) (citations omitted). It is well-settled that where, as here, the parties to the first proceeding agreed to a settlement, neither side can be said to have "succeeded" in persuading the prior court to accept a position, even where, also as here, the prior court approved the settlement. That is because "settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel." Bates v. Long Island R.R. Co., 997 F.2d 1028, 1038 (2d Cir. 1993). Thus, House's Settlement Agreement with Ms. House, which confirmed the parties' agreement to divide up a single asset (and to keep for themselves all other personal property, including "securities" and "stock"), precludes completely the application of judicial estoppel in the present case.

Buchanan v. Warner, 2005 WL 1367185 (Mass. Super. Ct. 2005)[3] is directly on-point. That case confirmed that under Massachusetts law, representations in a financial statement filed in a settled divorce proceeding cannot form the basis of a "judicial estoppel" argument in a later, unrelated civil case where an arguably different position has been taken. In Buchanan, the defendant moved for summary judgment, arguing that the doctrine of judicial estoppel precluded the plaintiff from claiming that he owned 98% of a certain company, where the plaintiff previously had stated in his financial statement filed with the Probate Court in his divorce proceeding that he owned 20% of the same company. The Court expressly declined to apply

_____

[3] For the Court's convenience, a copy of that decision is attached hereto as Ex. 5.

4

judicial estoppel, holding that the fact that the plaintiff and his ex-wife entered into a court-approved settlement agreement "did not represent success for the purpose of judicial estoppel." Id. at *1. The Court stated, "Whether at the time [the plaintiff] owned 20 percent or 98 percent, which he now claims, would not have altered the terms of settlement approved by the court in the divorce proceeding." Id. The Court further held that, at most, the plaintiff's disclosures on his financial statement was one of the factors the jury could use in weighing his credibility. Id.[4]

Other Massachusetts courts, including the First Circuit, have endorsed this view. For example, in Bankvest, a secured lender argued that the unsecured creditors' committee was judicially estopped from arguing that the secured lender was divested of its claim to the debtor's "gap period" payments, because the unsecured creditors committee had asserted in a previous action that the secured lender had no interest in such payments. Bankvest, 375 F.3d at 60. The First Circuit disagreed, holding that the parties' settlement of the previous litigation, though court-approved, did not result in either party's "succeeding" sufficient to invoke judicial estoppel. Similarly, in Ku v. Town of Framingham, 53 Mass. App. Ct. 727, 762 N.E.2d 855 (Mass. App. Ct. 2002), a motorist injured by a salt truck sued its owner and operator under a theory of negligent supervision. The town argued that the motorist should be judicially estopped from asserting that the salt truck driver was a town employee because, the town argued, the motorist alleged in its earlier suit that the salt truck driver was an independent contractor. Id. at 728-29. Again, the Court declined to invoke judicial estoppel, holding unequivocally that

_____

[4] It bears emphasizing that, in addition to the striking factual parallels between Buchanan and the present case, the respective procedural postures and implications are also near-identical. Exactly as First Marblehead has done in the instant matter, the defendant in Buchanan brought a dispositive motion (there, summary judgment) on the basis of a judicial estoppel argument. The Buchanan court correctly declined to "usurp the function of the fact finder by passing on the credibility of witnesses or evaluating the weight of evidence." Buchanan, 2005 WL 1367185 at *1.

"[s]ince the plaintiff's initial suit resulted in a settlement, the doctrine of judicial estoppel does not apply to this suit." Id. at 729.[5]

Accordingly, because First Marblehead cannot, as a matter of law, demonstrate that House "succeeded" in his divorce proceeding, it cannot invoke the doctrine of judicial estoppel in the present case.

**B.    Judicial Estoppel Is Inappropriate, Because House Did Not Attempt To Mislead The Probate Court, Or His Wife, In Connection With His Divorce Proceeding**

Judicial estoppel "is a technical rule … directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings." Dockery v. North Shore Med. Ctr., 909 F. Supp. 1550, 1558 (S.D. Fla. 1995). Thus, one of the cornerstones of the doctrine is the concern that "judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." New Hampshire v. Maine, 532 U.S. 742, 750, 121 S. Ct. 1808, 1815 (2001) (citations omitted). Another requirement is that the allegedly inconsistent representation must have been "material" to the prior proceeding. In re Aguiar, 311 B.R. 129, 137 (1st Cir. Bankr. 2004).

Here, such factors are completely nonexistent. First, as stated, Ms. House was fully aware of the Options. House derived no benefit as against his wife in the uncontested divorce

---

[5] See also East Cambridge Sav. Bank v. Wheeler, 422 Mass. 621, 623, 664 N.E.2d 446, 448 (Mass. 1996) ("We decline to identify a settlement as representing success for the purposes of judicial estoppel"); Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir. 1982) ("If the initial proceeding results in settlement, the position cannot be viewed as having been successfully asserted") (citations omitted); Water Techs. Corp. v. Calco, Ltd., 850 F.2d 660, 665-66 (Fed. Cir. 1988) (judicial estoppel held not to apply where previous action settled, because "there is no risk of inconsistent results, no effect on the integrity of the judicial process, and no perception that the court has been misled").

proceeding by failing to include the Options on his Financial Statement, as the parties had already decided to divide between themselves only a single asset, as reflected in their Separation Agreement. Nor was the Probate Court somehow "misled" – the Court was merely called upon to confirm the parties' previously agreed-upon Settlement Agreement. The Options, which were known to Ms. House, therefore could not possibly have been "material" to the outcome of the divorce proceeding.

For these reasons, the cases cited by First Marblehead are completely inapposite, as they each involved a situation in which the estopped party derived some benefit from previously asserting a material, inconsistent position. In Patriot Cinemas, Inc. v. Gen'l Cinemas Corp., 834 F.2d 208 (1st Cir. (Mass.) 1987) (Motion, p. 3), the Court found that the plaintiff's statement to the state court in contesting a stay application, to the effect that it did not intend to pursue a specific claim, constituted a "bargain" with the state court that the plaintiff now sought to break in order to obtain "unfair advantage" for itself. In Alternative System Concepts (Motion, p. 3), a party who successfully had argued on a prior motion to dismiss that its claim did not allege breach of an oral contract was judicially estopped from later claiming breach of an oral contract. Similarly, in Allen v. Zurick Ins. Co., 667 F.2d 1162 (4th Cir. 1982) (Motion, p. 4), a party that had taken an inconsistent position in order to prove an element of a claim in a prior proceeding, was judicially estopped from later asserting the opposite. Thus, unlike the present case, Patriot Cinemas, Alternative System Concepts and Allen represented situations where a party actively misled the court, and achieved success as a result of that misleading conduct.[6]

---

[6] First Marblehead's unfounded insinuations that House intentionally misled the Probate Court are even more remarkable in light of *First Marblehead's* palpable attempt to "play fast and loose" with the judicial process throughout this case. To name but two examples: (i) First Marblehead repeatedly had maintained throughout this case that House was given a copy of his

The second series of cases cited by First Marblehead are also easily distinguishable, as they each involve a situation where a party's prior inconsistent position conferred a clear benefit for itself, and/or disadvantaged someone else. In New Hampshire (Motion, p. 3), the plaintiff was held judicially estopped from advancing a contrary position with respect to the location of a river boundary, where the plaintiff benefited from taking the opposite position in prior litigation. Likewise, in Howell v. Town of Leyden, 335 F. Supp. 2d 248 (D. Mass. 2004), Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570 (1st Cir. (P.R.) 1993), and Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen'l Motors Corp., 337 F.3d 314 (3rd Cir. 2003) (Motion, p. 3), the doctrine of judicial estoppel was invoked only after a finding that the estopped party intentionally had concealed a claim from its creditors in a prior bankruptcy proceeding, in order to obtain a benefit for itself. Finally, both Kale v. Obuchowski, 985 F.2d 360 (7th Cir. 1993) and Finley v. Kesling, 105 Ill. App. 3d 1, 433 N.E.2d 1112 (Ill. App. Ct. 1982) (Motion, p. 4) involved prior *contested* divorces in which an asset was concealed from the estopped party's spouse and the court, the disclosure of which would have affected the distribution of assets.

---

written Stock Option Agreement, yet recently reversed course entirely in connection with its state court lawsuit against its former outside counsel, Rodney Hoffman, in which the Company for the first time – entirely self-servingly – maintains that *that document was not even prepared until House left the Company* (See FM Complaint, Ex. 6); similarly, (ii) First Marblehead also contends in its suit against Hoffman that the Company never received Hoffman's supplemental memorandum, despite the Company's previous refusal in this litigation to produce that document to House on the purported ground that it was an attorney-client communication. (See 11/9/05 DeMoura letter to Brooks, Ex. 7) *Sic transit* inconsistent positions.

NYC_24086.1

In the present case, neither Ms. House, nor the Probate Court were misled, no advantage accrued to House, and no prejudice was suffered by Ms. House.[7]  Accordingly, the doctrine of judicial estoppel is inapplicable.

### C.    At Most, House's Failure To List The Options On His Financial Statement Was A Harmless Mistake

As explained, Ms. House knew of the Options; House and Ms. House's divorce was uncontested, and the parties simply asked the Probate Court to approve the Settlement Agreement which divided a single asset.  Thus, at most, any purported failure by House to include the Options on the Financial Statement was mere "inadvertence or mistake," for which judicial estoppel should not be invoked.  New Hampshire, 532 U.S. at 753; see also Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362-63 (3rd Cir. 1996) ("The doctrine of judicial estoppel does not apply when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court") (citations omitted).

Moreover, House's failure to include his Options on the Financial Statement was in no way "material" to the divorce proceeding.  At the time, House regarded (as a result of First Marblehead's misrepresentations) that he had ten years to exercise the Options.  He was not focusing on exercising them in 1998 and – even if he had – according to First Marblehead's own purported "expert," he merely would have been exchanging cash for stock having a similar value.  In other words, *by First Marblehead's own argument*, the "net" effect on House's Financial Statement would not have been material.

---

[7] Nor can First Marblehead seriously argue that *it* has in any way been prejudiced in this case.  To the contrary, the Company's assertion that House's conduct in a private, uncontested divorce proceeding somehow worked "to First Marblehead's clear disadvantage now" (Motion, p. 6) is utterly absurd.  First Marblehead was not a party to House's divorce, did not know of the Financial Statement until this litigation, *and has never disputed that it granted House the Options at issue*.

Finally, if anything, House's conduct and state of mind in preparing his Financial Statement, just as with the plaintiff's financial disclosure in <u>Buchanan</u>, is among the factors the jury may ultimately weigh in assessing House's credibility.  To usurp the jury's role in that regard, at this stage of the proceedings, would be extraordinarily unfair and unjustified by both the facts and the law.

## <u>CONCLUSION</u>

For all of the foregoing reasons, First Marblehead's Motion should be denied.

DATED:  April 19, 2007

Respectfully submitted,
Gregory House,
By his attorneys,


/s/Peter N. Wang
Peter N. Wang (admitted *Pro Hac Vice*)
Yonaton Aronoff (admitted *Pro Hac Vice*)
**Foley & Lardner LLP**
90 Park Avenue
New York, NY 10016


<u>CERTIFICATE OF SERVICE</u>

I, Yonaton Aronoff, hereby certify that on this 19th day of April 2007, I served a copy of this document via the United States District Court electronic filing system to all counsel of record.

//S//Yonaton Aronoff

Yonaton Aronoff

NYC_24086.1