UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

FIRST MARBLEHEAD CORP., )
)
        Plaintiff, )
)
vs. ) Civil Action No. 04-11263PBS
)
GREGORY HOUSE, )
)
        Defendant. )

---

### AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant, Gregory House, ("House"), by his attorneys Hogan, Roache & Malone, submits this Amended Answer, Affirmative Defenses, and Counterclaims in response to plaintiff's Complaint (the "Complaint") as follows:

1. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1 of the Complaint.

2. Denies the allegations of paragraph 2 of the Complaint. House resides at 1 River Court, Apt. 1911, Jersey City, New Jersey, 07310.

3-4. Denies the allegations of paragraphs 3 and 4 of the Complaint, except admits that plaintiff purports to base jurisdiction and venue on the statutes referred to in said paragraphs, and respectfully refers the Court to those statutes for their terms.

5. Denies knowledge or information sufficient to form a belief as to the allegations of paragraph 5 of the Complaint.

6. Admits the allegations of paragraph 6 of the Complaint.

7. Admits that First Marblehead granted House employee stock options in 1997. Denies the remaining allegations of paragraph 7 of the Complaint.

8-12. Denies the allegations of paragraphs 8 through 12, inclusive, of the Complaint.

13. Admits the allegations of paragraph 13 of the Complaint.

14-15. Admits that, as he was contractually entitled to do so, House waited until February 2004 to attempt to exercise his stock options.

16. Admits that First Marblehead refuses to honor House's options, purportedly on the grounds that said options have expired.

17. Denies the allegations of paragraph 17 of the Complaint. House first sought to formally exercise his options in February 2004.

18. Admits the allegations of paragraph 18 of the Complaint.

19. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19 of the Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

20. The Complaint fails to state a claim against House upon which relief may be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

21. Plaintiff's claim is barred by the terms of the stock option agreement given to House.

## COUNTERCLAIMS

## FIRST COUNTERCLAIM
(Breach of Contract)

22. Defendant, counterclaim plaintiff Gregory House ("House") is an individual residing at 1 River Court, Apartment 1911, Jersey City, NJ 07310.

23. Upon information and belief, The First Marblehead Corporation ("First Marblehead," or the "Company") is a Delaware corporation with its principal place of business at 800 Boylston Street, Boston, Massachusetts.

24. Venue is proper pursuant to 28 U.S.C. § 1391(a) because upon information and belief First Marblehead resides within Suffolk County, Massachusetts.

25. The Court has supplemental jurisdiction over the counterclaims asserted herein pursuant to 28 U.S.C. § 1367(a).

26. House was employed by First Marblehead from April 1996 to February 1998 as President of First Marblehead Data Services, an affiliate of First Marblehead. As part of House's employment with First Marblehead, he was promised that an employee stock option plan would be initiated and that these options would constitute a significant portion of his compensation.

27. Upon information and belief, sometime prior to or during 1997 First Marblehead implemented an Employee Stock Option Plan (the "Plan"), whereby First Marblehead undertook to issue stock options (the "Options") to certain First Marblehead employees. In 1997, in anticipation of issuing the Options to its employees, First Marblehead's CEO Dan Meyers asked House to help price the Options. As here relevant, Meyers and Stephen E. Anbinder[1] told House to price the Options as having a fixed expiration of ten years. At no time was House told that the Options would expire if not exercised within three months of an employee's departure.

28. On July 7, 1997, employees of First Marblehead (including House) were given a memorandum (the "Memo") written by Rod Hoffman, outside counsel for First Marblehead, which, among other things, outlined the essential terms of the Plan. Pursuant to the Memo, the Options were exercisable within ten years of the date of their grant. Additionally, the Memo provided that in the event that a First Marblehead employee resigned or was terminated for "cause," any unvested options would terminate immediately – the vested options, however, could

---

[1] Upon information and belief, Anbinder holds the position of Vice Chairman of the Board of Directors at First Marblehead.

3

be exercised at any time prior to the ten-year expiration date. The Memo contained no provision or requirement with respect to a three-month time period for exercising options upon an employee's departure from First Marblehead.

29. The Memo also set forth a vesting schedule whereby 20% of the Options were to vest immediately, while the vesting of the remaining Options would be deferred. House objected to this aspect of the Plan, and requested that all of his Options (as a result of two stock splits, the Options granted to House now entitle him to 100,000 shares) be immediately vested and exercisable. House discussed this with Meyers, and Meyers agreed to alter House's Options to give House immediate, absolute and unconditional ownership of his Options. In House's presence, Meyers telephoned Rod Hoffman and directed Hoffman to alter the terms of House's Options such that they would all be immediately vested and exercisable. As a result, all of House's Options were vested upon his departure from First Marblehead in 1998.

30. House voluntarily resigned from his position at First Marblehead in February 1998.

31. On February 20, 2004, well within the ten-year period in which his Options are exercisable, House phoned Meyers and notified Meyers that he sought to exercise his Options. Meyers responded that House ought to contact Peter B. Tarr, an attorney for First Marblehead. On February 27, 2004, House received a follow-up letter from Tarr asserting that the Options had expired. Attached to that letter was an unsigned document Tarr claimed was an employee option "agreement" (entitled "June 15, 1997 Grant of Incentive Stock Options") that, according to Tarr, supported First Marblehead's view that the Options had expired.

32. The unsigned "agreement" attached to Mr. Tarr's February 27 letter had never been shown to House during his tenure at First Marblehead. Had it been, House would have

4

found it objectionable and would have refused to sign it, as it failed to comport with the terms of his Options as set forth in the Memo and in his discussions with First Marblehead. Indeed, the "agreement" attached to Mr. Tarr's February 27 letter differs in material respects from the stock option agreement granted to House – significantly, the "agreement" contains a clause requiring that the options be exercised within three months of an employee's departure from First Marblehead, whereas House's Options contained no such requirement.

33. House performed all of the terms required of him under the Plan. First Marblehead breached the Plan by, among other things, refusing to allow House to exercise his Options.

34. As a direct result of First Marblehead's breach, House has been damaged in an amount to be proven at trial.

## SECOND COUNTERCLAIM
(promissory estoppel)

35. House repeats and realleges paragraphs 22 through 34 as if fully set forth herein.

36. First Marblehead's grant of stock options to House represented a concrete, well-defined promise, the terms of which were set forth in the Memo and were described to House by Meyers and Anbinder at the pricing meeting.

37. House relied on that promise to his detriment by continuing to work at First Marblehead. Such reliance by House was reasonable, as House was assured of the terms of his Options with such sufficient detail that House had reason to believe First Marblehead would honor its obligations.

38. House's reliance on First Marblehead's promise was also foreseeable – in fact, his reliance was the result First Marblehead intended when it granted House his Options.

026.15881.1

39. First Marblehead breached its promise by refusing to allow House to exercise his Options.

40. As a direct result of First Marblehead's breach, House has been damaged in an amount to be proven at trial.

### THIRD COUNTERCLAIM
(negligent misrepresentation)

41. House repeats and realleges paragraphs 22 through 34 as if fully set forth herein.

42. First Marblehead has taken the position that House's Options have expired pursuant to a purported requirement that Options be exercised within three months of an employee's resignation from the Company.

43. To the extent that House's Options contain such a requirement, First Marblehead never informed House of said requirement, and, to the contrary, concealed and misrepresented the nature of that requirement. While House was employed with First Marblehead, First Marblehead gave House several documents describing his Options, and House had several discussions with First Marblehead principals relating to his Options. None of the documents given to House mentioned any purported requirement that House exercise his Options within three months of his departure from First Marblehead, and no such requirement was ever conveyed to House, either orally or in writing, during the discussions and meetings House had with various First Marblehead principals (or at any other time).

44. In July 1997, First Marblehead gave House the Memo written by Rodney Hoffman, which the Company distributed in advance of a firm-wide meeting in which Hoffman was to give a presentation about the Options. The Memo set forth the "principal terms" of the Options, and did <u>not</u> include any purported requirement that the Options be exercised within

026.15881.1

three months of an employee's resignation. Similarly, in his presentation about the Options on July 7, 1997, Hoffman failed to mention any such requirement.

45.     Upon information and belief, sometime after the July 1997 meeting, Hoffman realized that he mistakenly had omitted from his Memo any mention of a requirement that Options be exercised within three months of an employee's departure. As a result, upon information and belief, Hoffman authored a second, supplemental memorandum, entitled "Corrections and Amplifications," which stated in relevant part, "I found that I had misstated one of the terms of the option in the summary memo which I distributed on Monday. Mea culpa. A copy of that revised memo is attached and you should substitute it for the [Memo]." (emphasis in original) This second, supplemental memorandum added the additional requirement that the Options be exercised within three months of an employee's resignation. Hoffman subsequently testified that he gave this supplemental memorandum to the Company with the intent that it be distributed to the recipients of his earlier Memo. First Marblehead never distributed Hoffman's second memorandum to House.

46.     First Marblehead never gave to House a copy of the Plan nor any purported document entitled "June 15, 1997 Grant of Incentive Stock Option" during House's tenure at the Company.

47.     When House departed First Marblehead in or around February of 1998, he gave two weeks notice to Meyers and James, among others. House informed Meyers and James that he planned to work for ABN-AMRO in Chicago. At no time during his last two weeks at the Company, or within the three months following his departure, did First Marblehead tell House that his Options would expire if not exercised within that time period.

7

48.     The representations contained in the documents First Marblehead gave to House were false and misleading, in that they omitted any mention of a purported requirement that House exercise his Options within three months of his departure from the Company.

49.     First Marblehead failed to exercise reasonable care in informing House about the terms of his Options, by distributing documents to House that failed to mention any purported requirement that House exercise his Options within three months of his departure, by failing to distribute documents to House in its possession that may have informed House of such a requirement (the Plan, the "June 15, 1997 Grant of Incentive Stock Option", and Hoffman's second, supplemental memorandum), and by otherwise failing to inform House of any such requirement.

50.     House reasonably relied on First Marblehead's misrepresentations by leaving the Company in 1998 with the understanding that he had ten years to exercise his Options, and by electing not to exercise his Options within the three months following his resignation.

## PRAYER FOR RELIEF

WHEREFORE, Mr. House respectfully prays for judgment against First Marblehead as follows:

(i)     Compensatory damages no less than the highest price of House's 100,000 Options since House first sought to exercise them in February 2004, the full amount to be proven at trial; or, alternatively,

(ii)    Specific performance of the employee stock option Plan entitling Mr. House ownership of the Options;

(iii)   Pre-judgment interest;

(iv)    Such other and further relief as this Court deems just and proper.

026.15881.1

## JURY DEMAND

Mr. House demands a trial by jury on all issues.

DATED: September 7, 2005

>Respectfully submitted,
>Gregory House,
>By his attorneys,
>
>//S// William T. Hogan III_____
>William T. Hogan, III BBO # 237710
>**Hogan, Roache & Malone**
>66 Long Wharf
>Boston, MA  02110
>(617) 367-0330
>
>Peter N. Wang
>Yonaton Aronoff
>Foley & Lardner LLP
>90 Park Avenue
>New York, NY 10016
>(212) 682-7474
>*Attorneys for Defendant Gregory House*

### CERTIFICATE OF SERVICE

I, William T. Hogan III, hereby certify that on this 7th day of September 2005 I filed a copy of said Amended Answer and Counterclaim electrically.  Notice of this filing will be sent to all parties via the United States District Court electronic filing system.  Parties may access this filing through the Court's system.

>/s/William T. Hogan III_____
>William T. Hogan III

026.15881.1