## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

------------------------------------------------------

FIRST MARBLEHEAD CORP.,       )

       Plaintiff,         )

                    )

vs.                    )    Civil Action No. 04-11263PBS

                    )

GREGORY HOUSE,         )

       Defendant.       )

------------------------------------------------------

## FIRST MARBLEHEAD'S OPPOSITION TO HOUSE'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF ROBERT A. SHERWIN

First Marblehead Corp. ("First Marblehead") hereby opposes House's Motion *in Limine* to Exclude Anticipated Testimony of Robert A. Sherwin ("Sherwin").

### BACKGROUND

Gregory House asserts a single claim against First Marblehead for negligent misrepresention. He claims that First Marblehead failed to inform him that his options would expire within three months of his resignation from the company. Further, he contends that had he known of the three-month expiration provision, he would have exercised his options within three-months of resigning from the company in February 1998. Even if House could establish that First Marblehead made a negligent misrepresentation and that he justifiably relied on it (which First Marblehead disputes), he will not be able to establish that he would have exercised his options within three months of leaving the company.

## EXPECTED TESTIMONY OF ROBERT A. SHERWIN

**a.     Qualifications**

Sherwin is a certified public accountant, an economist and an attorney.  He has an A.B. in economics and physics from Wabash College, and a J.D. from the University of Chicago.  He is Managing Principal and Vice President of Analysis Group, an economic, financial, and strategy consulting firm, which employs over 300 consultants.   He has testified on numerous occassions in state and federal courts across the country on issues related to the valuation of securities and derivatives instruments, including employee stock options; evaluation of risk-reward characteristics of investment portfolios; and estimation of damages in securities litigation.

**b.     Subject matter and conclusions**

Sherwin has been retained to evaluate House's contention that, had he known about the three-month expiration provision, he would have exercised all of his options within three months of leaving First Marblehead in February 1998.   To do so, Sherwin has evaluated what a reasonable investor in House's position would have done by reviewing the information that was available to House *at the time* he had to make his investment decision.  Sherwin concludes that, in his opinion, it is extremely unlikely that a reasonable investor in House's position would have exercised the options.  Sherwin has also been asked to help evaluate how House has been damaged by allegedly missing the opportunity to exercise his options.

**c.     Basis of his conclusion and their significance**

To explain his conclusions and their significance, Sherwin is expected to testify regarding a general overview of the nature and  purpose of incentive stock options.  This will include, among other things, an explanation that an option's strike price (for tax purposes) must equal or exceed the fair market value of the stock.  This information will be critical for jurors to

understand that, in 1998, the price House would have been required to pay for the stock was exactly what the stock was worth. This will also assist jurors in appreciating that House's situation would have been readily distinguishable from that of a typical stock option grantee, who (because he or she does not leave the company) has the entire life of the stock option grant (in this case 10 years) to wait and see if the fair market value of the stock will rise above its strike price, making the decision to exercise an obvious one.

Sherwin will also explain the characteristics particular to House's options grant and First Marblehead stock in 1998, and the significance of these characteristics to a reasonable investor in House's position. At the time, for example, First Marblehead was not publicly traded and, consequently, its stock would not have been easy to sell. Thus, Sherwin will explain the principle of "illiquidity costs," *i.e.*, that there is an economic cost to an investor in House's position in converting a relatively liquid asset (*i.e.*, cash) into a relatively illiquid asset that would take significant time and effort to sell. Sherwin will also explain the significance of House's personal financial situation (including his available assets and impending divorce) to a reasonable investor in House's position. Sherwin will explain the principle of "diversification" and its significance to a reasonable investor in House's situation. Moreover, Sherwin will testify regarding the relative riskiness of investing in First Marblehead in 1998 given its particular characteristics.

Sherwin will also testify regarding the inappropriateness of allowing hindsight to influence a determination as to what House, in fact, would have done in 1998, when he had to make his investment decision. Towards this end, Sherwin will explain that the phenomenal success that First Marblehead achieved after House left the company was due largely to factors

that occurred after House left the company, and which someone in House's position could not reasonably have foreseen in 1998.

In regards to Sherwin's damages opinion, he will explain that what House, in fact, lost (assuming he would have exercised) was the right to purchase something for precisely what it was worth.  Therefore, jurors *may* properly conclude that if House had sold the stock shortly after he purchased it, his damages would be virtually nothing.

## ARGUMENT

### A.  Sherwin's expected testimony does not improperly invade the province of the jury and is highly relevant

House makes two separate and contradictory arguments in support of his contention that Sherwin should not be allowed to testify regarding what a reasonable investor in House's position would likely have done.  First, House contends that Sherwin's testimony improperly addresses an ultimate issue that is solely for the jury to decide, i.e., **"The question of how a reasonable investor (and House) would have acted if he had been presented with all of the information regarding the Options . . . is a question of fact expressly reserved for the jury."** (House's Motion at p. 5).  Second, House takes the incongruous position that Sherwin's expected testimony should be excluded because what a reasonable investor would have done in House's position is irrelevant.  Apart from the inconsistency of these arguments, neither has merit.  Sherwin's expected testimony regarding what a reasonable investor in House's position would likey have done does not invade the province of the jury and it is highly relevant, and its exclusion from evidence would be enormously and unfairly prejudicial to First Marblehead.

### 1.  Sherwin's expected testimony does not invade the province of the jury and should not be excluded for embracing an ultimate issue

House's argument to exclude Sherwin's testimony because it embraces an ultimate issue is without legal merit.  Federal Rule of Evidence 704(a) clearly provides that, with exceptions

not pertinent here,[1] "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by trier of fact." See Peckham v. Continental Casualty Ins. Co., 895 F.2d 830, 837-838 (1st Cir. 1990)(citing FRE 704(a)).  The Advisory Notes to Rule 704 in pertinent part state:

> The basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact.  In order to render this approach fully effective and to allay any doubt on the subject, the so-called "ultimate issue" rule is specifically abolished by the instant rule.
>
> . . . The basis usually assigned for the rule, to prevent the witness from "usurping the province of the jury," is aptly characterized as "empty rhetoric."

Fed R. Evid. 704 advisory committee notes (1972).  Although there is no longer an absolute ban on opinion testimony as an ultimate issue, such opinions, like any other evidence, may still be excluded on other grounds.  Id.  For example, "[u]nder Rules 701 and 702, opinions must still be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinion which would merely tell the jury what result to reach."  Id.  Accordingly, the First Circuit has recognized that the abolition of the ultimate issue is not a "carte blanche for experts to substitute their views for matters well within the ken of the jury."  Dinco v. Dylex Limited, 111 F.3d 964, 973 (1st Cir. 1997).  In Dinco, the First Circuit advised the trial court on remand that the plaintiff's expert on corporate practices should not have been permitted to testify repeatedly that the plaintiff's reliance on certain statements was reasonable.  Id.

---

[1] Rule 704(b) prohibits an expert from testifying **in a criminal case** with respect to a defendant's mental state or condition constituting an element of the crime charged or of the defense asserted.  See United States v. Dixon, 185 F.3d 393, 400 (C.A.5 1999).

In this case, there is no danger that Sherwin's testimony will usurp the province of the jury on an ultimate issue. As House correctly points out in his motion, the ultimate issue in this case is not what a *reasonable investor* would have done in House's circumstances, but what House, in fact, would have done. Sherwin does not purport to usurp the jury's role in making this determination. Instead, his opinion is offered to provide the jurors with information that will be useful to them in making their determination. Expert witnesses, such as Sherwin, are often uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts. Because of their specialized knowledge, their testimony can be extremely valuable and probative. See, e.g., United States v. Mohney, 949 F.2d 1397, 1406-07 (6th Cir.1991) (IRS agent's expert testimony was critical as it created framework for the jury to properly understand the testimony of other witnesses), cert. denied, 504 U.S. 910, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992); United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir.) ("in complex cases ... expert testimony may help a jury understand unfamiliar terms and concepts"), cert. denied, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991); United States v. Carson, 702 F.2d 351, 369 (2d Cir.) (testifying police officers had "specialized knowledge, not possessed by the jury" which was helpful in understanding narcotics trafficking), cert. denied, 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983). Likewise here, Sherwin's testimony will assist jurors without presenting any danger of substituting his view for theirs.

House misplaces reliance on Davis v. Protection One Alarm Monitoring, Inc., 456 F.Supp.2d 243, 249 (D. Mass. 2006) and United States v. Buchanan, 964 F.Supp. 533, 537-538 (D.Mass. 1997). The holding of Davis has nothing to do with the admissiblity of expert testimony, and stands solely for the basic principle that reasonable care is typically a question of fact not appropriate for summary judgment. Likewise, Buchanan, did not involve the exclusion

of expert testimony on grounds that it impermissibly touched upon an ultimate issue. Rather, the court in Buchanan excluded the testimony of a late-disclosed expert under Rule 403 on grounds that its probative value was outweighed by the prejudice of it being cummulative of other admissible evidence. Here, House makes no such argument.

**2.    Sherwin's expected testimony is highly relevant**

In contrast to his first argument, House's second argument is that Sherwin's testimony should be excluded because it is irrelevant, in that what a reasonable investor would have done has no bearing on what House himself would have done.[4] House, however, admits to the relevance of this testimony by arguing that it should be excluded because it embraces an ultimate issue. Obviously, if the opinion embraces an ultimate issue, it must be relevant. But even apart from House's admission, the relevance of Sherwin's opinion regarding what a reasonable investor in House's position would have done is clear. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed R. Evid. 401.[5]

---

[4] House argues that the question of what he would have done "*can only be answered and addressed by House himself*" and, therefore evidently, the only evidence that is admissible on the issue is his own testimony. (House's Motion at p. 6). This is meritless.

[5] House apparently and properly does not dispute that Sherwin's expected testimony satisfies the requirement of Rule 702 that expert testimony concern matters beyond the understanding of the average person. See United States v. Lopez-Lopez, 282 F.3d 1, 14-15 (1st Cir.2002), cert. denied 536 U.S. 949, 122 S.Ct. 2642, 153 L.Ed.2d 821 (2002). Sherwin's expected testimony regarding, *inter alia*, the nature and purpose of incentive stock options, determining a strike price, option valuation, illiquidity, diversification, relative risk of investing in First Marblehead Head, and the inappropriateness of hindsight, are all well beyond the common experience of an average person, and will provide useful and appropriate information to assist the trier of fact in understanding the evidence and determining a question of fact. *See e.g.*, FDIC v. Refco Group, Ltd., 184 F.R.D. 623, 630 (D. Colorado 1999)(admitting expert testimony regarding common practices in securities industry because average juror unlikely to be knowledgeable about subject and would find testimony helpful).

Here, it is House's burden, on the issue of causation, to prove that had he been informed of the three-month expiration provision, he would have exercised his options within three months of leaving First Marblehead in February 1998. See Kuwaiti v. Danish Computer Co. v. Digital Equipment Corp., 438 Mass. 459, 469, 781 N.E.2d 787, 796 (2003)(requiring but for causation standard in negligent misrepresentation case). House recently testified at the continuation of his deposition that this is precisely what he would have done. This testimony, obviously, is patently speculative and rife with potential for abuse. It epitomizes the concern that led the United States Supreme Court to conclude that 10(b) of the Securities and Exchange Act of 1934 does not protect a person who did not actually buy securities, but whom might have done so had the seller told the truth, in part because of its concern about the abuse potential and proof problems inherent in suits by investors who neither bought nor sold, but asserted they would have traded absent fraudulent conduct by others. The Wharf (Holdings) Limited v. United International Holdings, Inc., 532 U.S. 588, 594-95, 149 L. Ed. 2d 845, 121 S. Ct. 1776 (2001)(citations omitted). Assuming that House is going to be allowed to offer such speculative testimony at trial, First Marblehead must, at a minimum, be permitted to offer Sherwin's testimony regarding what a reasonable investor in House's position would likely have done and, most importantly, what information was available for someone in House's position to consider. This testimony is highly relevant to the causation question at the center of this case.

There is no merit to House's suggestion that Sherwin's testimony regarding what a reasonable person would have done has no relevance to what House himself would have done. Experts routinely testify as to what a reasonable person, or class of similarly situated people, would do as evidence of what an individual would do. See, e.g., U.S. v. Davis, 397 F.3d 173, 66

Fed. R. Evid. Serv. 551 (3d Cir. 2005)(expert witness on drug trafficking did not impermissibly testify as to state of mind of defendants charged with possession of cocaine with intent to distribute in stating that drug dealers in area traveled together with firearms, and had drugs in small packets); U.S. v. Brown, 32 F.3d 236, 240 (7th Cir. 1994) (psychiatrist could testify regarding particular characteristics of defendant's mental disease and whether those characteristics would render one unable to understand wrongfulness or nature and quality of his behavior).   Likewise, here, there is no reason that Sherwin should not be able to testify about what a reasonable investor in House's position would likely have done as evidence for jurors to weigh in making their decision as to what House would have done.

**B.     Sherwin's calculation of damages is not a legal conclusion but admissible**

House argues that Sherwin's testimony regarding damages should be excluded for two reasons: (1) it improperly invades the province of the court by instructing the jury on the legal standard for calculating damages; and (2) it articulates the wrong standard.   Both arguments are meritless.   House's entire argument focuses on a single sentence from Sherwin's report, which provides:

> If Mr. House had exercised his at-the-money options in May 1998, he would have, at best, exchanged $80,000 of liquid assets (i.e., the cash necessary to pay for the exercise) for an illiquid asset that, based on contemporaneous option grants was worth at most, $80,000.  Thus, Mr. House's damages are zero.

This is not an instruction on the legal standard for measuring damages.[7]  It is a calculation that the jury may consider in determining House's reliance damages.  Indeed, House himself describes Sherwin's opinion as a "damage calculation."  And it is based entirely on admissible evidence.  Again, at the time House had to purchase the stock, it was worth precisely what he had to pay for it.  Accordingly, if jurors conclude, as they properly may, that House would have sold the stock shortly after he purchased it, they should recognize that his reliance damages would be zero.

House misconstrues <u>Trytko v. Hubbel</u>, 28 F.3d 715 (7th Cir. 1994) to hold that the measure of damages is the amount equal to the value of the stock that House would have purchased, *measured at the time of trial* minus what it would have cost him to purchase it.  <u>Id.</u> at 724.  Admittedly, the jury in <u>Trytko</u> awarded the plaintiff the value of the stock (that he would have purchased) measured at the time of trial.  Recognizing that the jurors evidently found that the plaintiff would have held onto the stock until the time of trial,[8] the appeals court concluded that the jury's only error was in failing to subtract from that measure the amount it would have cost the plaintiff to purchase the stock.  <u>Id.</u>  In so holding, the court merely clarified that the plaintiff was only entitled to reliance damages, which had to include a deduction for the cost to purchase the stock.   The court in no way suggested that the only permissible finding the jury could have made under the law was to conclude that the plaintiff would have held the stock until the time of trial and, therefore, the value of the stock at the time of trial was a necessary part of

---

[7] First Marblehead in no way disputes that instructions to the jury on purely legal question are exclusively the domain of the judge.  <u>See</u> <u>Nieves-Villanueva v. Soto-Rivera</u>, 133 F.3d 92, 99 (1st Cir. 1997).

[8] The jury made this finding on facts that are readily distinguishable from those presented here.  In particular, in <u>Trytko</u> on the date the plaintiff's options expired, the value of the stock was worth more than three times the strike price.  <u>Trytko</u>, 28 F.3d at 719.

the damages calculation. Indeed, the trial court's jury instruction on damages (which the appeals court deemed proper) made no reference as to the date on which the stock had to be valued, and left that issue entirely up to the jury. Id. at 725-26. Likewise here, and as previously noted, the jury may properly conclude that House would have sold his stock shortly after he purchased it; in which case the jury should be apprised of Sherwin's damages calculation. The fact that the jury could also properly find that House would have held onto the stock and, therefore, could have benefited from an increase in the stock price is point that House's counsel may bring out in cross-examining Sherwin. But the point goes solely to the weight rather than the admissiblity of Sherwin's testimony. See Cummings v. Standard Register Co., 265 F.3d 56, 65 (1st Cir. 2001)(noting that expert's failure to include particular variables could diminish testimony's probativeness, but would not render it "unacceptable")(citations omitted). Consequently, Sherwin's damages calculation should be presented to the jury.

WHEREFORE, for the foregoing reasons, First Marblehead respectfully requests that the Court deny House's motion in limine to preclude the testimony of Robert A. Sherwin and grant such other relief as the Court deems just and equitable.

RESPECTFULLY SUBMITTED


/s/ Michael D. Riseberg
Kenneth J. DeMoura, Esq.
Michael D. Riseberg, Esq.
Adler Pollock & Sheehan PC
175 Federal Street, 10th Floor
Boston, MA  02110
(617) 482-0600
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that he served a copy of the above notice via the United States District Court electronic filing system to all counsel of record on April 27, 2007.


/s/ Michael D. Riseberg_____
Michael D. Riseberg