# ▓FOLEY

**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
www.foley.com

WRITER'S DIRECT LINE
212.338.3401
pwang@foley.com EMAIL

CLIENT/MATTER NUMBER
260691-0101

July 22, 2007

**VIA ELECTRONIC FILING**

Hon. Patti B. Saris, U.S.D.J.
United States District Court for the District of
Massachusetts
1 Courthouse Way
Boston, Massachusetts 02110

> Re:  *The First Marblehead Corporation v. Gregory House*
> (Civ. Action No. 04-11263PBS)

Dear Judge Saris:

On behalf of Defendant Gregory House ("House"), we write (i) to further set forth House's position with respect to Plaintiff's proposed jury instruction regarding mitigation of damages (the "Proposed Instruction"); and (ii) to request an instruction with respect to adverse inferences with respect to certain documents, information and testimony that First Marblehead failed to produce.

> (i)     Plaintiff's Proposed Instruction Is Improper And Should Be Disallowed.

As we discussed in Court on Friday during the Charge Conference, First Marblehead would ask the jury to consider whether House should have mitigated his damages by purchasing $80,000 worth of the Company's common stock in the open market on or about February 27, 2004, the date on which House received a letter from First Marblehead's counsel explaining that his options had expired. We have considered the Proposed Instruction more thoroughly following the Charge Conference, and we object to it for the following reasons.

First and foremost, First Marblehead, which has the burden of proof for its affirmative defenses such as failure to mitigate, offered *no* evidence *whatsoever* that House failed to mitigate his damages. There is not *any* evidence in the record as to what the price was of First Marblehead common stock on February 27, 2004 (or at any time prior to April 28, 2004). Without that piece of evidence, it literally is impossible for the jury to calculate an offset even if it were to find that mitigation was appropriate and House failed to mitigate his damages. Likewise, although House testified that he had more than $80,000 in his checking account in February of 2004, there is no evidence of what he did with those funds after that period, such as, for example whether he invested those funds elsewhere (Plaintiff's counsel did not even *inquire* about this during House's cross-examination).

Because there is no evidence in the record of any purported failure to mitigate by House, the Proposed Instruction is improper and should not be given. The Court reached this precise

| | | | |
|---|---|---|---|
| BOSTON | LOS ANGELES | SACRAMENTO | TALLAHASSEE |
| BRUSSELS | MADISON | SAN DIEGO | TAMPA |
| CHICAGO | MILWAUKEE | SAN DIEGO/DEL MAR | TOKYO |
| DETROIT | NEW YORK | SAN FRANCISCO | WASHINGTON, D.C. |
| JACKSONVILLE | ORLANDO | SILICON VALLEY | |

NYC_34829.1

# ▪FOLEY

FOLEY & LARDNER LLP

Hon. Patti B. Saris
July 22, 2007
Page 2

conclusion in <u>Fisher v. First Stamford Bank & Trust Co.</u>, 751 F.2d 519, 523-24 (2d Cir. (Conn.) 1984), a case involving a claim by a former employee against his employer for breach of a stock option contract. The defendant employer argued that it should be allowed a reduction in any damages for the employee's failure to purchase shares of the employer's stock at the time that the employee realized that the employer would not allow him to exercise his stock options. The Court disagreed, holding that by failing to introduce at trial any evidence with respect to mitigation, the employer effectively had waived the defense.

<u>Trytko v. Hubbell, Inc.</u>, 28 F.3d 715, 727 (7th Cir. (Ind.) 1994) offers no lifeline to Plaintiff's mitigation argument, and in fact supports disallowing the Proposed Instruction. In that case, as here, the defendant sought to instruct the jury, and to argue in its closing statement, that the plaintiff failed to mitigate his damages by not purchasing defendant's stock in the open market once he realized he would not be allowed to exercise his options. The Seventh Circuit upheld the trial court's refusal to allow the defendant's counsel to argue mitigation in his closing statement, on the ground that the defendant had failed to offer any evidence at trial of plaintiff's ability to mitigate.[1] For similar reasons, the Proposed Instruction (and any reference to mitigation in Plaintiff's counsel's closing statement) should be disallowed in this case.

In addition to a lack of evidentiary foundation, Plaintiff's Proposed Instruction also flies in the face of well-accepted mitigation principles and common sense. The notion that House should have been required to purchase $80,000 of First Marblehead common stock as soon as his effort to exercise his stock options was rebuffed in February of 2004 is utterly absurd: the investment that House thought he was making, <i>i.e.</i>, exercising 100,000 options to purchase 100,000 shares of First Marblehead stock at $.80/share (when the stock was trading at a substantial multiple of that), was <i>significantly</i> different than the investment First Marblehead claims he should have been required to make by purchasing its shares in the open market. The former would have been an immediate, sure-thing investment, whereas the latter would have carried significant risk – the stock could have declined in value. It is a well-settled rule of mitigation that "plaintiffs are not required to undertake measures that would entail a risk of further economic damage." <u>Citizens Fed'l Bank v. United States</u>, 66 Fed. Cl. 179, 186 (Fed. Cl. 2005) (<u>citing</u> 5 Corbin on Contracts § 1042, at 264 (1964)); <u>see also Fisher</u>, 751 F.2d at 524 ("It later became evident that the expenditure would have mitigated plaintiff's damages; but to require the innocent party to make such an expenditure compels him to incur risks beyond those for which he contracted"). House was not required to make a potentially risky investment using $80,000 of his funds simply because he became aware that his once-lucrative stock options had lapsed due to First Marblehead's conduct. The Proposed Instruction makes no sense.

---

[1] Although the trial court in <u>Trytko</u> apparently did give a jury instruction with respect to mitigation, it was pure boilerplate and said nothing about whether plaintiff should or could have purchased stock in the defendant company on the open market. <u>Trytko</u>, 28 F.3d at 725 n.8. Moreover, the <u>Trytko</u> Court noted that the jury instruction on mitigation was not superfluous in that instance because the defendant had offered some evidence of the plaintiff's salary at the time he had tried to exercise his options. <u>Id.</u> at 727 n.12. No such evidence has been offered here.



**FOLEY & LARDNER LLP**

Hon. Patti B. Saris
July 22, 2007
Page 3

> (ii)     House Is Entitled To Adverse Inferences With Respect To Unproduced <u>Documents, Information And Testimony.</u>

Over the past several weeks, House's counsel has made repeated requests that First Marblehead produce certain documents and information in its possession, custody or control. Those requests were discussed during the course of the trial, and the Court ordered that the production be made. Nonetheless, the following materials were never provided to House despite his repeated requests:

- A 9/11/98 memorandum from Rodney Hoffman to "File" re: a "Telephone conference with Ralph James regarding ISO Grants." This document is listed on First Marblehead's privilege log (any privilege *vis-à-vis* Hoffman having since been waived by the Company), but has not been produced to House. (Despite the fact that the document was listed *by First Marblehead* on its privilege log, First Marblehead's counsel incongruously now asserts that they cannot locate it).

- The "CD-ROM" provided by Hoffman to First Marblehead's counsel on February 10, 2005, which was referenced in First Marblehead's Requests for Admission issued to Hoffman in the State Court litigation (which we did not receive until mid-trial).

- A 4/24/02 email from Ralph James to Hoffman re: "notice to terminating employees re exercise of ISO," which is referenced in an April 2002 Deutsche, Williams invoice to First Marblehead produced by Hoffman and Deutsche Williams in response to First Marblehead's subpoena to them in this case, and given to us by First Marblehead mid-trial.

Because the above-referenced materials have not been provided to House, the jury should be instructed that they may draw a negative inference that these materials would have been harmful to First Marblehead's defenses (for which it bears the burden of proof). <u>See, e.g.</u>, <u>Auto. Ins. Bureau of Mass. v. Commissioner of Ins.</u>, 430 Mass. 285, 291 (Mass. 1999) ("[A] fact finder in a civil dispute may draw a negative inference from the failure of the party with the burden of proof to call a witness or produce information within the party's control which would have shed light on the party's position on a material issue").

Similarly, throughout the trial First Marblehead attempted to suggest that Daniel Meyers' signature, which mysteriously appears on House's stock option agreement, may have been procured during the pre-IPO due diligence period in 2003 when Meyers allegedly was sent "piles" of documents to sign by First Marblehead employee Joanne Burnham. Specifically, during Mr. Meyers' cross-examination by First Marblehead's counsel, he was asked whether it was possible that Mr. Burnham sent him a "good size stack" of option grants to sign, as well as a CD-ROM containing the option grants, during that time period. [7/19 Tr. at 110:18-111:17] Mr. Meyers was only able to testify that he "probably" received those materials, as well as a cover letter and Federal Express



**FOLEY & LARDNER LLP**

Hon. Patti B. Saris
July 22, 2007
Page 4


receipt.    *None of those materials were produced, nor was Ms. Burnham called to testify.* Accordingly, the jury should also be instructed that they may draw a negative inference that these materials, and her testimony, would have been harmful to First Marblehead's defenses.

Respectfully submitted,

Peter N. Wang

cc:    (by ECF Filing System)
       Kenneth J. DeMoura, Esq.
       Michael D. Riseberg, Esq.