UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE FIRST MARBLEHEAD CORPORATION<br>    Plaintiff<br><br>v<br><br>GREGORY J. HOUSE<br>    Defendant | CIVIL ACTION NO. 04-11263PBS |

FIRST MARBLEHEAD'S OPPOSITION TO
DEFENDANT HOUSE'S MOTION FOR NEW TRIAL

The plaintiff/defendant-in-counterclaim, The First Marblehead Corporation ("First Marblehead"), submits this opposition to the motion of the defendant/plaintiff-in-counterclaim, Gregory J. House ("House"), for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.

**I.   STANDARD FOR A NEW TRIAL**

"A motion for a new trial is not to be taken lightly. Such an expensive, burdensome option should be exercised only when an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair." MacNeil Engineering Co. v. Trisport, Ltd., 126 F.Supp.2d 51, 63-64 (D.Mass. 2001)(citations omitted). Whether to grant a new trial is within the sound discretion of the trial court. Parker v. Town of Swansea, 310 F.Supp.2d 356 (D.Mass. 2004). A new trial may be granted under Rule 59(a) "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). The standard for granting a Rule 59 motion varies with the grounds for which relief is sought. 12 MOORE'S FEDERAL PRACTICE ¶ 59.13 [1] (2007) *citing* Henry v. Hess Oil Virgin

Islands Corp., 163 F.R.D. 237, 242 (D.V.I. 1995)(standard varies depending on basis of Rule 59 motion).[1]

Here, House's only ground for a new trial relates to the admission of the testimony of First Marblehead's expert, Robert Sherwin. Evidentiary rulings in the admission or exclusion of evidence can provide a basis for a new trial. *See* McKeown v. Woods Hole, 9 F.Supp.2d 32, 38 (D.Mass. 1998). However, errors in the admission or exclusion of evidence are not grounds for a new trial "unless the refusal to take such action appears to the court inconsistent with substantial justice." Fed.R.Civ.P. 61 ("Harmless Errors"); *see also* McKeown, 9 F.Supp.2d at 38 (court may allow new trial when prejudicial error has entered the record)(citations omitted). Otherwise stated, a new trial should not be granted based upon an evidentiary ruling unless the court is "convinced" the ruling rendered the trial "manifestly unfair." Matton v. White Mountain Cable Constr. Corp., 190 F.R.D. 21, 23 (D.Mass.1999). Accordingly, to prevail on a motion for new trial based upon an evidentiary ruling, the movant has the burden to prove both that an error was committed and that the error rendered the trial unfair. MacNeil Engineering, 126 F.Supp.2d at 64. House cannot satisfy either burden here and, therefore, his motion should be denied.

## II. THE COURT DID NOT ERR IN ALLOWING MR. SHERWIN TO TESTIFY AS TO HIS OPINION THAT IT WOULD NOT HAVE MADE FINANCIAL SENSE FOR MR. HOUSE TO EXERCISE HIS STOCK OPTION GRANT IN 1998

House has not and cannot show that the court erred in admitting Mr. Sherwin's testimony, let alone that the court abused its broad discretion in admitting expert testimony. *See* Computer Systems Engineering, Inc. v. Qantel Corporation, 740 F.2d 59, 66-67 (1st Cir. 1984)(under Rule 702, the trial court has broad discretion in admitting expert testimony). The

---

[1] Different grounds on which a new trial may be granted include a verdict that is against the clear weight of the evidence, damages that are excessive, the trial was not fair, or that substantial

admission and exclusion of evidence is primarily within the discretion of the trial judge, and its determination will not be distributed absent a showing of an abuse of discretion. Doty v. Sewall, 908 F.2d 1053, 1058 (1st Cir. 1990).  House makes three arguments that the court erred in admitting Mr. Sherwin's testimony.  First, House argues that Mr. Sherwin's opinion should not have been admitted because it spoke to an issue that was exclusively within the province of the jury (i.e. improperly instructed the jury about what conclusion to reach on an ultimate issue in the case).  Second, House argues that Sherwin's testimony likely caused juror confusion about what standard to apply and was irrelevant.  Third, House argues that Mr. Sherwin's testimony was improper because he lacked the expertise necessary to opine about how investors should behave.  Each argument is unavailing.

### A.  Sherwin's testimony did not improperly invade the province of the jury by touching on an ultimate issue

Although House makes no mention of it in his motion, Rule 704(a) of the Federal Rules of Evidence clearly provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by trier of fact."  *See* Peckham v. Continental Casualty Ins. Co., 895 F.2d 830, 837-838 (1st Cir. 1990)(citing FRE 704(a)). Accordingly, the Federal Rules of Evidence have "abolished" the ultimate issue rule as grounds for excluding expert testimony.  *See* Fed R. Evid. 704 *advisory committee notes* (1972)("The basis usually assigned for the rule, to prevent the witness from 'usurping the province of the jury,' is aptly characterized as 'empty rhetoric.'").  The abolition of the ultimate issue rule, however, is not a "carte blanche for experts to substitute their views for matters well within the ken of the jury."  Dinco v. Dylex Limited, 111 F.3d 964, 973 (1st Cir.

---

errors occurred in the admission or rejecting of evidence or the giving or refusal of instructions. 12 MOORE'S FEDERAL PRACTICE ¶ 59.13 [1].

3

1997)(holding plaintiff's expert on corporate practices should not have been permitted to testify repeatedly that plaintiff's reliance on certain statements was reasonable).

In this case, even if the ultimate-issue rule were still the law (it is not), it would not provide grounds for excluding Sherwin's testimony. Unlike the expert in Dinco, Sherwin did not express an opinion on an ultimate issue. Dinco, 111 F.3d at 973. As House correctly points out, the ultimate issue here was whether, if House had been informed about the three-month expiration provision, he would have, in fact, exercised his options within three months of leaving First Marblehead in 1998. Sherwin did not express an opinion on whether he believed House, in fact, would have exercised his options in these circumstances. Rather, Sherwin simply expressed his opinion that it would not have made financial sense for House to do so, and Sherwin explained the reasons for his opinion. Those reasons included, among others, an explanation of what the stock was worth based upon the strike price the company had assigned to similar options in June 1998; the fact that the investment would be relatively illiquid (difficult to sell) because First Marblehead was a privately held company; and the fact that the investment would have been risky for House because it was not diversified.

Sherwin's testimony – without expressing an opinion on whether House, in fact, would have exercised the options – provided jurors with information to assist them in making their determination. *See* Fed.R.Evid. 702 (expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue."). Sherwin's testimony, which could have assisted jurors in understanding certain complicated or obscure terms and concepts at issue, is precisely the type of specialized knowledge that expert witnesses are intended to provide. *See, e.g.,* United States v. Mohney,    949 F.2d 1397, 1406-07 (6th Cir.1991) (IRS agent's expert testimony was critical as it created framework for the jury to properly understand the testimony of other

4

witnesses), *cert. denied*, 504 U.S. 910, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992); United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir.) ("in complex cases ... expert testimony may help a jury understand unfamiliar terms and concepts"), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991); United States v. Carson, 702 F.2d 351, 369 (2d Cir.) (testifying police officers had "specialized knowledge, not possessed by the jury" which was helpful in understanding narcotics trafficking), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983). Likewise Sherwin's testimony was properly admitted to assist jurors without presenting any danger of substituting his view for theirs.

House misplaces reliance on Nimely v. City of New York, 414 F.3d 381, 396-397 (2d. Cir. 2005). In Nimely, the Second Circuit held that a new trial was warranted because a forensic pathologist was improperly permitted to testify regarding his opinion that the defendants, police officers, had testified truthfully and the rationale for his conclusion that the officers had not lied. The court held that such testimony improperly invaded the jury's exclusive role in determining the credibility of witnesses. Id. In contrast, Sherwin here never expressed an opinion regarding House's credibility; he never even expressed an opinion as to whether House, in fact, would have exercised the options. Accordingly, House misplaces reliance on Nimely.

Nor do any of the other cases on which House relies suggest that Sherwin's testimony should have been excluded. House relies on Davis v. Protection One Alarm Monitoring, Inc., 456 F.Supp.2d 243, 249 (D. Mass. 2006), which stands for the basic principle that reasonable care is typically a question of fact; the case has nothing to do with the admissibility of expert testimony. House relies on United States v. Buchanan, 964 F.Supp. 533, 537-538 (D.Mass. 1997) and Perez-Perez v. Popular Leasing Rental, Inc., 993 F.2d 281 (1st Cir. 1993), cases which involved the exclusion of expert testimony because it was not properly disclosed and resulted in

unfair surprise. House has not and could not make such an allegation here. House also relies on Logan v. Dayton Hudson Corp., 865 F.2d 789 (6th Cir. 1989), in which a chiropractor was improperly allowed to testify on a medical issue in direct contravention of a state statute. There is no similarity here. Accordingly, the Court here did not err by allowing Sherwin to offer an opinion that improperly invaded the province of the jury.

> **B.    Sherwin's testimony did not likely cause juror confusion about what standard to apply and was relevant**

House argues that Sherwin's testimony should have been excluded because it likely caused juror confusion as to the proper legal standard to apply. House contends that whether or not exercising the options would have made "financial sense" to a hypothetical person in House's shoes is completely irrelevant to this case, in which the issue is what *House* would have done. **House does not identify a legal principle or rule that the court violated here**. Presumably his argument is premised on Rule 403, which gives the court the discretion to exclude relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury." Fed.R.Evid. 403. A trial court's discretionary ruling under Rule 403, however, is among those evidentiary decisions entitled to "an even higher deference" by an appellate court. *See* Doty v. Sewall, 908 F.2d 1053, 1058 (1st Cir. 1990) *citing* United States v. Long, 574 F.2d. 761, 767 (3rd Cir.)("[i]f judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal"), *cert denied*, 439 U.S. 577 (1978). Regardless, the court in no way erred, let alone abused its broad discretion under Rule 403, in admitting Sherwin's testimony.

Perhaps the most glaring problem with House's argument (apart from the failure to identify an operative legal principle) is that the Court – in order to avoid possible juror confusion about the applicable legal standard -- did not allow Sherwin to testify about what a reasonable

person in House's position would have done. Instead, Sherwin was required to testify about whether or not he believed exercising the options would have made "financial sense" *for House*. This restriction (although not even necessary) helped ensure that jurors were not confused about the applicable legal standard. This was a perfectly appropriate exercise of the Court's discretion under Rule 403.

There is no merit to House's suggestion that Sherwin's testimony – about what made "financial sense" – was irrelevant to whether or not House, in fact, would have exercised the options. Indeed, House's first argument here is that Sherwin's opinion should have been excluded because it embraced an ultimate issue in the case. Obviously, an opinion cannot be irrelevant where it also embraces an ultimate issue. Accordingly, House cites no authority to suggest that Sherwin's opinion was irrelevant. As previously discussed, Sherwin's testimony appropriately provided the jurors with relevant information to consider (and accept or reject) in making their determination whether or not to credit House's claim that he would have exercised the options.

Moreover, the Court's instructions as to the appropriate legal standard were clear, and if House was concerned that the jury was confused about the legal standard to apply, the issue should have been raised in the jury charge conference. It was not. Indeed, House's counsel advised the Court that they intended to submit supplemental instructions to ensure that there was no confusion as to the appropriate standard. But they did not. That House did not do so evidences that Sherwin's testimony did not likely cause confusion as to the legal standard.

House has not met his burden to show that the Court erred, let alone abused its discretion under Rule 403, by allowing Sherwin's testimony.

7

### C. The Court did not err by allowing Sherwin to testify on matters for which he was not qualified

House argues that Sherwin lacked the expertise to opine about how investors should behave because he is not a Certified Financial Planner or an expert in "human behavior." House has failed to meet his burden to prove that the Court, by allowing Sherwin to testify, erred or abused its broad discretion under Rule 702 in admitting expert testimony. Computer Systems Engineering, 740 F.2d at 66-67 (trial court did not abuse its discretion in allowing accountant to testify about corporation's lost profits; accountant had specialized knowledge that would assist trier of fact to understand evidence and determine issue). In support of his argument that Sherwin lacked necessary expertise in "human behavior," House again misplaces reliance on Nimely. In that case, the trial court erred by allowing a pathologist to offer his opinion, based upon his perception of the defendant police officers, that they testified truthfully because, among other reasons, the pathologist had no expertise in "human perception or cognitive function." Nimely, 414 F.3d at 399 n. 13. Again, unlike the expert in Nimely, Sherwin here did not offer an opinion on the credibility of House; he did not even testify as to whether he believed House, in fact, would have exercised the options. Accordingly, House again misplaces reliance on Nimely.

With respect to House's argument that Sherwin should not have been permitted to testify because he is not a Certified Financial Planner, House's motion ignores Sherwin's testimony that he is paid to offer investment advice in his position at Analysis Group. That he is not a Certified Financial Planner goes to the weight and not the admissibility of his testimony. Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir. 1985). House's counsel vigorously cross-examined

8

Sherwin and had more than sufficient opportunity to point out any possible deficiencies in Sherwin's qualifications.

Nor is there any merit to House's argument that his counsel was not permitted to conduct a *voir dire* regarding Sherwin's qualifications at trial. House was served with Sherwin's report and *curriculum vitae* months before trial. And Sherwin's anticipated testimony was discussed by counsel and the Court on several occasions before Sherwin testified on the fifth day of trial. Yet House's counsel never asked to conduct a *voir dire* of Sherwin or for any additional information regarding his qualifications, until the jury was seated and Sherwin's direct examination at trial was underway. Accordingly, House's last minute request for a *voir dire* was properly denied.

House has not met his burden to show that the Court abused its discretion under Rule 702 by allowing Sherwin to testify.

### III. EVEN IF HOUSE COULD SHOW THAT SHERWIN'S TESTIMONY WAS ADMITTED IN ERROR (WHICH HE CANNOT); HE CANNOT SHOW THAT THE ERROR RENDERED THE TRIAL MANIFESTLY UNFAIR, AND THAT A REFUSAL TO GRANT HIM A NEW TRIAL WOULD BE INCONSISTENT WITH SUBSTANTIAL JUSTICE

As previously discussed, House is not entitled to a new trial unless he can establish both that Sherwin's testimony was admitted in error, and that the error rendered the trial manifestly unfair and, consequently, a refusal to grant him a new trial would be inconsistent with substantial justice. MacNeil Engineering, 126 F.Supp.2d at 64; Fed.R.Civ.P. 61. Accordingly, even assuming House could show that the Court committed an error in admitting Sherwin's testimony (which he cannot), he cannot show that he was unfairly prejudiced by it.

House makes a single argument to suggest that he was "highly prejudiced" by the admission of Sherwin's testimony. He contends that Sherwin's testimony was the only evidence of any significance introduced by First Marblehead to rebut House's testimony that he would

have exercised his stock options. Because the jury found for First Marblehead on this issue, House contends that it is clear that Sherwin's testimony tipped the scales in First Marblehead's favor. House's argument is fatally flawed, however, because he is simply incorrect in suggesting that Sherwin's testimony was the *only* evidence on which the jury could have relied in rejecting his claim. Most of the evidence on the issue of causation came directly from House's own testimony. Indeed, First Marblehead's counsel made no reference whatever to Sherwin's testimony at any point in its closing statement.

House's own testimony was replete with reasons for the jurors to reject House's claim that he would have exercised his options. The jurors may not have believed House's testimony that he would have invested the entire $80,000 in First Marblehead stock, and nothing less. Jurors may have concluded, based on House's own testimony and financial records, that his financial profile did not make him a risky investor. Jurors may have rejected House's contention that $80,000 was not a lot of money for him given that his salary was only $70,000. Jurors may not have believed House when he said the options were his "opportunity of a lifetime," given that he left First Marblehead after less than two years, never asked for a copy of his option grant, and left shortly before another round of options was expected to be granted. He did not list the options as an asset in his divorce proceedings one year after he left the company. There was undisputed testimony from House that he had offered to sell his options to First Marblehead's president for $60,000 shortly before he left the company. Jurors may not have believed House when he testified he was only joking when he made this offer; it is difficult to believe he was willing to pay $80,000 for something he thought was worth only $60,000. Jurors may not have believed House when he said he knew, in 1998, that First Marblehead was certain to succeed despite that the company had done nothing other than lose money up to that point. House's

10

exercise decision had to be made three years before the TERI acquisition that is widely credited with the company's success, and more than four years before any other employee exercised his options. Ralph James, First Marblehead's former CEO, testified that when the second round of options was issued, a number of the company's employees elected to receive cash instead of options, which suggests that the options were not considered particularly valuable at the time. Moreover, Jurors may not have believed House when he claimed that his confidence that he would have exercised his options in 1998 had nothing to do with the benefit of hindsight. Jurors may not have believed House's testimony that he would have borrowed $25,000 on his credit cards to make this investment. Jurors may not have believed House's deposition testimony (which the jury heard) that House's wife (who was divorcing him) would have joined him in taking out an equity loan against their home to finance this investment. Accordingly, there was ample evidence presented at trial having nothing to do with Sherwin's testimony (and this list is far from exhaustive) on which jurors could have relied to reject House's claim.[2] House, therefore, cannot meet his heavy burden to prove that, even assuming Sherwin's testimony was admitted in error, he was unfairly prejudiced by the error and, consequently, refusing to grant him a new trial would be inconsistent with substantial justice.

---

[2] This abundance of evidence adverse to House's claim also warrants a denial of his argument (raised only in a footnote) that he is entitled to a new trial because the jury's verdict was against the clear weight of the evidence. A new trial should only be granted on such grounds if upholding the verdict will result in a miscarriage of justice. <u>Johnson v. Spencer Press of Me., Inc.</u>, 364 F.3d 368, 375 (1st Cir. 2004). House offers no explanation as to how he can meet that heavy burden here. He cannot.

WHEREFORE, First Marblehead respectfully requests that the Court deny House's motion for a new trial and grant whatever other relief the Court deems just and proper.

    Respectfully submitted,

    THE FIRST MARBLEHEAD CORPORATION
    By its attorneys

    /s/ Kenneth J. DeMoura
    Kenneth J. DeMoura (BBO#548910)
    Michael D. Riseberg (BBO# 567771)
    Colleen M. Nevin, BBO #665114
    ADLER POLLOCK & SHEEHAN, P.C.
    175 Federal Street
    Boston, Massachusetts 02110
    (617) 482-0600

Dated: August 20, 2007

## CERTIFICATE OF OF SERVICE

The undersigned hereby certifies that he served a copy of the above document via electronic filing this 20th day of August, 2007.

    /s/ Michael D. Riseberg
    Michael D. Riseberg, BBO# 567771

*425972_1*